# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*


FILED

NOV - 6 2015

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Lucchesi, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SELENE FINANCE, LP et al
ADDITIONAL PARTIES FORM IS ATTACHED

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOHN F. LUNDY

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is: *(El nombre y dirección de la corte es:)*  Marin | **CASE NUMBER:** *(Número del Caso:)* |
|---|---|
| 3501 Civic Center Drive<br>San Rafael, California 94903 | CIV 1504060 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es:)*
Charles T. Marshall, Esq., 415 Laurel St, #405, San Diego, CA 92101; tel: 619-807-2628

| DATE: *(Fecha)* **NOV - 6 2015** JAMES M. KIM | Clerk, by *(Secretario)* **C. LUCCHESI** | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

SEAL

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [✓] on behalf of *(specify):* J P Morgan Chase Bank, NA

under:
[ ] CCP 416.10 (corporation)
[ ] CCP 416.20 (defunct corporation)
[ ] CCP 416.40 (association or partnership)
[ ] other *(specify):*
[ ] CCP 416.60 (minor)
[ ] CCP 416.70 (conservatee)
[ ] CCP 416.90 (authorized person)

4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| JOHN F. LUNDY vs. SELENE FINANCE, LP, et al | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff  ☑ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

MTC FINANCIAL d/b/a TRUSTEE CORPS; JPMORGAN CHASE BANK, N.A.; BANK OF AMERICA, N.A.; WILMINGTON SAVINGS FUND SOCIETY, FSB d/b/a CHRISTIANA TRUST, as trustee for BCAT 2014-12TT and DOES 1-100 inclusive,

Page  1  of  1

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1

Charles T. Marshall, Esquire (SBN 176091)
Law Offices of Charles T. Marshall
415 Laurel Street, # 405
San Diego, California 92101
Tel: 619-807-2628
Fax: 866-575-7413
Email: cmarshall@marshallestatelaw.com

Attorneys for Plaintiff
JOHN F. LUNDY

2

3

4

5

6

FILED

NOV - 6 2015

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Lucchesi, Deputy

7

8

9            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                **IN AND FOR THE COUNTY OF MARIN**

11

| JOHN F. LUNDY | ) | Case No.: CIV 1 5 0 4 0 6 0 |
|---|---|---|
| Plaintiff, | ) | **VERIFIED COMPLAINT** |
| | ) | |
| v. | ) | 1. Wrongful Foreclosure |
| | ) | 2. Quiet Title |
| | ) | 3. Violation of Cal. Civil Code sections 2923.55(a) and 55(b)(1)(B) |
| SELENE FINANCE, LP; MTC FINANCIAL d/b/a TRUSTEE CORPS; JPMORGAN CHASE BANK, N.A.; BANK OF AMERICA, N.A.; WILMINGTON SAVINGS FUND SOCIETY, FSB d/b/a CHRISTIANA TRUST, as trustee for BCAT 2014-12TT and DOES 1-100 inclusive, | ) | 4. Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. section 2601, *et seq.* |
| | ) | 5. Violation of Cal. Residential Mortgage Lending Act, Cal. Fin. Code section 50505 |
| | ) | 6. Violation of Cal. Civil Code section 2924.17 |
| Defendants. | ) | 7. Violation of Bus. & Profs. Code section 17200 *et seq.* |
| | ) | 8. Unjust Enrichment |
| | ) | 9. Accounting |
| | ) | **Jury Trial Demanded** |

JOHN F. LUNDY (hereinafter "Plaintiff") sue SELENE FINANCE, LP, MTC FINANCIAL

d/b/a TRUSTEE CORPS, JPMORGAN CHASE BANK, N.A., BANK OF AMERICA, N.A. and

WILMINGTON SAVINGS FUND SOCIETY, FSB d/b/a CHRISTIANA TRUST, as trustee for

BCAT 2014-12TT (collectively "Defendants") for Wrongful Foreclosure, in order to quiet title to

his real property, for violation of Cal. Civil Code section 2923.55(a) and 55(b)(1)(B), violation of

the Real Estate Settlement Procedures Act, 12 U.S.C. section 2601, *et seq.*, violation of Cal. Residential Mortgage Lending Act, Cal. Fin. Code section 50505, violation of Cal. Civil Code section 2924.17 and violation of Bus. & Profs. Code section 17200 *et seq.* Plaintiff also seek restitution for mortgage payments improperly collected from them and an accounting to determine the amount to be reimbursed to them.

**A. NAMED PARTIES AND JURISDICTION**

1. Plaintiff owns a single-family property located at 29 Bridgegate Drive, San Rafael, Marin County, California 94903 (hereinafter "Property" or "Subject Property"). Plaintiff resides at the Property.

2. Defendant Selene Finance, LP (hereinafter "Selene") is a residential mortgage company with experience in all aspects of mortgage loan servicing. Selene was founded in 2007 and is headquartered in Houston, Texas.

3. Defendant MTC Financial d/b/a Trustee Corps (hereinafter "Trustee Corps") is a California Corporation which provides default services to the mortgage industry. Trustee Corps maintains offices in Irvine, California.

4. Defendant Bank of America, N.A. ("BANA") is a nationally chartered bank which is the lead bank within Bank of America Corporation, a financial holding company. BANA's main offices are located at 100 N. Tryon Street, Charlotte, NC 28255.

5. Defendant JPMorgan Chase Bank, N.A. ("Chase") is a nationally chartered bank organized under the laws of the United with its main office located in Columbus, Ohio as designated in its Articles of Association.

6. Defendant Wilmington Savings Fund Society, FSB ("WSFS") is a Delaware banking institution founded in 1832. Christiana Trust operates as a division of WSFS. It is solely in its capacity as trustee for the BCAT 2014-12TT that WSFS is sued in this lawsuit.

7. Plaintiff is ignorant of the true names and capacities of Defendants sued under fictitious names Does 1-100, inclusive, and Plaintiff will amend this Complaint to alleges such names and capacities as soon as they are ascertained. Plaintiff is informed and believe and thereon alleges that each of said fictiously named Defendants is responsible in some manner for the acts complained of herein.

8. Venue of this action is proper in this county as the residential real property which is the subject of this action is situated in Marin County, California, and the acts complained of occurred in San Rafael, California.

**B. MATERIAL FACTS COMMON TO ALL COUNTS**

9. On December 21, 2005, Plaintiff executed a hybrid fixed/ adjustable rate mortgage relating to the Subject Property which consists of a Deed of Trust ("DOT") and Adjustable Rate Rider. The DOT identifies Washington Mutual Bank as the lender and loan servicer. California Reconveyance Corporation is identified as the trustee. The DOT was recorded on December 30, 2005. A true and correct copy of the loan documents are attached hereto as **Exhibit "A"** and incorporated by reference as though fully set forth herein.

10. Chase purportedly became servicer of Plaintiff mortgage loan upon acquiring the failed Washington Mutual on September 25, 2008. Defendant Selene holds itself out as the current servicer.

11. On or before March 29, 2007 Washington Mutual, the sponsor in a securitization transaction, sold Plaintiff's mortgage loan to RESI Finance DE Corporation 2007-B ("RESI"), the securitization depositor. RESI, in turn, sold the loan to Wells Fargo Bank, N.A. as the trustee for the investors in the RESI Finance Limited Partnership, Mortgage Pass-through Certificates, Series 2007-B ("RESI 2007-B Trust"). Plaintiff's' mortgage loan was represented as part of the trust fund under original Washington Mutual Loan Number 3060169236. *See* true and correct copies of

relevant screenshots from the ABSNET database attached hereto as **Exhibit "B"** and incorporated

by reference as though fully set forth herein.  The governing trust documents require that all title and

interest in each mortgage loan be sold to the mortgage-backed securities trust. The sale of Plaintiff

mortgage loan, for full loan value, extinguished all interest in the mortgage formerly held by

Washington Mutual.

12. On January 5, 2006, John F. Lundy recorded a Grant Deed conveying his interest in the

Subject Property to John F. Lundy and Nancy A.M. Lundy, trustees of the 2001 Lundy Family Trust

dated May 3, 2001. A true and correct copy of the Grant Deed is attached hereto as **Exhibit "C"**

and incorporated by reference as though fully set forth herein.

13. On November 3, 2010, Chase, falsely holding itself out as successor- in-interest to

Washington Mutual Bank, FA, purported to assign its interest in Plaintiff's deed of trust and note to

Bank of America, N.A.  The assignment was recorded on November 4, 2010.  A true and correct

copy of the Assignment is attached hereto as **Exhibit "D"** and incorporated by reference as though

fully set forth herein.  As Plaintiff's mortgage loan was sold to the RESI 2007-B Trust before Chase

acquired any assets from Washington Mutual, Chase had no interest in Plaintiff's mortgage loan to

assign to anyone in 2010.  Therefore, the assignment is fatally defective, null and void.

14. Contemporaneously with the execution and recordation of the foregoing assignment,

California Reconveyance Company ("CRC") executed and recorded a Notice of Default ("NOD 1")

against the Plaintiff.  As the Notice of Default was pursuant to the foregoing void assignment, the

NOD is fatally defective, null and void.  Therefore, **there was no statutory default!**  A true and

correct copy of NOD 1 is attached hereto as **Exhibit "E"** and incorporated by reference as though

fully set forth herein.

15. Between February, 2011 and August, 2013, CRC issued five Notices of Trustee's Sale of

the Subject Property. The scheduled sales were postponed for a variety of reasons.  As the Notices

of Sale flow from the void NOD 1, they, similarly, are null and void.  The Notices of Sale are attached collectively hereto as **Exhibit "F"** and incorporated by reference as though fully set forth herein.

16. On January 16, 2014, Chase, as attorney-in-fact for BANA, executed a Substitution of Trustee ("SOT 1") purporting to substitute ALAW for CRC as the trustee under Plaintiff's deed of trust. A true and correct copy of SOT 1 is attached hereto as **Exhibit "G"** and incorporated by reference as though fully set forth herein.

17.  On February 5, 2015, BANA executed an Assignment of Deed of Trust ("Assignment 2") purporting to assign the deed of trust, together with the note, to Defendant Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust solely as trustee for BCAT 2014 12TT.  The Assignment was recorded on March 11, 2015.  A true and correct copy of Assignment 2 is attached hereto as **Exhibit "H"** and incorporated by reference as though fully set forth herein. As BANA was an invalid beneficiary, it had no interest in the mortgage loan to convey to WSFS.  Therefore, Assignment 2 is fatally defective, null and void.

18. On February 26, 2015, Plaintiff John F. Lundy sent Selene and WSFS a Qualified Written Request ("QWR 1") for information concerning the servicing of his mortgage loan pursuant to the Real Estate Settlement Procedures Act ("RESPA"), Section 2605(e), 12 U.S.C. §2506(e). Among the information Plaintiff sought was all assignments of the mortgage loan in order to establish the chain of title. A true and correct copy of QWR 1 is attached hereto as **Exhibit "I"** and incorporated by reference as though fully set forth herein. Neither Selene nor WSFS ever responded to QWR 1 in violation of the statute.

19. On July 2, 2015, Plaintiff John F. Lundy sent another QWR ("QWR 2") to Selene and WSFS requesting a response to QWR 1. A true and correct copy of QWR is attached hereto as **Exhibit "J"** and incorporated by reference as though fully set forth herein. Neither Selene nor

WSFS ever responded to the questions concerning loan servicing raised in QWR 2  in violation of RESPA.

20.  On July 10, 2015, Selene Finance, LP as servicer and attorney in fact for Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not in its individual capacity, but solely as Trustee for BCAT 2014-12TT recorded a Substitution of Trustee ("SOT 2") purporting to substitute Defendant Trustee Corps for ALAW as trustee under the DOT. A true and correct copy of SOT 2 is attached hereto as **Exhibit "K"** and incorporated by reference as though fully set forth herein. As WSFS is an invalid beneficiary, without authority to execute the substitution, SOT 2 is fatally defective, null and void.

21. On August 14, 2015, Trustee Corps recorded a Notice of Default ("NOD 2") against Plaintiff John F. Lundy.  Attached to NOD 2 is a California Declaration of Compliance with Civil Code § 2923.55(c) executed by Selene.  A true and correct copy of NOD 2 is attached hereto as **Exhibit "L"** and incorporated by reference as though fully set forth herein.  As NOD 2 was issued on behalf of WSFS, an invalid beneficiary, NOD 2 is fatally defective, null and void.  Therefore, **there is no default under California's non-judicial foreclosure statute!** Moreover, Defendants are in violation of Cal. Civil Code §2924(a)(6) which mandates that a notice of default be issued only by the holder of the beneficial interest in the deed of trust or its agent acting within the scope of authority delegated to it by the beneficiary.

22.  Neither Selene, Trustee Corps nor WSFS ever sent Plaintiff, either before or after issuing NOD 2, a statement that he may request a copy of the promissory note or other evidence of indebtedness and a copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate to right of the mortgage servicer to foreclose as mandated by Cal. Civil Code §§ 2923.55(a) and (b)(1)(B).

23.  Selene has also violated Cal. Civil Code sections 2924.17(a) and (b) that require that before

filing a notice of default, notice of sale, assignment of deed of trust or substitution of trustee, "a mortgage servicer shall insure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclosure including the borrower's loan status and loan information". If Selene had made an investigation in order to respond the Plaintiff's QWRs and in order to comply with Cal. Civil Code §§ 2923.55(a) and (b)(1)(B), it would have known that neither WSFS, Trustee Corps or itself has authority to foreclose. Selene would have known that Wells Fargo Bank, N.A., as trustee for the RESI 2007-B Trust, is the true beneficiary having authority to foreclose and to direct its agents to exercise the power of sale under the DOT.

24. Due to the draconian consequences of a non-judicial foreclosure, strict compliance with the provisions of the non-judicial foreclosure statute is required. *Miller v. Cote* (1982) 127 Cal. App. 3d 888, 894 (a trustee sale based on a statutorily deficient notice of default is invalid). Here, Defendants have committed numerous, egregious violations of the statute.

## C.  CAUSES OF ACTION

### COUNT I: WRONGFUL FORECLOSURE

### (Chase, BANA, Selene, WSFS and Trustee Corps)

25. Plaintiff re-allegess and incorporates by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

26. A trustee is an agent of the beneficiary of a mortgage loan and unlawful conduct of the trustee is imputed to its principal, the beneficiary.

27.  A trustee has a duty not to conduct an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a deed of trust.

28. A trustee is also liable to a trustor or mortgagor in California upon the basic principle of tort liability enunciated in Civil Code §1709 that every person is bound by law not to injure the person or property of another or infringe on any of his rights. *See also Munger v. Moore,* (1970) 11

1    Cal. App.3d 1, 7-8.

2        29. Defendants have breached his duty to Plaintiff and that breach is the proximate cause of

3    the damages suffered by the Plaintiff.

4
         30. The interest in Plaintiff's loan formerly held by Washington Mutual was extinguished as of
5
     March 29, 2005, when Washington Mutual sold the loan, for full loan value, to the RESI 2007-B
6
7    Trust.  Therefore, Plaintiff's mortgage loan was not among the assets acquired by Defendant Chase

8    from Washington Mutual in September, 2008.  Instead, the mortgage loan was part of the *res* of the

9    MBS Trust. Accordingly, Chase had no interest to convey to Defendant BANA in 2010.  Therefore,

10   the November, 2010 assignment from Chase to BANA is fraudulent, null and void. It follows,

11
     therefore, that the 2015 assignment from BANA to WSFS, as trustee for the BCAT 2014-12TT trust
12
13   is, likewise, fraudulent, null and void.

14       31.  All of the foreclosure documents that flow from the fraudulent and void assignments are

15   fatally defective, null and void.

16       32. Trustee Corps cannot legally exercise the power of sale under Plaintiff's deed of trust

17   because it was substituted by on behalf of WSFS, an invalid trustee. The 2015 Substitution of

18
     Trustee violates the provisions of Cal. Civil Code section 2934a(a)(1)(A) which require that the
19
20   Substitution must be executed and acknowledged by all beneficiaries.

21       33. Trustee Corps cannot legally conduct a foreclosure sale of Plaintiff's property for the

22   additional reason that the NOD 2 was executed and recorded on behalf of WSFS,  invalid

23   beneficiary, in violation of Cal. Civil Code sections 2924(a)(1) and (a)(6).

24       34. Defendants have also violated provisions of the Homeowners' Bill of Rights Act which

25   amended the non-judicial foreclosure statute, effective January 1, 2013. The Homeowner's Bill of

26   Rights Act ("HBOR") was enacted to address widespread abuses by the disgraced banking industry.

27
     The HBOR amendments, read together, "confirm the Legislature's intent to ensure that the party
28

1  foreclosing on a homeowner is the "holder" of the debt and can demonstrate proof of ownership if

2  called upon to do so." *Amicus Brief filed by Attorney General Kamala D. Harris* in favor of the

3  Plaintiff *in Yvanova v. New Century Mortgage Corporation, et al.,* (2014) 226 Cal. App. 4th 495

4  (#14-100; S218973), at 6. A true and correct copy of the Amicus Brief is attached hereto as **Exhibit**

5  **"M"** and incorporated by reference as though fully set forth herein.

6  

7       35. Specifically, all defendants have violated Cal. Civil Code sections 2923.55(a) and

8  (b)(1)(B) that require that "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized

9  agent may not record a notice of default pursuant to section 2924 until all of the following has

10  occurred:

11       (1) The mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b)."

12  Section 2923.55(b)(1) provides, in pertinent part, that "[a]s specified in subdivision (a), a mortgage

13  servicer shall send the following information in writing to the borrower:

14  

15       B. A statement that the borrower may request the
            following:

16                    (i)  a copy of the borrower's promissory note or other
17                         evidence of indebtedness;

18                    (ii) a copy of the borrower's deed of trust or mortgage.
                      (iii) a copy of any assignment, if applicable, of the
19                         borrower's mortgage or deed of trust required to
                         demonstrate to right of the mortgage servicer to
20                         foreclose."

21       36. None of the Defendants sent Plaintiff the statement mandated by Section

22  2923.55(b)(1)(B). Moreover, on February 26, 2015, Plaintiff John F. Lundy sent Selene and WSFS

23  a Qualified Written Request for information about his mortgage loan which included a request for

24  the promissory note and all assignments of the deed of trust. Having received no response to this

25  QWR, on July 2, 2015, Plaintiff filed a second QWR to Selene and WSFS.

26  

27       37. Defendants are in violation of Cal. Civ. Code Section 2924(a)(6) which is one of the

28  HBOR amendments to the nonjudicial foreclosure statute. Cal. Civ. Code section 2924(a)(6), which

---

1  became law on January 1, 2013, mandates that:

2      [n]o entity shall record or cause a notice of default to be recorded or otherwise initiate the
3  foreclosure process unless it is the holder of the beneficial interest under the  mortgage or deed of
   trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of
4  the holder of the beneficial interest.  No agent of the holder of the beneficial   interest under the
   mortgage or deed of trust may record a notice of default or  otherwise commence the foreclosure
5  except when acting within the scope of authority designated by the holder of the beneficial interest.
   WSFS is not a valid beneficiary.  Consequently, neither Trustee Corps nor Selene could act under
6
7  the scope of authority delegated to them by the true beneficiary, that is, Wells Fargo Bank, N.A. as

8  trustee for the RESI 2007-B Trust.  NOD 2 issued by Trustee Corps at the direction of either Selene

9  or WSFS, is fatally defective, null and void.

10     38. Selene has also violated Cal. Civil Code sections 2924.17(a) and (b) which require that,

11
12  before filing a notice of default, notice of sale, assignment of deed of trust or substitution of trustee,

13  "a mortgage servicer shall insure that it has reviewed competent and reliable evidence to substantiate

14  the borrower's default and the right to foreclose including the borrower's loan status and loan

15  information".  If Selene had made an investigation in order to respond the Plaintiff's QWRs and in

16  order to comply with Cal. Civil Code §§ 2923.55(a) and (b)(1)(B), it would have known that neither

17  WSFS, Trustee Corps or itself has authority to foreclose. Selene would have known that Wells

18  Fargo Bank, N.A., as trustee for the RESI 2007-B Trust, is the true beneficiary having authority to
19
20  foreclose and to direct its agents to exercise the power of sale under the DOT.

21     39. Defendants' egregious violations of California's non-judicial foreclosure statute and

22  common law constitute civil fraud under Cal. Civ. Code sections 1572, 1708, 1709, 1710  and

23  criminally actionable fraud under Cal. Penal Code sections 115 and 532(f)(a). These knowing,

24  blatant violations of law have served to deprive Plaintiff of his constitutional due process rights

25  guaranteed by the U.S. Constitution and Art. I section 7 of California's Constitution.

26     40. In initiating and pursuing the aforementioned illegal and fraudulent foreclosure
27
   proceedings, Chase, BANA, Selene, WSFS and Trustee Corps have acted with willful
28

oppressiveness and malice toward the Plaintiff.

41. Plaintiff has suffered damages proximately caused by the illegal and fraudulent foreclosure activities against them by Defendants, including but not limited to, the imminent loss of his real property, the loss of his down payment on the loan, increased costs and fees assessed against them associated with the wrongful foreclosure activities, payments made to, and on behalf, of entities who have no right to them, severe emotional distress, the costs of retaining a forensic mortgage loan auditor and attorney to investigate the fraudulent and otherwise illegal activities of the defendants and damage to his credit.  Plaintiff is also entitled to and seeks punitive damages against Chase, BANA, Selene, WSFS and Trustee Corps as a result of the illegal, fraudulent and willfully oppressive foreclosure activities against Plaintiff that defendants personally conducted.

**WHEREFORE,** Plaintiff requests judgment in Plaintiff's favor and an order of the Court:

(a) Awarding compensatory damages in an amount to be proved at trial;

(b) Emotional distress damages in an amount to be proved at trial; and

(c) Punitive damages in an amount sufficient to deter similar conduct on the part of the Defendants in the future.

## COUNT II:  QUIET TITLE

### (Against Defendant WSFS)

42. Plaintiff re-alleges and incorporate the preceding paragraphs by reference as though fully set forth herein.

43. Plaintiff is, and at all times herein mentioned were, the owners and/or entitled to exclusive possession of the real property located at  29 Bridgegate Drive, San Rafael, Marin County, California  94903; APN 164-570-29.  The full legal description of the Subject Property is attached hereto as Exhibit "A" to the DOT (Exhibit "A hereto).

44. Defendant WSFS as trustee for the BCAT 2014-12TT MBS Trust claims to hold the beneficial interest in Plaintiff's deed of trust.  WSFS's claims are adverse to Plaintiff's because it does not hold either the Note or DOT, cannot prove any interest in the NOTE or DOT or that the NOTE is secured by the DOT, as well as for the reasons set forth in the causes of action *supra* and *infra*. As such, WSFS has no right, title, lien, or interest in the Subject Property.

45. Plaintiff seeks to quiet title against the claims of WSFS and all persons, known and unknown, claiming any legal or equitable right, title, estate, lien, or adverse interest in the Subject Property as of the date the Verified Complaint was filed (Cal. Code Civ. Proc. §760.020). Defendant WSFS claims an interest in the property adverse to Plaintiff herein.  However, the claim of said Defendant is without any right whatsoever, and said Defendant has no legal or equitable right, claim, or interest in the property.

46. Plaintiff's interest in the subject property is superior to that of WSFS Because WSFS never received an effective assignment of the NOTE or DOT and, thus, holds no interest whatever in Plaintiff's mortgage loan. Plaintiff's interest in his mortgage is as mortgagors as established in the original mortgage documents. *See* Exhibits "A" and "C".

47. Plaintiff therefore seeks a declaration that the title to the Subject Property is vested in Plaintiff alone, free and clear of encumbrances in favor of WSFS and persons known and unknown, and that the Defendants herein and persons known and unknown, and each of them, be declared to have no estate, right, title, lien or interest in the Subject Property and that said Defendants and persons known and unknown, and each of them, be forever enjoined from asserting any estate, right, title, lien or interest in the Subject Property adverse to Plaintiff herein.  Plaintiff seeks an order from this court instructing the clerk of the court to execute in recordable form a deed of reconveyance to Plaintiff's Property.

48. Plaintiff is not required to tender any outstanding mortgage debt because the

Defendants seeking to collect the debt are without standing to do so and the threatened foreclosure has not yet taken place.  Furthermore, any arrearages are more than offset by the damages suffered by Plaintiff due to the fraudulent, illegal activities and statements of the Defendants.

**WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them as hereinafter set forth.**

<u>**COUNT III:  VIOLATION OF CAL. CIVIL CODE SECTION 2923.55(a) and (b)(1)(B)**</u>

**(Against Selene, WSFS and Trustee Corps)**

49.  Plaintiff reaffirms and re-alleges the preceding paragraphs as if set forth fully herein.

50.  Cal. Civil Code section 2923.55(a) provides that "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to section 2924 until all of the following has occurred:

(1) The mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b)." Section 2923.55(b)(1) provides, in pertinent part, that "[a]s specified in subdivision (a), a mortgage servicer shall send the following information in writing to the borrower:

B. A statement that the borrower may request the

    following:

> (i)  a copy of the borrower's promissory note or other evidence of indebtedness;
> (ii)  a copy of the borrower's deed of trust or mortgage.
> (iii)  a copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate to right of the mortgage servicer to foreclose."

51.  The foregoing provisions were added to the non-judicial foreclosure statute, *inter alia,* because promissory notes, deeds of trust and assignments are not required to be recorded in California. Therefore, it is often impossible for the borrower to determine the chain of title to his or

1  her loan. Trustee Corps recorded the August 14, 2015 NOD on behalf of WSFS as trustee for the

2  BCAT 2014-12TT trust and/or Selene. *See* Exhibit "L" at 2. Selene Finance, LP, as servicer,

3  executed the Declaration of Compliance accompanying the NOD. Neither Trustee Corps, Selene nor

4  WSFS ever sent to Plaintiff the statement required by Cal. Civil Code section 2923.55(b)(1)(B) either

5  before, or after, the NOD was recorded.  Therefore, these Defendants are in violation of this statutory

6  provision.

7  
8       52. Defendants' violation of Cal. Civil Code section 2923.55(a) and (b)(1) is material and

9  willful.

10      53. Cal. Civil Code section 2924.12 (a)(1) provides that "if a trustee's deed upon sale has not

11  been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of

12  section 2923.55. ..." Section 2924.12(a)(2) provides that "any injunction shall remain in place  and

13  any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee,

14  trustee, beneficiary or authorized agent has corrected and remedied the violation or violations giving

15  rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based

16  
17  on a showing that the material violation has been corrected and remedied."

18      **WHEREFORE**, Plaintiff requests judgment in Plaintiff's favor and an order of the Court:

19      (a)  Ruling that defendants are in violation of Cal. Civil Code section 2923.55(a) and (b)(1);

20      (b)  Prohibiting any trustee's sale of Plaintiff's property until it has determined that the

21  violations of section 2923.55(a) and (b)(1) have been corrected and remedied.

22      (c)  If any of the Defendants records a Trustee's Deed Upon Sale before the violations are

23  
24  corrected and remedied, Plaintiff requests statutory damages pursuant to Cal. Civil Code

25  section 2924.12(b).

26  //

27  //

28

## COUNT IV: VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES

## ACT, 12 U.S.C. SECTION 2601, *et seq.*

### (Against Selene)

54.   Plaintiff re-alleges and incorporate the preceding paragraphs by reference as though fully set forth herein.

55.   Plaintiff's mortgage loan is a "federally related mortgage loan subject to the provisions of the federal Real Estate Settlement Procedures Act, 12 U.S.C. section 2602(1).

56.   On February 26,, 2015, and again on July 2, 2015, Plaintiff sent a Qualified Written Request ("QWR") for information concerning the servicing of his mortgage pursuant to section 2605(e) of the Real Estate Settlement Procedures Act ("RES{A"), 12 U.S.C. section 2605(e) to Defendant Selene which holds itself out as the loan servicer.

57.   Among other things, Plaintiff requested information concerning the chain of title to hismortgage loan to determine the true note holder and beneficiary under his deed of trust and, further, to determine whether Selene is a valid servicer with respect to his loan with the authority to collect mortgage payments from them. *See* Paragraphs 18 and 19, *supra* and Exhibits I and J.

58.   Pursuant to 12 U.S.C. § 2605(e)(1)(A), Selene was required to send Plaintiff confirmation that they received the QWRs within five days of receipt of the QWR.   Pursuant to Section 2605(e)(2), Selene was required to provide substantive responses to the QWRs within thirty days.

59.   In a letter dated July 7, 2015, Selene acknowledged receipt of the QWR(s). A true and correct copy of the acknowledgment letter is attached hereto as **Exhibit "N"** and incorporated by reference as though fully set forth herein.  However, Selene never responded substantively to the QWRs.

60.   Determining whether a purported servicer has the authority to service a mortgage loan is

a fundamental servicing issue. In fact, chain of title information is necessary to determine whether the account of the borrower(s) "is correct as determined by the servicer". *See* RESPA § 2605(e)(2)(B)(i).

61.     Specifically, Selene has been collecting mortgage payments on behalf of an invalid beneficiary which has no authority to receive them. Therefore, Plaintiff's loan account is incorrect and must be adjusted to cure the error.  This is especially so as Plaintiff still owes mortgage payments to the entity which truly is entitled to enforce his mortgage. In this situation, Plaintiff is in default of his mortgage obligations to the real beneficiary or person entitled to enforce his mortgage.

62.     Accordingly, for the foregoing reasons, Selene has violated the QWR provisions of RESPA.

**WHEREFORE, Plaintiff prays for an order awarding damages, attorney's fee and costs available under the statute.**

## COUNT V: VIOLATION OF CALIFORNIA RESIDENTIAL MORTGAGE LENDING ACT,

## CAL. FIN. CODE SECTION 50505

### (Against Selene)

63.     Plaintiff re-alleges and incorporate the preceding paragraphs by reference as though fully set forth herein.

64.     Plaintiff's mortgage loan is covered by the California Residential Mortgage Lending Act ("CRMLA"), codified in the California Financial Code section 50505.

65.     The CRMLA provides that "[a]ny person who violates any provision of [RESPA] or any regulation promulgated thereunder, violates this division [CRMLA].

66.     Defendant Selene has violated the QWR provisions of RESPA. *See* Count IV, *supra.* Therefore, Selene has violated the CRMLA.

67.     Plaintiff is informed and believe, and thereon alleges, that Selene has engaged in a

1  pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of

2  RESPA set forth in 12 U.S.C. §2605.

3  **WHEREFORE, Plaintiff prays for an order awarding statutory damages, reasonable**

4
5  **attorney's fee and costs available under the CRMLA, RESPA and/or the California Business**

6  **& Professions Code.**  *See* Financial Code § 50510 (penalties).

7  ### COUNT VI: VIOLATION OF CAL. CIVIL CODE SECTION 2924.17

8  **(Against Selene)**

9     68.    Plaintiff refers to and incorporate herein by this reference the allegations contained in

10  the foregoing paragraphs as though set forth fully herein.

11     69.    Section 2924.17(a) provides in pertinent part that:

12
13
14     [a] notice of default, notice of sale, assignment of deed of trust, or substitution of trustee
       recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the
15     requirements of Section 2924, or a declaration or affidavit filed in any court relative to a
       foreclosure proceeding shall be accurate and complete and supported by competent and
16     reliable evidence.

17  Section 2924.17(b) states that:

18     Before recording or filing any of the documents described in subdivision (a), a mortgage
19     servicer shall insure that it has reviewed competent and reliable evidence to substantiate the
       borrower's default and the right to foreclose including the borrower's loan status and loan
20     information.

21  The above-recited provisions were added to the non-judicial foreclosure statute pursuant to the

22  recently enacted California Homeowner's Bill of Rights Act designed to address widespread

23  violations of law by the banking industry.

24     70. As explained with particularity above, the Assignment of Deed of Trust from BANA to

25  WSFS, as trustee, in 2015 (Exhibit "H"), the 2015 Substitution of Trustee (Exhibit "K") and  NOD 2

26
27  issued in 2015 (Exhibit "L") are invalid and void documents.  Obviously, Selene breached its legal

28  duty to review these documents before they were filed "to substantiate the borrower's default and the

---

*Lundy v. Selene Finance, LP, et al.*                    VERIFIED COMPLAINT                    17

right to foreclose including the borrower's loan status and loan information".

71.   As a result of Defendant's violation of §§2924.17(a) and (b), Plaintiff has

suffered damages including, but not limited to, the imminent loss of his home, assessment of late

fees, administrative fees, costs associated with Defendants' foreclosure activity, destruction of his

creditworthiness, mortgage payments made for the benefit of invalid beneficiaries, and fees paid to a

forensic mortgage loan auditor and attorneys required to protect his property rights and due process

rights guaranteed by the California Constitution.

**WHEREFORE, Plaintiff prays for judgment in his favor and an order of the Court**:

(a) Awarding compensatory damages in an amount to be proved at trial;

(b) Awarding any available statutory damages, including damages available under any

California private attorney general statutes.

## COUNT VII: VIOLATION OF BUSINESS & PROFESSIONS CODE, SECTION

## 17200 *et seq.*

### (Against All Defendants)

72. Plaintiff re-alleges and incorporate by this reference the allegations contained in the

foregoing paragraphs as though set forth fully herein.

73. California Business and Professions Code §17200 et seq. (also known as the Unfair

Competition Law or UCL) prohibits acts of unfair

competition, which means and includes any "fraudulent business practice" and conduct which is

"likely to deceive" and is "fraudulent" within the meaning of §17200.

74. As more fully described above, the acts and practices of Defendants are likely to

deceive, constituting a fraudulent business act or practice. *See*, in particular, allegations set forth in

Counts I and III through VIII.  This conduct is ongoing and continues to this day.

75. Specifically, and as set forth with greater particularity in preceding paragraphs, the

named Defendants, and each of them, have engaged and are engaging in deceptive business practices with respect to mortgage servicing and foreclosure activity and the mailing of fraudulent foreclosure documents and related matters by, *inter alia*:

        a.      Executing false and misleading documents, including fabrication of the 2010 Assignment of Deed of Trust (Chase and BANA), the 2010 NOD (BANA), the 2015 Assignment (BANA and WSFS), the 2015 SOT (Selene and WSFS) and the 2015 NOD (Trustee Corps, Selene and WSFS).

        b.      Executing documents without the legal authority to do so (Chase, BANA, Selene, WSFS, Trustee Corps);

        c.      Acting as beneficiaries and trustees without the legal authority to do so (Chase, BANA, WSFS (beneficiaries) and Trustee Corps (trustee);

        d.      Failing to comply with California Civil Code §§ 1708 and1709 (all defendants);

        e.      Violating provisions of the non-judicial foreclosure statute set forth at California Civil Code §§ 2924(a)(1), 2924(a)(6) (Selene, WSFS, Trustee Corps), 2924.17 (Selene), 2923.55 (a) and (b)(1)(B) ( WSFS, Selene and Trustee Corps) and 2934a(a)(1)(A) ( WSFS, Selene);

        f.      Violating 12 U.S.C. § 2601 *et seq.* (Selene);

        g.      Violating Section 50505 of the Cal. Finance Code (Selene);

        h.      Committing a felony under §115 of the California Penal Code (all Defendants);

        i.      Committing mortgage fraud within the meaning of Cal. Penal Code §532(f)(a) (all Defendants);

        j.      Violating the due process protections afforded under Article I, section 7 of the California Constitution (all defendants); and

        k.      Engaging in other deceptive practices, including those which may be uncovered during the course of discovery.

76. Plaintiff alleges that the named Defendants' misconduct, as allegesd herein, gave, and has

given, Defendants, and each of them, an unfair competitive advantage over their competitors. Specifically, defendants have engaged in a scheme to defraud the Plaintiff and have committed numerous material violations of the non-judicial foreclosure statute in order to illegally take Plaintiff's property. Presumably, other members of the banking industry are following the requirements of the non-judicial foreclosure statute and other statutory and common laws in their foreclosure proceedings. The scheme implemented by Defendants, in collusion with one another, is specifically designed to defraud California consumers and enrich Defendants at the expense of consumers in this State.

77. By reason of the foregoing, Defendants should be enjoined from continuing such practices pursuant to California Business & Professions Code §§17203 and 17204. Plaintiff has suffered injury- in- fact, including but not limited to, the imminent loss of his home, severe emotional distress, damage to his creditworthiness and monies paid to these defendants which have no right to collect mortgage payments from Plaintiff. In addition, Defendants WSFS and Selene have assessed costs and fees against Plaintiff associated with the wrongful collection and foreclosure activities of the defendants. Undoubtedly, other members of the public, similarly have fallen victim to Defendants' deceptive schemes, are likely to be injured as well.

78. The harm to Plaintiff and to members of the general public outweighs the utility (if any) of Defendants' policies and practices. Consequently, their policies and practices constitute unlawful business acts or practices within the meaning of Business & Professions Code §17200. Moreover, the foregoing conduct promotes an incipient violation of a consumer law, or violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

79. Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under

Business & Professions Code §17200 *et seq.* and related sections and under any California private attorney general statutes. The acts and practices described in the foregoing paragraphs are unfair and violate the Business & Professions Code because they constitute violations of all the statutes previously listed above.

**WHEREFORE, Plaintiff prays the Court for an Order and Decree that:**

a.      Pursuant to Business & Professions Code §17203, all of the Defendants, their successors, agents and assigns, representatives, employees, and all persons who act in concert with them, are permanently enjoined from committing all acts of unfair competition in violation of §17200 including, but not limited to, the violations identified in Counts I, III, IV through VII and VIII, *infra,* of Plaintiff Complaint;

b.      Plaintiff is entitled to an award of statutory attorney's fees;

c.      Plaintiff is entitled to statutory damages including damages available under relevant private attorney general statutes, including CCP 1021.5;

d.      Plaintiff is entitled to injunctive relief;

e.      Plaintiff is entitled to the cost of suit; and

f.      Any other relief the Court deems just and proper.

## COUNT VIII: UNJUST ENRICHMENT

### (Against Chase, BANA and Selene)

80.  Plaintiff refers to and incorporates by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

81.  Defendant Selene claims rights to payments on Plaintiff's loan as the servicer of his mortgage loan.  Selene has no rights to such payments as it has attempted to collect payments on behalf of an invalid beneficiary (WSFS). Selene has also wrongly assessed fees and costs against the Plaintiff associated with its wrongful foreclosure activities.

82. Defendant Chase falsely claims to be the former loan servicer as successor- in- interest to Washington Mutual, the original servicer. Plaintiff, in fact, made payments to Chase for the benefit of BANA and Chase, both invalid beneficiaries.

83. Defendants had knowledge of such circumstances giving rise to unjust enrichment at the time of claiming rights to payment from Plaintiff on the loan. Defendants acquired a benefit at the expense of Plaintiff without Plaintiff's knowledge or consent.

84. There exists no express contract between Plaintiff and any of the Defendants governing the collection of mortgage payments and foreclosure fees and expenses.

85. Defendants have received a benefit from Plaintiff for money had and received. It is unjust for Defendants to retain the benefit at the expense of the Plaintiff.

**WHEREFORE,** Plaintiff requests that this Court issue an Order and Decree that the named Defendants and each of them had no right to payments on the loan and that Defendants Chase and BANA and each of them shall return to Plaintiff all payments made to Chase for the benefit of Chase, BANA and/or WSFS. Plaintiff also requests that the Court order the return to Plaintiff of all mortgage payments made to Washington Mutual after the loan was sold to Wells Fargo as trustee for the RESI 2007-B Trust until September 25, 2008 when Chase falsely claims to have acquired Plaintiff's mortgage loan.

## COUNT IX- ACCOUNTING

### (Selene, Chase and BANA)

86. Plaintiff refers to and incorporates by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

87. Defendants Chase and BANA owe Plaintiff money to which they are not entitled and which they obtained from Plaintiff under false pretenses. *See* allegations set forth in

1    Count VIII, *supra*, which are specifically incorporated by reference herein.

2          89. Defendants dispute Plaintiff's allegations.

3          90. At all material times hereto, Plaintiff had a trustor/loan servicer relationship with Chase

4    because Chase held itself out as servicer of his mortgage loan.

5

6          91. Plaintiff currently has a trustor/ loan servicer relationship with Selene.

7          92. Plaintiff has a mortgagor/mortgagee or beneficiary relationship with WSFS as WSFS

8    purports to have the authority to enforce Plaintiff's mortgage loan.

9          93. The accounts are complicated; therefore, an accounting is necessary to determine the

10   sums owed to Plaintiff by each of the Defendants. Specifically, an accounting is necessary to

11   determine how many payments were paid over to Wells Fargo Bank, N.A. for the benefit of the

12   investors in the RESI 2007-B Trust, how many payments were made to Chase during the time it

13   held itself out as beneficiary as successor-in-interest to Washington Mutual, how many payments

14

15   were paid over to BANA during the time it purportedly held the beneficial interest in the loan, and

16   how many payments were paid over to WSFS for the benefit of the investors in the BCAT 2014-

17   12TT Trust. An accounting is required for the additional reason that Washington Mutual improperly

18   collected mortgage payments from the Plaintiff after it sold Plaintiff's mortgage loan to Wells Fargo

19   as trustee for the RESI 2007-B Trust until September 25, 2008, when Chase falsely claims to have

20   acquired Plaintiff's loan from Washington Mutual.

21

22          **WHEREFORE,** Plaintiff requests that the Court order an accounting to determine the sums

23   owed to Plaintiff by each of the Defendants.

24                              **PRAYER FOR RELIEF**

25          **WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them as**

26   **set forth below:**

27

28          1. For an order forever enjoining the defendants, and each of them, their agents,

representatives, successors and assigns, from initiating and pursuing foreclosure activity against the Plaintiff relating to the Subject Property;

2.      For a finding and determination that Plaintiff is the rightful holders of the title to the Property and that Defendant WSFS has no estate, right, title, lien or interest in said Property;

3.      For a judgment forever enjoining said defendants, and each of them, from claiming any estate, right, title, lien or interest in the Subject Property;

4.      For a judgment that not one of the Defendants has any unencumbered legal interest in both the NOTE and DOT;

5.      Plaintiff further prays that the Court issue an Order and Decree canceling the 2010 Assignment of Deed of Trust, the 2015 Assignment of Deed of Trust, the 2015 Substitution of Trustee and the 2015 Notice of Default finding same void as to Plaintiff and that the Court instruct the clerk to execute a full deed of reconveyance of the Deed of Trust in favor of Plaintiff.

6.      For a finding that all Defendants Selene, Trustee Corps and WSFS are in violation of Cal. Civil Code section 2923.55(a)and (b)(1)(B).

7.      For a finding that Selene is in violation of Cal. Civil Code §2924.17.

8.      For a finding that Selene is in violation of 12 U.S.C. § 2605 *et seq.*

9.      For a finding that Selene is in violation of Cal. Fin. Code § 50505.

10.     For general, consequential and special damages according to proof;

11.     For emotional distress damages;

12.     For punitive damages in an amount sufficient to deter the fraudulent and other misconduct set forth with particularity in Counts I, III, IV, V, VI, VII and VIII of this Complaint in the future;

13.     For reasonable attorney's fees;

14.     For costs of suit herein; and

15.   For such other and further relief as the court deems just and proper.

LAW OFFICES OF CHARLES T. MARSHALL

Dated: November 6, 2015                   By:

Charles T. Marshall
Attorney for Plaintiff
JOHN F. LUNDY

1

**VERIFICATION**

2

I, JOHN F. LUNDY, declare as follows:

3

I am the Plaintiff in this action, and I hereby declare I have read the foregoing Verified

4

Complaint and know the contents thereof and believe that the matters stated therein are true of my

5

own knowledge, except as to those matters which are therein allegesd on information and belief, and

6

as to those matters, I believe them to be true.

7

I hereby declare under the penalty of perjury, that the foregoing is true and correct

8

This verification was executed this 6th day of November 2015 in San Rafael, California.

9

10

_____

11

JOHN F. LUNDY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

Recording Requested By:
**WASHINGTON MUTUAL BANK, FA**

Return To:
**WASHINGTON MUTUAL BANK, FA**
**7255 BAYMEADOWS WAY**
**JACKSONVILLE, FL 32256**
**DOC OPS M/S JAXG 1060**

Prepared By:
**WALI SHAGHEL**

|||| |||| ||| |||| ||| ||||| |||| ||||
## 2005-0098332

| Recorded | REC FEE 69.00 |
| Official Records | |
| County Of | |
| Marin | |
| JOAN C. THAYER | |
| Recorder | |
| | JB |
| 12:24PM 30-Dec-2005 | Page 1 of 21 |

216753

ZCA1
M28

— [Space Above This Line For Recording Data] —

# DEED OF TRUST

3060169236-068

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  DECEMBER 21, 2005
together with all Riders to this document.
**(B) "Borrower"** is  JOHN F LUNDY, A MARRIED MAN

Borrower's address is   29 BRIDGEGATE DRIVE, SAN RAFAEL, CA 94903
. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is  WASHINGTON MUTUAL BANK, FA

Lender is a  FEDERAL SAVINGS BANK
organized and existing under the laws of  THE UNITED STATES OF AMERICA

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01

‑6(CA) (0207)
Page · of 15          Initials
VMP MORTGAGE FORMS - (800)521‑7291

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV 89014

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is   CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP

(E) "Note" means the promissory note signed by Borrower and dated DECEMBER 21, 2005
The Note states that Borrower owes Lender ONE MILLION ONE HUNDRED THIRTY FOUR
THOUSAND AND 00/100                                                            Dollars
(U.S. $   1,134,000.00      ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than JANUARY 01, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

Initials:

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of MARIN :

        [Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF**

Parcel ID Number:                             which currently has the address of
**29 BRIDGEGATE DRIVE**                                   [Street]
**SAN RAFAEL**                   [City], California **94903**   [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

-6(CA) (0207)                   Page 3 of 15         Initials:         Form 3005 1/01

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Initials: _____

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Initials: ___

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Initials: 

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

ZCA2

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                                              -Borrower
                                          **JOHN F  LUNDY**


_____          _____ (Seal)
                                                                              -Borrower


_____ (Seal)   _____ (Seal)
                       -Borrower                                 -Borrower


_____ (Seal)   _____ (Seal)
                       -Borrower                                 -Borrower


_____ (Seal)   _____ (Seal)
                       -Borrower                                 -Borrower

State of California
County of  MARIN                                        } ss.

On   12·2305                     before me,  DONNA SANTIAGO
                                                        personally appeared
JOHN F LUNDY


personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

                                                                              (Seal)



DONNA SANTIAGO
COMM. # 1381346
NOTARY PUBLIC ● CALIFORNIA
MARIN COUNTY
Comm. Exp. NOV. 20, 2008

**LGLD**

**LEGAL DESCRIPTION**

3060159236-058

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF**

Title No. 05-269753
Locate No. CAFNT0921-0921-0001-0000269753

## LEGAL DESCRIPTION

### EXHIBIT "A"

The land referred to herein is situated in the State of California, County of Marin, an Unincorporated Area, and is described as follows:

LOT 45, as shown upon that certain Map entitled, "Map of Lucas Valley Estates Unit One", filed for record May 13, 1987 in Volume 20 of Maps, at page 13, Marin County Records.

APN: 164-570-29

CLTA Preliminary Report Form (11/17/04)

R2US
M28

3060169236-068

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **21ST** day of **DECEMBER, 2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
**WASHINGTON MUTUAL BANK, FA**

("Lender") of the same date and covering the property described in the Security Instrument and located at:
   **29 BRIDGEGATE DRIVE**
   **SAN RAFAEL, CA 94903**
                    (Property Address)

> THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of **6.225** %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
   (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **JANUARY 01, 2011**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

MULTISTATE FIXED/ADJUSTABLE RATE RIDER – WSJ One-Year LIBOR – Single Family –
Fannie Mae Uniform Instrument                          Form 3187 6/01
⬤-168R (0401)
Page 1 of 4      Initials: _____
VMP Mortgage Solutions
(800)521-7291

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   TWO AND 10/100   percentage points (   2.100   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   10.225   % or less than   2.100   %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   10.225   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)  
                        −Borrower  

_____ (Seal)  
                        −Borrower  

JOHN F LUNDY

_____ (Seal)  
                        −Borrower  

_____ (Seal)  
                        −Borrower  

_____ (Seal)  
                        −Borrower  

_____ (Seal)  
                        −Borrower  

_____ (Seal)  
                        −Borrower  

_____ (Seal)  
                        −Borrower  

-168R (0401)            Page 4 of 4            Form 3187 6/01

# EXHIBIT "B"

*The following are true and correct captured screenshots from ABSNet's database of securitized mortgage loans for the MBS Trust: RESIF 2007-B TRUST. The subject Mortgage Loan under Pool Group ID: RESI07-B-2 (accurately identified here with its original WMB Loan No. 3060169236) is, in fact, listed here and currently represented as part of the trust fund of the RESIF 2007-B TRUST.*



*<u>NOTE</u>: The Subject Loan is part of **Loan Group 2** primarily backing **Class A-2 and B2 Securities Certificates** issued by the RESIF 2007-B TRUST. The last reporting period was August 2010.*

Reporting Period Aug 2010

Chart Data Export to Excel

**Pool Performance Data**

| Name | Currency | Pool Bal - Original | Pool Bal - End | WAC - Net | WARM | WALA | CPR - Current | CDR - Current | 30 Day Delq Bal % | 60 Day Delq Bal % | 90 Day Delq Bal % | BK Bal % | FCL Bal % | REO Bal % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Pool | USD | 14,371,593,409 | 7,055,585,252 | 6.074% | 330 | – | 15.177% | – | 1.576% | 1.017% | 3.901% | 1.440% | 5.122% | 1.769% |

**Triggers**

No data available for this deal and/or reporting period.

**Stepdown/Lockout**

| Lockout Periods | % | Lockout Periods | % |
|---|---|---|---|
| 0-84 | 100% | 109-120 | 40% |
| 85-96 | 70% | 121-132 | 20% |
| 97-108 | 60% | 133-999 | 0% |

**Credit Support**

No data available for this deal and/or reporting period.

**Capital Structure**

| Name | Currency | ID | Pools | Class Bal - Original | Class Bal - End | Class Factor | Coupon % - Current | Subordination % - Original | Subordination % - Current | S&P | Moody's | Fitch | DBRS | Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | USD | RES0700BA | Total Pool | 13,521,238,487 | – | – | – | – | – | – | – | NR | – | |
| A-1 | USD | RES0700BA | Total Pool | 11,705,377,252 | 4,751,382,333 | .405980 | 0.000% | – | 5.553% | – | – | – | – | |
| A-2 | USD | RES0700BA | Total Pool | 479,730,311 | 479,730,311 | 1.000000 | 0.000% | – | 5.563% | – | – | – | – | |
| A-3 | USD | RES0700BA | Total Pool | 479,730,311 | 479,730,311 | 1.000000 | 0.000% | – | 5.653% | – | – | – | – | |
| A-4 | USD | RES0700BA | Total Pool | 479,730,311 | 479,730,311 | 1.000000 | 0.000% | – | 5.555% | – | – | – | – | |
| A-5 | USD | RES0700BA | Total Pool | 479,730,311 | 476,730,311 | 1.000000 | 0.000% | – | 5.563% | – | – | – | – | |
| B1 | USD | RES0700BB1 | Total Pool | 232,151,000 | 226,252,157 | .974508 | 0.000% | 0.000% | 2.462% | – | – | BB | – | |
| B2 | USD | RES0700BB2 | Total Pool | 25,329,000 | 24,682,331 | .974508 | 0.000% | 0.000% | 2.112% | – | – | B | – | |
| B3 | USD | 74051QAA4 | Total Pool | 3,960,000 | 3,585,331 | .974508 | 0.871% | 0.000% | 1.075% | NR | NR | NR | C | |
| B4 | USD | 74051QAB2 | Total Pool | 14,071,000 | 13,712,208 | .974508 | 1.291% | 0.000% | 1.792% | NR | NR | NR | C | |
| B5 | USD | 74051QAC0 | Total Pool | 14,071,000 | 13,712,205 | .974508 | 1.441% | 0.000% | 1.599% | NR | NR | NR | C | |
| B6 | USD | 74051QAD8 | Total Pool | 28,143,000 | 27,425,673 | .974509 | 1.801% | 0.000% | 1.250% | NR | NR | NR | C | |
| B7 | USD | 74051QAE6 | Total Pool | 28,143,000 | 27,425,573 | .974505 | 4.741% | 0.000% | 0.912% | NR | NR | NR | Discontinued | |
| B8 | USD | 74051QAF3 | Total Pool | 14,071,000 | 13,712,208 | .974508 | 4.991% | 0.000% | 0.019% | NR | NR | NR | Discontinued | |
| B9 | USD | 74051QAG1 | Total Pool | 21,107,000 | 20,569,334 | .974505 | 5.401% | 0.000% | 0.327% | NR | NR | NR | Discontinued | |
| B10 | USD | 74051QAH9 | Total Pool | 14,071,000 | 13,753,446 | .976437 | 7.241% | 0.000% | 0.133% | NR | NR | NR | Discontinued | |
| B11 | USD | 74051QAJ5 | Total Pool | 14,071,000 | 9,372,579 | .665078 | 8.001% | 0.000% | 0.000% | NR | NR | NR | Discontinued | |
| B12 | USD | 74051QAK2 | Total Pool | 21,107,000 | 0 | .000000 | – | 0.000% | – | NR | NR | NR | Discontinued | |
| B13 | USD | RES07BB13 | Total Pool | 14,077,001 | 0 | .000000 | – | 0.000% | – | – | – | – | – | |

Copyright © 1998-2014
[illegible] All Rights Reserved | License Agreement | Privacy Policy

The screenshots above represents the classes of certificates issued by the RESIF 2007-B TRUST. The subject Mortgage Loan is represented as part of ***Loan Group 2** primarily backing **Class A-2 and B2 Securities Certificates** issued by the RESIF 2007-B TRUST. The last reporting period was August 2010.*





# EXHIBIT "C"

**RECORDING REQUESTED BY:**
Fidelity National Title Company
Escrow No.: 05-269753-DS
Locate No.: CAFNT0921-0921-0001-0000269753
Title No.: 05-269753

**When Recorded Mail Document
and Tax Statement To:**
Mr. John F. Lundy
29 Bridgegate Drive
San Rafael, Ca 94903

**2006-0000614**

Recorded     | REC FEE     10.00
Official Records |
County of     |
Marin     |
JOAN C. THAYER |
Assessor-Recorder |
    |
    | BP
08:15AM 05-Jan-2006 | Page 1 of 2

APN: 164-570-29

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

RECORDED AT REQUEST OF
FIDELITY NAT'L TITLE

The undersigned grantor(s) declare(s)
Documentary transfer tax is $            **City Transfer Tax is $**
    [     ]   computed on full value of property conveyed, or
    [     ]   computed on full value less value of liens or encumbrances remaining at time of sale,
    [     ]   Unincorporated Area    City of ,

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,** John F. Lundy, a married man as his sole and separate property

**hereby GRANT(S) to**   John F. Lundy and Nancy A.M. Lundy, trustees of the 2001 Lundy Family Trust created by Declaration of Trust dated May 3, 2001

**the following described real property in the** City of , County of **Marin**, State of **California**:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

DATED:  December 23, 2005

STATE OF CALIFORNIA
COUNTY OF ___Marin___
ON _____12·23/05_____ before me,
the undersigned Notary Public ____ personally appeared
_____John F. Lundy_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature _____

_____
John F. Lundy

DONNA SANTIAGO
COMM. # 1381346
NOTARY PUBLIC • CALIFORNIA
MARIN COUNTY
Comm. Exp. NOV. 20, 2008

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

FD-213 (Rev 7/96)                        GRANT DEED
(grantfil)(12-05)

# EXHIBIT "D"

**2010-0055716**

RECORDING REQUESTED BY

CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311

| | |
|---|---|
| Recorded | REC FEE    21.00 |
| Official Records | |
| County of | |
| Marin | |
| JOAN C. THAYER | |
| Assessor-Recorder | |
| | 6J |
| 10:04AM 04-Nov-2010 | Page 1 of 2 |

---

Space above this line for recorder's use only

Trustee Sale No. 446009CA   Loan No. 3060169236   Title Order No. 629513

## IMPORTANT NOTICE

NOTE: After having been recorded, this Assignment should be kept with the
Note and the Deed of Trust hereby assigned.

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Bank of America, National Association all beneficial interest under that certain Deed of Trust dated 12-21-2005, executed by JOHN F LUNDY, A MARRIED MAN, as Trustor; to CALIFORNIA RECONVEYANCE COMPANY as Trustee; and Recorded 12-30-2005, Book , Page , Instrument 2005-0098332 of official records in the Office of the County Recorder of MARIN County, California. APN: 164-570-29 **Situs:** 29 BRIDGEGATE DRIVE, , SAN RAFAEL, CA 94903

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property described therein.

DATE: November 03, 2010

JPMorgan Chase Bank, National Association, successor in interest to WASHINGTON MUTUAL BANK, FA

Colleen Irby, Officer

FA_MERGE.DOC

1



Trustee Sale No. 446009CA Loan No. 3060169236 Title Order No. 629513

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On November 03, 2010 before me, C. LUCAS, "Notary Public", personally appeared Colleen Irby, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

```
C. LUCAS
Commission # 1821933
Notary Public - California
Los Angeles County
My Comm. Expires Nov 9, 2012
```

FA_MERGE.DOC

2

# EXHIBIT "E"

ℐ ℛ
3

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

**2010-0055717**

| | | |
|---|---|---|
| Recorded | REC FEE | 24.00 |
| Official Records | | |
| County of | | |
| Marin | | |
| JOAN C. THAYER | | |
| Assessor-Recorder | | |
| | EJ | |
| 10:04AM 04-Nov-2010 | Page 1 of 3 | |

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)

Space above this line for recorder's use only

Trustee Sale No. 446009CA   Loan No. 3060169236   Title Order No. 629513

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $1,650.00 as of November 03, 2010 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

Trustee Sale No. 446009CA   Loan No. 3060169236   Title Order No. 629513

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY , JACKSONVILLE, FL 32256, 800-848-9380.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 12-21-2005, executed by JOHN F LUNDY, A MARRIED MAN, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, as Beneficiary Recorded 12-30-2005, Book , Page , Instrument 2005-0098332 of official records in the Office of the Recorder of MARIN COUNTY, California, as more fully described on said Deed of Trust. APN: 164-570-29 Situs: 29  BRIDGEGATE DRIVE, , SAN RAFAEL, CA 94903 Including the note(s) for the sum of $1,134,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 04/01/2010 MONTHLY INSTALLMENT OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR SAID MONTHLY BILLING; AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF INTEREST, LATE CHARGES AND OTHER CHARGES AS DESCRIBED IN THE BILLING STATEMENT FOR EACH MONTHLY BILLING CYCLE.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

<div align="center">SEE ATTACHED DECLARATION</div>

DATE:  November 03, 2010

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

LAURA MATTHIES,
Assistant Secretary

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

| | |
|---|---|
| **Borrowers:** | JOHN F LUNDY |
| **Property address:** | 29 BRIDGEGATE DR<br>SAN RAFAEL CA 94903 |
| **Loan Number:** | 3060169236 |

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.5(b))*

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☐ The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☒ The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

    ☐ The real property is not an owner-occupied single family residence.

    ☐ The loan was not originated between January 1, 2003 and December 31, 2007.

    ☐ The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

    ☐ The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

    ☐ The borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

I certify under penalty of perjury under the laws of the State of California that the above is true and correct.

JP Morgan Chase Bank, National Association

By: *Keith Shehorn*

Date: 10/29/2010
City/State: Jacksonville, FL        Keith Shehorn

# EXHIBIT "F"

J R
2

Recording Requested By
ServiceLink

RECORDING REQUESTED BY
'CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902



2011-0008285

| | | |
|---|---|---|
| Recorded | REC FEE | 21.00 |
| Official Records | | |
| County of | | |
| Marin | | |
| RICHARD N. BENSON | | |
| Assessor-Recorder | | |
| County Clerk | | |
| | MH | |
| 09:50AM 07-Feb-2011 | Page 1 of 2 | |

| | |
|---|---|
| **Trustee Sale No.** | **446009CA** |
| Loan No. | 3060169236 |
| Title Order No. | 629513 |

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12-21-2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 03-01-2011 at 9:30 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 12-30-2005, Book , Page , Instrument 2005-0098332,      of official records in the Office of the Recorder of MARIN County, California, executed by: JOHN F LUNDY, A MARRIED MAN, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Place of Sale: OUTSIDE AT THE SOUTHWEST CORNER OF SAN RAFAEL CITY HALL, AT 1400 FIFTH AVENUE, SAN RAFAEL, CA

Legal Description: LOT 45, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "MAP OF LUCAS VALLEY ESTATES UNIT ONE", FILED FOR RECORD MAY 13, 1987 IN VOLUME 20 OF MAPS, AT PAGE 13, MARIN COUNTY RECORDS.

Amount of unpaid balance and other charges: $1,210,206.70 (estimated)

Street address and other common designation of the real property:      29 BRIDGEGATE DRIVE
SAN RAFAEL, CA 94903
APN Number: 164-570-29
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.



DATE: 02-07-2011

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

LUCIA ARIAS, ASSISTANT SECRETARY

For Sales Information:
(714) 730-2727 or www.lpsasap.com
(714) 573-1965 or www.priorityposting.com

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT
COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY
INFORMATION OBTAINED WILL BE USED FOR THAT

**2011-0035750**

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

**Trustee Sale No.    446009CA**
Loan No.          3060169236
Title Order No.    629513

```
Recorded         | REC FEE    21.00
Official Records |
County of        |
Marin            |
RICHARD N. BENSON|
Assessor-Recorder|
County Clerk     |
                 | SO
09:31AM 20-Jul-2011 | Page 1 of 2
```

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12-21-2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 08-10-2011 at 9:30 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 12-30-2005, Book , Page , Instrument 2005-0098332,    of official records in the Office of the Recorder of MARIN County, California, executed by:  JOHN F LUNDY, A MARRIED MAN, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.  Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Place of Sale: OUTSIDE AT THE SOUTHWEST CORNER OF SAN RAFAEL CITY HALL,  AT 1400 FIFTH AVENUE, SAN RAFAEL, CA

Legal Description:  LOT 45, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "MAP OF LUCAS VALLEY ESTATES UNIT  ONE", FILED FOR RECORD MAY 13, 1987 IN VOLUME 20 OF MAPS, AT PAGE 13, MARIN COUNTY RECORDS.

Amount of unpaid balance and other charges: $1,231,417.43 (estimated)

Street address and other common designation of the real property:    29  BRIDGEGATE DRIVE
                                                                      SAN RAFAEL, CA 94903
                                                                      APN Number:  164-570-29
        The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".



In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 07-18-2011

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

_____
DEREK WEAR-RENEE, ASSISTANT SECRETARY

California Reconveyance Company
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT

For Sales Information:
(714) 730-2727 or www.lpsasap.com
(714) 573-1965 or www.priorityposting.com

Recording Requested By
ServiceLink

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

**2012-0047128**

| Recorded | REC FEE | 21.00 |
| Official Records | | |
| County of | | |
| Marin | | |
| RICHARD N. BENSON | | |
| Assessor-Recorder | | |
| County Clerk | | |
| | SO | |
| 09:49AM 03-Aug-2012 | Page 1 of 2 | |

| **Trustee Sale No.** | **446009CA** |
| Loan No. | 3060169236 |
| Title Order No. | 629513 |

Space above this line for recorder's use only

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12-21-2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 08-28-2012 at 9:30 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 12-30-2005, Book N/A, Page N/A, Instrument 2005-0098332, of official records in the Office of the Recorder of MARIN County, California, executed by: JOHN F LUNDY, A MARRIED MAN, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Place of Sale: OUTSIDE AT THE SOUTHWEST CORNER OF SAN RAFAEL CITY HALL, AT 1400 FIFTH AVENUE, SAN RAFAEL, CA

Legal Description: LOT 45, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "MAP OF LUCAS VALLEY ESTATES UNIT ONE", FILED FOR RECORD MAY 13, 1987 IN VOLUME 20 OF MAPS, AT PAGE 13, MARIN COUNTY RECORDS.

Amount of unpaid balance and other charges: $1,283,655.14 (estimated)

Street address and other common designation of the real property: 29 BRIDGEGATE DRIVE
SAN RAFAEL, CA 94903
APN Number: 164-570-29

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 08-02-2012

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

FRED RESTREPO, ASSISTANT SECRETARY

California Reconveyance Company
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

For Sales Information:
(714) 730-2727 or www.lpsasap.com
(714) 573-1965 or www.priorityposting.com

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, this information can be obtained from one of the following two companies:
LPS Agency Sales & Posting at (714) 730-2727, or visit the Internet Web site www.lpsasap.com (Registration required to search for sale information) or Priority Posting & Publishing at (714) 573-1965 or visit the Internet Web site www.priorityposting.com (Click on the link for "Advanced Search" to search for sale information), using the Trustee Sale No. shown above. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

**Trustee Sale No.** **446009CA**
Loan No.          3060169236
Title Order No.   629513

```
2013-0019931

Recorded            | REC FEE      21.00
Official Records    |
County of           |
Marin               |
RICHARD N. BENSON   |
Assessor-Recorder   |
County Clerk        |
                    | RS
09:06AM 20-Mar-2013 | Page 1 of 2
```

Space above this line for recorder's use only

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12-21-2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 04-10-2013 at 10:00 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 12-30-2005, Book N/A, Page N/A, Instrument 2005-0098332,        of official records in the Office of the Recorder of MARIN County, California, executed by: JOHN F LUNDY, A MARRIED MAN, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Place of Sale: THE FIFTH AVENUE ENTRANCE TO THE CITY HALL, 1400 FIFTH AVENUE , SAN RAFAEL, CA

Legal Description: LOT 45, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "MAP OF LUCAS VALLEY ESTATES UNIT ONE", FILED FOR RECORD MAY 13, 1987 IN VOLUME 20 OF MAPS, AT PAGE 13, MARIN COUNTY RECORDS.

Amount of unpaid balance and other charges: $1,285,679.00 (estimated)

Street address and other common designation of the real property:      29 BRIDGEGATE DRIVE
                                                                        SAN RAFAEL, CA 94903
                                                                        APN Number:   164-570-29
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 03-20-2013

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

BRENDA BATTEN, ASSISTANT SECRETARY

California Reconveyance Company
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

For Sales Information:
www.lpsasap.com or 1-714-730-2727
www.priorityposting.com or 1-714-573-1965
www.auction.com or 1-800-280-2832

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, this information can be obtained from one of the following three companies:
LPS Agency Sales & Posting at (714) 730-2727, or visit the Internet Web site www.lpsasap.com (Registration required to search for sale information) or Priority Posting & Publishing at (714) 573-1965 or visit the Internet Web site www.priorityposting.com (Click on the link for "Advanced Search" to search for sale information), or auction.com at 1-800-280-2832 or visit the Internet Web site www.auction.com, using the Trustee Sale No. shown above. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.



**2013-0054798**

| Recorded | REC FEE | 21.00 |
| Official Records | | |
| County of | | |
| Marin | | |
| RICHARD N. BENSON | | |
| Assessor-Recorder | | |
| County Clerk | | |
| | RS | |
| 09:00AM 16-Aug-2013 | Page 1 of 2 | |

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902

| **Trustee Sale No.** | **446009CA** |
| Loan No. | 3060169236 |
| Title Order No. | 629513 |

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

*ATTENTION RECORDER*: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY. **PURSUANT TO CALIFORNIA CIVIL CODE 2923.3**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12-21-2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 09-11-2013 at 1:00 PM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 12-30-2005, Book N/A, Page N/A, Instrument 2005-0098332,     of official records in the Office of the Recorder of MARIN County, California, executed by: JOHN F LUNDY,  A MARRIED MAN, as Trustor, WASHINGTON MUTUAL BANK,  FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.  Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.   The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Place of Sale: Four Points by Sheraton San Rafael, 1010 Northgate Drive, San Rafael, CA 94903

Legal Description:  LOT 45, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "MAP OF LUCAS VALLEY ESTATES UNIT  ONE", FILED FOR RECORD MAY 13, 1987 IN VOLUME 20 OF MAPS, AT PAGE 13, MARIN COUNTY RECORDS.

Amount of unpaid balance and other charges: $1,308,778.72 (estimated)

Street address and other common designation of the real property:      29 BRIDGEGATE DRIVE
SAN RAFAEL, CA 94903
APN Number:   164-570-29

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 08-16-2013

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

BRENDA BATTEN, ASSISTANT SECRETARY

California Reconveyance Company
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

For Sales Information:
www.lpsasap.com or 1-714-730-2727
www.priorityposting.com or 1-714-573-1965
www.auction.com or 1-800-280-2832

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, this information can be obtained from one of the following three companies:
LPS Agency Sales & Posting at (714) 730-2727, or visit the Internet Web site www.lpsasap.com (Registration required to search for sale information) or Priority Posting & Publishing at (714) 573-1965 or visit the Internet Web site www.priorityposting.com (Click on the link for "Advanced Search" to search for sale information), or auction.com at 1-800-280-2832 or visit the Internet Web site www.auction.com, using the Trustee Sale No. shown above. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

# EXHIBIT "G"

J R

2014-0003504

| | |
|---|---|
| Recorded | REC FEE    18.00 |
| Official Records | |
| County of | |
| Marin | |
| RICHARD N. BENSON | |
| Assessor-Recorder | |
| County Clerk | |
| | JN |
| 09:00AM 29-Jan-2014 | Page 1 of 1 |

RECORDING REQUESTED BY
ALAW

AND WHEN RECORDED MAIL TO

ALAW
9200 OAKDALE AVE. - 3RD FLOOR
CHATSWORTH, CA 91311

_Space above this line for recorder s use only_

Trustee Sale No. 446009CA    Loan No. 3060169236    Title Order No. 629513

## SUBSTITUTION OF TRUSTEE

WHEREAS, JOHN F LUNDY, A MARRIED MAN, was the original Trustor, CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP, was the original Trustee, and WASHINGTON MUTUAL BANK, FA, was the original Beneficiary under that certain Deed of Trust dated 12-21-2005, Recorded 12-30-2005, Book N/A, Page N/A, Instrument 2005-0098332 of official records in the office of the Recorder of MARIN County, California, and

APN: 164-570-29 Situs: 29 BRIDGEGATE DRIVE, , SAN RAFAEL, CA 94903

WHEREAS, the undersigned, is the present Beneficiary under said Deed of Trust, and,

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and instead of said original Trustee thereunder.

Now, THEREFORE, the undersigned Beneficiary hereby substitutes ALAW, 9200 OAKDALE AVE. - 3RD FLOOR , CHATSWORTH, CA 91311, as Trustee of Said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

DATE: January 16, 2014

Bank of America, National Association

*JPMorgan Chase Bank, NA as Attorney-in-Fact for

Linda E. Walker

**Linda E. Walker**        Vice President

STATE OF ___ **Ohio** ___
COUNTY OF ___ **Franklin** ___

On ___ **JAN 16 2014** ___ before me, **Barbara J. Crowl** ___, Notary Public  personally appeared **Linda E. Walker** ___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___ **Ohio** ___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
**Barbara J. Crowl**

BARBARA J. CROWL
NOTARY PUBLIC, STATE OF OHIO
My Commission Expires 5/7/2017

# EXHIBIT "H"

2015-0010323

| Recorded<br>Official Records<br>County of<br>Marin<br>RICHARD N. BENSON<br>Assessor-Recorder<br>County Clerk | REC FEE | 21.00 |
|---|---|---|
| | OVERAGE | 3.00 |
| 10:16AM 11-Mar-2015 | KS<br>Page 1 of 2 | |

PREPARED BY:
Bank of America, N.A.
1800 Tapo Canyon Road
Simi Valley, CA 93063
WHEN RECORDED RETURN TO:
Avenue 365 Lender Services
401 Plymouth RD, Ste. 550
Plymouth Meeting, PA 19462

Parcel Number: 164-570-29

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, Bank of America, N.A., located at 1800 Tapo Canyon Road, Simi Valley, CA 93063 ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: Wilmington Savings Fund Society, FSB, doing Business as Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2014-12TT located at 500 Delaware Avenue, 11th Floor, Wilmington Delaware 19801 ("ASSIGNEE/GRANTEE") all beneficial interest under that certain DEED OF TRUST dated 12/21/2005, and executed by JOHN F LUNDY, borrower(s) to: WASHINGTON MUTUAL BANK, FA, as original lender, and certain instrument recorded 12/30/2005, in Instrument No. 2005-0098332, in the Official Records of Marin County, the State of California, given to secure a certain Promissory Note in the amount of $1,134,000.00 covering property located at 29 BRIDGEGATE DR, SAN RAFAEL, California 94903.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

05/05/2010  10:10    4155321568              LUNDYREALESTATE                        PAGE   06/06

Dated: 2-5-15

ASSIGNOR: Bank of America, N.A. by Selene Finance LP, its
attorney-in-fact*

By:

Name:            Jason Burr

Title:           Assistant Vice President

*Power of Attorney Recorded in The Miami-Dade County
Official Records at CFN: 20150045993, Book: 29474, Page: 4884

State of    Texas

County of

Before me Carmen Alicia Figueroa , duly commissioned Notary Public, on this day personally appeared
Jason Burr              Assistant Vice President   for Selene Finance LP, attorney-in-fact for

Bank of America, N.A., personally known to me to be the person whose name is subscribed to the foregoing

instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein

expressed.

Given under my hand and seal of office this  5   day of  February , 2015

Notary Public's Signature

Printed Name: Carmen Alicia Figueroa

My Commission Expires: 3-10-2018

CARMEN ALICIA FIGUEROA
My Commission Expires
March 10, 2018

# EXHIBIT "I"

### *John F. Lundy*
**29 Bridgegate Drive**
**San Rafael, CA 94903**

February 26, 2015

**SELENE FINANCE, LP**
Attention: Loan Resolution Department
P.O. Box 422039
Houston, TX 77242

*Sent via U.S. Post Office Certified Mail # 7012 2210 0002 4118 5781*

With Copy to:

**WILMINGTON SAVINGS FUND SOCIETY, FSB**
**d.b.a. CHRISTIANA TRUST, as Trustee for BCAT 2014-12TT**
**[c/o SELENE FINANCE]**

**WELLS FARGO BANK, N.A.**
as TRUSTEE FOR THE RESI FINANCE LIMITED PATRNERSHIP,
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-B
**[c/o SELENE FINANCE]**

**ALAW**
9200 Oakdale Avenue, 3rd Floor
Chatsworth, CA 91311

*Sent via U.S. Post Office Certified Mail #_____*

**Re: Loan Servicing No. 812958 (previously CHASE Loan Servicing No. 3060169236)**

Original Lender: WASHINGTON MUTUAL BANK, FA
Original (WAMU) Loan Number: 3060169236
Date of Note and Deed of Trust: December 21, 2005
Deed of Trust recorded in the official records of the Marin County Recorder on December 30, 2005
  (as Instrument/Document No. 2005-0098332
Property Location: 29 Bridgegate Drive, San Rafael, CA 94903 (APN: 164-570-29)
Borrower(s)/Mortgagor(s): John F. Lundy

#### NOTICE OF DEBT DISPUTE AND COMPLAINT RE ILLEGAL/WRONGFUL FORECLOSURE SALE

Regarding your validation of debt notice dated February 17, 2015, please be advised that the alleged indebtedness is disputed in its entirety. This is also a qualified written request ("QWR"). While awaiting for your full response to my request for your validation of debt, I hereby demand that you CEASE and DESIST any foreclosure action on the subject Mortgage Loan. Further, pursuant to the provisions of the Fair Debt Collection Practices Act, do not contact me by telephone. Any and all communications shall be in writing. Details regarding your legal requirement to answer this dispute are detailed in the following 22 pages.

**RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER**

I'm serving this QWR/Debt Dispute Letter to SELENE FINANCE to get a clarification and your written confirmation about the true ownership and authorized servicing of my Subject Mortgage Loan consisting of the Promissory Note ("Note") and Deed of Trust ("DOT"). Please treat this letter as a Qualified Written Request (QWR) under the *Real Estate Settlement Procedures Act* ("RESPA*"), codified as Section 2605(e) of Title 12 of the United States Code*. Also, under Section 1024.36(c) of *Regulation X of the Mortgage Servicing Act* as amended by the Consumer Financial Protection Bureau pursuant to the *Dodd-Frank Act*, you must, within five (5) days (excluding legal public holidays, Saturdays and Sundays), provide me with a response acknowledging receipt of this Notice and QWR.

Pursuant to *Section 1024.36(d)(ii)(2)(A)*, not later than ten (10) days after you receive this request and demand for information (excluding public holidays, Saturdays and Sundays), you must provide me with the identity of, and address or other relevant contact information for the true owner of my Mortgage Loan as referenced herein. For all of the other information requested, and pursuant to *Section 1024.36(d)(ii)(2)(B)*, you must respond not later than thirty (30) days after you receive this request for information (also excluding legal public holidays, Saturdays and Sundays). A 15-day extension is allowable only if I'm informed about it and given the reasons for the extension.

In addition, RESPA's *Section 2605(e)(3)* directs you as the purported loan servicer to not report negative information to a consumer reporting agency during the 60 days following receipt of the QWR concerning alleged overdue payments related to the period or to the QWR.

Please note that I also previously sent a similar QWR /Debt Dispute letter to **JP MORGAN CHASE BANK, N.A.** (hereinafter, "**JPM CHASE**"), *successor-in-interest* to **WASHINGTON MUTUAL BANK** (hereinafter, "**WMB**") f.k.a. **WASHINGTON MUTUAL BANK, FA** (hereinafter, "**WAMU FA**"); and **ALAW** of Chatsworth, California (hereinafter, "**ALAW**"), as purported *successor trustee* under my Deed of Trust.

I have engaged a third party firm to conduct a forensic audit and verify ownership of my Mortgage Loan. The chain of title was reviewed as it relates to the ownership history of the Subject Loan, whether the purported 'lender/present beneficiary' and 'encumbering' or 'foreclosing party' (or parties) claiming to own it is supported or contradicted by the following facts and verified evidence uncovered by said investigation, audit, analysis and foreclosure forensics.

**I - INFORMATION AND STATEMENT OF FACTS REGARDING THE SUBJECT MORTGAGE LOAN.**

**WASHINGTON MUTUAL BANK, FA** (hereinafter, "**WAMU FA**") is the original *Lender* and *Beneficiary* in my Mortgage Loan consisting of the Promissory Note ("Note") and Deed of Trust ("DOT") dated December 21, 2005; and **CALIFORNIA RECONVEYANCE COMPANY** (hereinafter, "**CRC**") as the original *Trustee* under the DOT.

Based in Stockton, California, the original name of WASHINGTON MUTUAL BANK, FA ("WAMU FA") was AMERICAN SAVING BANK, F.A. In October 1997 AMERICAN SAVINGS BANK, F.A., changed its name to WASHINGTON MUTUAL BANK, FA under FDIC Cert. # 32633.

On April 4, 2005 WASHINGTON MUTUAL BANK, FA ("WAMU FA" of Stockton, CA) was renamed to **WASHINGTON MUTUAL BANK** (hereinafter, "**WMB**"). In September 2005, WMB subsequently moved its headquarter to Henderson, Nevada.

WAMU FA CEASED TO EXIST AFTER APRIL 4, 2005. Questions arise as to why WAMU FA after April 4, 2005 still continued doing business under its name (as WAMU FA) even though it had been legally renamed to WASHINGTON MUTUAL BANK (WMB). In fact, parent company WASHINGTON MUTUAL, INC.'s ("WMI") verified on its own Annual Report for the fiscal year ended December 31, 2005 that "WAMU FA ceased to exist." *See* said Annual Report which was filed with the SEC on March 15, 2006 as Form 10-K (SEC File No. 1-14667 at http://www.secinfo.com/d11MXs.vGct.htm). On December 12, 2006 the Market Risk Committee of WMI, in

fact, documented their minutes and referred to WASHINGTON MUTUAL BANK (WMB) as f.k.a. WASHINGTON MUTUAL BANK, FA ("WAMU FA").

From April 5, 2005 to September 24, 2008 (*i.e.*, the date when the FDIC placed WMB into Receivership), WMB continued originating mortgage loans as "*Lender*" and "*Beneficiary*" using the name of the non-existent federal savings bank, WAMU FA.

As in my subject Mortgage Loan, WMB (of Henderson, NV) falsely led thousands of homeowners to believe after April 4, 2005 that their lender, as stated on notes, mortgages, and deeds of trust, was the non-existent WAMU FA (of Stockton, CA). As it stands today, **JP MORGAN CHASE BANK N.A. ("JPM CHASE")**, who acquired the failed WMB from the FDIC in September 2008, is foreclosing on homeowners as "*successor Beneficiary*" or "*successor-in-interest*" to the non-existent WAMU FA. The "WAMU FA loans" and JP MORGAN CHASE's foreclosures are questionable, if not downright fraudulent. This is a fraud on the borrower and a fraud on the court.

**WHY WMB CONTINUED TO USE THE NAME OF NON-EXISTENT WAMU FA AFTER APRIL 4, 2005.** Making a brokered loan in the dead name of WAMU FA allowed the *Yield Spread Premium* (*i.e.*, the extra money or rebate paid by the loan originator to a mortgage Broker) to be treated as un-reportable "*Service Release Premium.*" Such deception evades the fiduciary duty of disclosing the money (rebate) paid by the loan originator to the mortgage broker for giving a borrower a higher interest on a loan in exchange for lower up front cost paid in origination fees, broker fees or discount points by using the dead bank name WAMU FA as a "*Loan Originator.*" Using WAMU FA's name as the "*lender*" in the mortgage loan also makes it difficult, if not impossible, for the borrower to later recover damages if borrower sues the non-existent bank: WAMU FA. The FDIC and JPM CHASE know this, and they are making strenuous efforts to stifle discovery in Federal and State court. JPM CHASE, *successor-in-interest* WMB, has been suppressing information about this fraud because it voids tens of thousands of loans.

On cases where the homeowner is not in foreclosure proceedings but applying for loan modification, JPM CHASE may chose not to transfer the WAMU FA mortgage loan into their name, so that JPM CHASE can avoid honoring the HAMP rules or other Obama refi-programs. If the homeowner has a WAMU FA loan, and ask for a modification, JPM CHASE can simply say the mortgagor does not qualify. If JPM CHASE moves the WAMU FA loan into their name, then they have to comply with HAMP rules. JPM CHASE can commit loan fraud, file forged documents, file false pleadings, etc., with impunity, doing it all in the name of WAMU FA; and as soon as the mortgagor complains, JPM CHASE can simply say.... "WAMU FA does not exist, thus it cannot be held liable for defrauding the Homeowner-Mortgagor."

### MORTGAGE SECURITIZATION AUDIT/ANALYSIS AND FORECLOSURE FORENSICS REPORT

The forensic mortgage securitization investigation and audit established that my subject Mortgage Loan was irrevocably sold in the secondary market for securitization on March 1, 2007 by **WASHINGTON MUTUAL BANK ("WMB") f.k.a. WASHINGTON MUTUAL BANK, FA ("WAMU FA")**. Here, my original lender on record, WAMU FA, served only as a "*table lender*" (*i.e.*, a "storefront") for **BANK OF AMERICA, N.A.** (hereinafter, "**BANA**"), the "*table funder*" in the table-lending transaction in December 2005 who pre-arranged the actual loan funding using its revolving credit line facility commonly referred to in the mortgage industry as "*warehouse line.*" It is well known in the mortgage industry that whenever a loan is *table funded,* as in this case, it is certain that such mortgage loan is intended to be sold to the secondary market for securitization.

Major wholesale lenders like WAMU FA and WMB (collectively as "WASHINGTON MUTUAL BANK") draw from such *warehouse line* to fund and originate its own loans and/or acquire new mortgages from its network of mortgage brokers and correspondent lenders. In a *table-lending* transaction the borrower's loan application is processed and packaged by the *table lender* (WAMU FA) in accordance with the underwriting guidelines and requirements of the *table funder* (BANA). Upon loan approval, BANA then funded the loan using its *warehouse line* provided by a *warehouse lender,* which in this case was BANA's affiliate **BANC OF AMERICA SECURITIES, LLC** (hereinafter, "**BA SECURITIES**"). The same *warehouse lender* would also later serve as the "*underwriter*" in the verified mortgage securitization. With this *off-the-books* funding scheme as a precursor to mortgage

securitization, WAMU FA, WMB or BANA did not have to risk their own capital in originating and funding my Mortgage Loan.

WASHINGTON MUTUAL BANK's mortgage securitizations are collateralized debt obligations (CDOs) that represent claims to the periodic cash flows generated from pools of securitized mortgage loans. Mortgage securitization was an integral part of WASHINGTON MUTUAL BANK's business before its demise in September 2008 .

The forensic securitization audit specifically established and verified the following facts:

1. Original lender WAMU FA (under the name of WMB) irrevocably sold my Mortgage Loan (consisting of the original Promissory Note and Deed of Trust) to **BANK OF AMERICA, N.A.** ("BANA") for securitization on March 1, 2007 (*i.e.*, the "*Cut-Off Date*" of the securities trust). This was the first sale of my Mortgage Loan, but WITHOUT the required assignment of Deed of Trust ("DOT") and endorsement of the underlying original Promissory Note ("Note") from WAMU FA (or WMB) to BANA.

2. Acting as "*sponsor*" and initial "*seller*" in a securitization transaction, BANA in turn bundled my Mortgage Loan in a pool with other similar residential loans in its portfolio and simultaneously sold it, without recourse, to **RESI FINANCE DE CORPORATION 2007-B** (hereinafter, "**RESI FINANCE**"), the interim loan purchaser and "*depositor*" in the mortgage securitization. This was the second sale of my Mortgage Loan, but still WITHOUT the obligatory intervening assignment of DOT and complete chain of Note endorsement from WAMU FA (or WMB) to BANA; and from BANA to RESI FINANCE.

3. Pursuant to a governing securitization agreement and trust instrument called the **Pooling and Servicing Agreement** dated **March 1, 2007** (the "**PSA**"), *Depositor* RESI FINANCE created a *special purposed vehicle* (SPV) formed as a *mortgage-backed securities trust* ("MBS trust"). This securities trust, which is identified here as the **RESI FINANCE LIMITED PARTNERSHIP, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-B** (hereinafter the "**REMIC MBS Trust**" or the "**RESIF 2007-B TRUST**"), has an election and continuing qualification of a *real estate mortgage investment conduit* ("REMIC") in accordance with the Internal Revenue Code of the 1986, as amended (the "Tax Code").

4. In exchange for the *securities certificates* (CDOs in "*tranches*" as *bond certificates*) issued by the REMIC MBS Trust, *Depositor* RESI FINANCE securitized and irrevocably sold each of the pooled mortgage loans (including my Loan) into the RESIF 2007-B TRUST, on or before the trust's mandatory "*Closing Date*" (concurrently its REMIC "*Start-up Day*") on March 29, 2007, or at most 90 days thereafter (*i.e.*, REMIC Allowance). **WELLS FARGO BANK, N.A.** (hereinafter, "**WELLS FARGO**"), as *Trustee* for the benefit of the *Certificateholders* (Investors) of the RESIF 2007-B TRUST, is the fiduciary owner of the mortgage loans in the trust fund backing the *bond certificates*. This was the third and final sale of my Mortgage Loan, albeit still WITHOUT the required intervening assignment of DOT and complete chain of endorsement of the underlying original mortgage Note from WAMU FA (or WMB) to BANA; then from BANA to RESI FINANCE; and finally from RESI FINANCE to WELLS FARGO, as Trustee for the RESIF 2007-B TRUST.

5. Pursuant to the binding and governing PSA, the *Closing Date/Start up Day* of the REMIC MBS Trust on March 29, 2007, or 90 days thereafter, is the **absolute deadline** for WELLS FARGO, as *Trustee* for the benefit of the *Certificateholders* of the RESIF 2007-B TRUST, to legally receive and accept contribution of any mortgage loan asset into its trust fund.

6. In accordance with "*true sale*" of each mortgage loan under the binding and governing securitization agreement(s), original *Lender* WAMU FA (through WMB), securitization *Sponsor/Seller* BANA and *Depositor* RESI FINANCE received full value for selling my Mortgage Loan in the verified securitization transaction.

7. However, a review of the chain of title of the mortgaged property in the official records of the Marin County Recorder does not show any assignment of my mortgage (DOT) from original lender WAMU FA (or WMB) to any entity within the aforementioned REMIC deadline.

THE SECURITIZATION TRANSACTION DIAGRAM



8.  As noted, in contravention and material breach of the binding and governing securitization agreement(s) there is no record of the required intervening assignments of my mortgage (DOT) and complete chain of Note endorsements from WAMU FA (through WMB) to BANA; then from BANA to RESI FINANCE; and ultimately from *Depositor* RESI FINANCE to WELLS FARGO, as *Trustee* for the RESIF 2007-B TRUST, on or before the *closing date/startup day* of this securitization trust on March 29, 2007, or 90 days thereafter (the absolute deadline). The botched securitization resulted to an irreversible break in the chain of title of my home property and the beneficial ownership in and to my Mortgage Loan — with the *successor lender* to WAMU FA, UNASSIGNED, UNDOCUMENTED and UNKNOWN to date [as no one can reverse time back to March 29, 2007 or 90 days thereafter].

9.  Notwithstanding, the trust-issued *bond certificates* [purportedly backed by the mortgage loans in the trust fund] were then offered in a private placement to accredited investors by **BANC OF AMERICA SECURITIES, LLC ("BA SECURITIES")**, the securitization *"underwriter."* Multiple qualified investors subsequently purchased these offered *bond certificates*, thereby becoming the *Certificateholders* of the RESIF 2007-B TRUST. After deducting underwriting and trust's fees and expenses, the *Underwriter* BA SECURITIES paid the proceeds from sale of the *bond certificates* to *Depositor* RESI FINANCE. The net proceed after *Depositor's* fees was then used by RESI FINANCE to pay in full its purchase of the pooled mortgage loans from securitization *Sponsor/Seller* BANA.

10. Despite warranties, representations and covenants of the securitization parties under oath in the securitization agreement(s) and trust instrument, my Mortgage Loan was without the required intervening assignment of DOT and concurrent complete chain of endorsement of the underlying original mortgage Note to WELLS FARGO as *Trustee* for the RESIF 2007-B TRUST, on or before the absolute REMIC deadline. The multiple sale of my Mortgage Loan did not comply with the governing securization agreement(s) and trust instrument; and it was further not in compliance with federal securities law regarding the sale to investors of securities certificates not actually backed by mortgage loan(s) as represented in the REMIC Trust's private placement, as well as state law requiring the public recording of an effective assignment to perfect the legal transfer of the mortgage.

11. Pursuant to the terms and REMIC provisions of the governing securitization agreement(s) and trust instrument, WELLS FARGO, as *Trustee* for the RESIF 2007-B TRUST, does not have any power, right and authority conferred to the *trustee* by the PSA to accept any belated assignment and transfer of mortgage loan into (or out of) the trust fund of the REMIC MBS Trust.

**II - THE CHAIN OF TITLE WAS IRREVERSIBLY BROKEN; NEITHER WELLS FARGO, AS TRUSTEE FOR THE RESIF 2007-B TRUST, NOR SELENE FINANCE and JP MORGAN CHASE BANK (SUCCESSOR IN INTEREST TO ORIGINAL SERVICER WMB) HAS ANY AUTHORITY UNDER THE BINDING AND GOVERNING PSA TO ACCEPT ANY MORTGAGE LOAN INTO THE TRUST FUND OF THE SECURITIZATION TRUST 90 DAYS AFTER THE CLOSING DATE (ON MARCH 29, 2007).**

*First*, original lender WAMU FA no longer has any ownership in my Note and DOT that WAMU FA (under the name of WMB) had long sold in the securitization transaction on March 1, 2007 to BANA – who bundled my Mortgage Loan with other similar residential mortgages and simultaneously sold it also for full value received to securitization *Depositor* RESI FINANCE, albeit <u>WITHOUT</u> the required intervening assignment of DOT and contemporaneous endorsement of the underlying mortgage Note.

*Second*, without a continuing *agency relationship* and *authority* from the *new principal* in the Deed of Trust (*i.e.*, the unassigned and unknown *successor lender* to WAMU FA or WMB), by the terms of the security instrument itself (DOT), WAMU FA's (or WMB's) beneficial interest in the Mortgage Loan, if any, as its loan servicer was also effectively and completely extinguished after the aforementioned REMIC deadline date in 2007.

*Third*, WELLS FARGO, as *Trustee* for the RESIF 2007-B TRUST, only has the powers to act, which are conferred to the *trustee* by the trust instrument (PSA). The *trustee* (or any of its agents such as loan *servicer*) of the REMIC MBS trust has no power or authority to act outside of the scope of the powers conferred upon the trustee under the trust instrument. WELLS FARGO could not take ANY action which conflicts with the terms and provisions of the PSA regarding conveyance of qualified mortgage loans into the RESIF 2007-B TRUST; and <u>it has no requisite authority conferred upon it by the operative instrument to accept (or transfer) any mortgage loan into (or out of) the trust fund 90 days after the *Closing Date/Startup Day* of the REMIC MBS Trust on March 29, 2007.</u>

The trust instrument <u>strictly prohibits</u> WELLS FARGO to accept to its trust fund any mortgage assignment after the aforementioned deadline in 2007. As a REMIC exception, WELLS FARGO may only accept contribution of a *"substitute mortgage loan"* into the RESIF 2007-B TRUST after the trust's closing date as replacement of a non-qualified and defective loan (*e.g.*, missing note endorsements and mortgage assignments, etc.). However, even this exception must be completed <u>not later than 2 years from the trust's closing date (*i.e.*, on or before March 29, 2009).</u>

**III - INVALID AND FRAUDULENT MORTGAGE ASSIGNMENT AND TRUSTEE SUBSTITUTION RECORDED**

To cover up the botched securitization of my Mortgage Loan, the following statutorily defective, false and invalid mortgage assignment and trustee substitution were found on record with the Marin County Recorder:

1. An **Assignment of Deed of Trust** dated <u>November 3, 2010</u> that was issued by **JP MORGAN CHASE BANK, N.A. ("JPM CHASE")** as *successor-in-interest* to **WASHINGTON MUTUAL BANK, FA ("WAMU FA")**. This *Assignment* of DOT (recorded on <u>November 4, 2010 as Document No. 2010-0055716</u>) – which was without proof of the actual concurrent endorsement of the underlying mortgage Note – purports to convey, grant, assign and transfer all beneficial interest under my DOT to **BANK OF AMERICA, N.A. ("BANA")**.

In the lexicon of identity theft, a **"breeder document"** is the alpha-document, genuine or fraudulent, that can serve as a basis to obtain other identification documents or benefits falsely. Translating this concept into the realm of foreclosure fraud, a phony assignment of mortgage (DOT) is most frequently used as a *breeder document* because it grants a beneficial interest in the underlying real property for the fraudster, and serves as the basis for obtaining other documents necessary to extinguish the property owner's rights and transfer

legal beneficial interest as well as property possession to the fraudster. Here, the *Assignment of DOT by JPM CHASE (as successor-in-interest to WAMU FA) to BANA is clearly a breeder document*.

### LEGAL STANDING OF ASSIGNOR JP MORGAN CHASE BANK, N.A. ("JPM CHASE")

JPM CHASE, as *Successor-in-Interest* to WAMU FA, does not have the legal standing to assign my Deed of Trust to BANA because on the date of such mortgage (DOT) assignment on November 13, 2010, WMB f.k.a. WAMU FA had long irrevocably sold my Mortgage Loan well over three (3) years earlier (in March 2007) in the verified securitization transaction.

When JPM CHASE acquired the failed bank WMB on September 25, 2008 under a *Purchase and Assumption Agreement* ("PAA") from the receivership of the Federal Deposit Insurance Corporation (FDIC), WMB f.k.a. WAMU FA no longer has any ownership title and beneficial interest in my Mortgage Loan that it had long sold and received full loan value in March 2007. Therefore, JPM CHASE, a complete stranger in the origination of my Mortgage Loan, has no legal standing in the DOT and the underlying mortgage Note.

Furthermore, there is no documentary evidence showing that my actual original Promissory Note was endorsed contemporaneously with such deed assignment to BANA. That will simply be a legal impossibility because JPM CHASE is neither the lender in my Note nor an authorized agent of the unknown *"successor lender"* and *"present beneficiary"* in the DOT. Simply said, JPM CHASE does not have any right, power and authority to concurrently endorse my mortgage Note to any entity, because JPM CHASE is, in fact, not even referenced in any capacity in the promissory note.

As already established at this point, the multiple sale of my Mortgage Loan was without the required intervening assignment of the DOT and complete chain of endorsement of the original Note, which consequently resulted to the break in the chain of title – with WAMU FA or WMB's beneficial interest in the DOT, if any, completely and effectively extinguished even before September 25, 2008 (*i.e.*, date when JPM CHASE acquired WMB).

2. A **Substitution of Trustee** ("SOT") dated January 16, 2014 was issued by **JP MORGAN CHASE BANK, N.A.** ("JPM CHASE"), Attorney-in-Fact for **BANK OF AMERICA, N.A.** ("BANA"), as purported *"present Beneficiary"* in the DOT. In this SOT instrument, which was recorded on January 29, 2014 as Document No. 2014-0003504, ALAW (of Chatsworth, California) was purportedly appointed as *"substitute trustee"* in the DOT in place of original trustee, **CALIFORNIA RECONVEYANCE COMPANY ("CRC")**.

However, pursuant to *Covenant No. 24* of the Deed of Trust, only the *Lender* (in this case the "UNKNOWN" present *beneficiary* and valid *lender*) has the power and authority to substitute the trustee.

Specifically, *Covenant No. 24* in my DOT *[at pages 13 & 14 of 15]* states,

> "*Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution...*"

As cited hereinbefore, WAMU FA's (or WMB's) ownership title, interest and authority as the lender in the Note and beneficiary in the DOT effectively and completely ended when WAMU FA (under its WMB name) irrevocably sold my Mortgage Loan in the securitization transaction in March 2007 for full value received, notwithstanding it failed to timely and effectively assign and transfer the loan to interim purchaser BANA or any entity. There is no *successor-lender* to WAMU FA (or WMB) in my Mortgage Loan.

Therefore, the issuance of this SOT instrument by JPM CHASE for BANA – who is likewise not a valid lender and beneficiary – was without legal force and effect. There is also no evidence or legal documentation to

support that JPM CHASE or BANA is a duly authorized agent of the <u>unassigned</u>, <u>undocumented</u> and <u>unknown</u> present *beneficiary* and true *lender* my Mortgage Loan. This SOT instrument is null and <u>VOID</u>, not just voidable, for the additional reason that, under Section 2934(a)(1)(A) of California's non-judicial foreclosure statute, <u>all beneficiaries must acknowledge and record the Substitution of Trustee</u>.

Moreover, the California Business and Professional Code Section 17200 prohibits unlawful, unfair, or fraudulent business practices. On information and belief, JPM CHASE, BANA and CRC deliberately conspired and engaged in business practices that violate Section 17200 because they falsely executed and recorded the following invalid and fraudulent mortgage instruments, namely: the *Assignment of DOT*, *Notice of Default*, *Notice of Trustee Sale* and *Substitution of Trustee*, knowing that not one of them has the legal standing and authority to execute and record such documents. Ultimately, JPM CHASE and BANA lacked the legal power to act the servicer on the Mortgage Loan and as agent of *present beneficiary* under the Deed of Trust, respectively, to direct and authorize original mortgage trustee CRC , and now invalid substitute trustee ALAW, to initiate (and now re-initiate) foreclose proceedings against my home property.

The above cited *ultra vires Assignment of the DOT* [<u>without</u> the actual contemporaneous endorsement of my original Promissory Note] and *Substitution of Trustee* instruments were issued and recorded <u>well over several years after the *Closing Date*/REMIC *Start-up Day* of the RESIF 2007-B TRUST (*i.e.*, on March 29, 2007 or 90 days thereafter)</u>. These were not authorized mortgage transfers pursuant to the governing trust instrument.

Here, the fully evidenced false assignment of deed trust and trustee substitution clearly demonstrate the length and extent of how much securitization *seller/sponsor* BANA and JPM CHASE (as *successor servicer* to WMB for the mortgage loans in the trust fund of the RESIF 2007-B TRUST) would be willingly to engage in *ultra vires* act(s) to deliberately paper over or cover up the botched mortgage securitization. Presumably, BANA and JPM CHASE were banking that no one would discover their deceitful act(s). Even though JPM CHASE knowingly has no beneficial interest, right and legal standing in my deed of trust and promissory note, it went ahead anyway to falsely assign the security instrument (*i.e.*, DOT only) to BANA. JPM CHASE's false and invalid assignment to BANA further clouded the already broken chain of title in and to my home property and Mortgage Loan.

### About JPM CHASE's signer Colleen Irby

*Colleen Irby* is neither an officer nor employee of JP MORGAN CHASE BANK, N.A. ("JPM CHASE") as represented. When *Ms. Irby* executed the *Assignment of Deed of Trust* on November 3, 2010, she was, in fact, an employee of CALIFORNIA RECONVEYANCE COMPANY ("CRC") with the title of LS Section Manager. Moreover, JPM CHASE was not the *valid lender* and/or *present beneficiary* in the Mortgage Loan, and so *Ms. Irby* had no authority to act on behalf of the <u>unknown</u> *real party in interest* here.

*Ms. Irby* is allegedly a prolific known "*robo-signer*" for CRC, MERS, WMB, WAMU FA, JPM CHASE and CHASE HOME FINANCE (*see* web links at: <u>https://www.scribd.com/doc/82145542/Suspected-Robo-Signers</u>; and <u>http://www.msfraud.org/law/lounge/RICO-JPMorgan-Chase-Home-Finance.pdf</u>.)

*Colleen Irby's* authority to sign mortgage assignment instruments on behalf of JPM CHASE has been challenged in a number of lawsuits in California. Here is one example: <u>http://www.scribd.com/doc/76997011/In-Re-Javaheri-v-JPMORGAN-CHASE-Related-Case</u>.

For ready ready reference, below (next page) is *Ms. Irby's* own posting of her work related information on the popular business networking website: www. linkedIn.com.



## IV - MORTGAGE NOTE and DEED SEPARATED

An assignment of deed of trust without the actual contemporaneous endorsement of the Promissory Note (as in this instant case) is a nullity. The Deed of Trust, as security instrument, follows the Note. The Deed of Trust does not carry the consent of the lender. In this particular case such security instrument is a direct contradiction of the Note because the Note states that the Deed of Trust shall benefit the Lender.

Case law supports that the Mortgage follows the Note; the Note does not follow the assignment of the Mortgage (the debt does not follow the mortgage.) The Mortgage (Deed of Trust) is a collateral security instrument, which, in order to be transferred, must be transferred by the owner of the obligation, who at this point is UNKNOWN because of the botched mortgage securitization. The Note states that the Lender may transfer the Note; and the Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "*Note Holder.*"

Generally, if the Deed of Trust and the Note are not together with the same entity, there can be no enforcement of the Note. Moreover, the Deed of Trust provides the standing for the lender to foreclose on a property based on default on the Note. Thus, if the security instrument (Deed of Trust) and the financial instrument (Note) are separated, foreclosure cannot legally be pursued: **The Note cannot be enforced by the Deed of Trust if each contains a different party in interest, who remains UNKNOWN in this instant case; and, if the Deed of Trust is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.** Legal precedence of recent public law cases exists for these conclusions: *Saxon vs. Hillery, CA*, Dec 2008, U.S. Federal District Court, Northern District of California and (In re *Hudson*, 643 S.E. 2d 485 (N.C. Ct. App. 2007).

Furthermore, the mortgage assignment here – well over three (3) years after the *Closing Date/Startup Day* of the REMIC MBS Trust (RESIF 2007-B TRUST) on March 29, 2007 – was neither authorized by the unassigned, undocumented and unknown *present beneficiary* in the Mortgage Loan nor allowed under the trust instrument. Such *Assignment of DOT* on November 3, 2010 by JPM CHASE to BANA, is statutorily defective, invalid and knowingly fraudulent for all of the reasons and facts hereinbefore cited.

The Trustee, or the REMIC MBS Trust itself, is also strictly forbidden under the operative trust instrument to re-sell, assign and transfer out any asset (*i.e.,* any of its securitized mortgage loans) from its trust fund so JPM CHASE presumably backtracked here under the pretense that my Mortgage Loan was still part of WMB's assets under receivership by the FDIC when JPM CHASE acquired WMB in September 2008.

It was clear why my DOT was assigned to BANA on November 3, 2010; it was to cover up the botched mortgage securitization over 3 years earlier and attempt [albeit invalidly] to reconnect the broken of chain of title in my Mortgage Loan. This was done despite the fact that JPM CHASE and BANA had knowledge of the falsity of the assignment; JPM CHASE and BANA are each <u>absolutely not allowed</u> to issue and accept, respectively, the *Assignment of DOT* pursuant to the terms and REMIC provisions of the trust agreement and instrument.

<u>Broken Chain of Title Detrimental to this Mortgagor</u>. I relied here on purported loan servicer JPM CHASE's (and its predecessor WMB's) misrepresentations. And <u>undeniable damaged</u> has occurred in the following ways: (1) I'm not given the opportunity to apply for (and negotiate) a valid loan modification with the *real party in interest* to prevent the foreclosure of my home property pursuant to the California Homeowner Bill of Rights (HBOR) which became effective on January 1, 2013; or alternatively sell my property in a short sale with a fatally defective chain of title; (2) if the foreclosure action against my Mortgage Loan is allowed to proceed, multiple parties may still seek to enforce the debt obligation against me, <u>a double financial jeopardy</u>; (3) the title to my home property has been clouded, rendered fatally defective and unmarketable, as any REO would-be buyer of subject property will find itself in legal limbo and unable to know with any certainty whether it can legally buy the property or get title insurance; (4) I have been paying the wrong party for an undetermined amount of time; (5) I'm unable to determine whether my monthly mortgage payments were paid to the right party; and (6) I will now have to spend significant funds to cover the cost of attorney's fees and related cost to recover and clear the title in and to my home property.

<u>Clear Title May Not Be Derived From A Fraud</u> (including a bona fide purchaser for value). In the case of a fraudulent transaction the law is well settled. Numerous authorities have established the rule that an instrument wholly void (as in the *Assignment of DOT* here, the "*breeder document*"), such as an undelivered deed, a forged instrument, or a deed in blank, cannot be made the foundation of a good title, <u>even under the equitable doctrine of bona fide purchase</u>. Consequently, the fact that purchaser acted in good faith in dealing with persons who apparently held legal title, is not in itself sufficient basis for relief. It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties. Hence, if forged and/or "*robo-signed*" signatures are used to obtain the foreclosure, it CERTAINLY makes a difference in non-judicial foreclosure states as well as judicial states.

Any apparent sale based on invalid and fraudulent documents is void - without any legal effect - like Monopoly Money. In turn, the law requires that the (true) beneficiary execute and notarize and record a substitution for a valid substitution of trustee to take effect. **Thus, if the <u>Assignment of Deed of Trust/ Mortgage</u> is fraudulent, the sale is void. If the substitution of trustee is invalid, the sale is void. If the Notice of Default is invalid, the Trustee's Sale is void.** These documents are not recordable without good notarization. The reason these documents are notarized in the first place is because otherwise they will not be accepted by the county recorder. Moreover, a notary who helps commit real estate fraud is liable. Once the document is recorded, however, it is entitled to a "presumption of validity," which is what spurned the falsification trend in the first place. The documents are intended for court proceedings. A necessary purpose for these documents, after the nonjudicial foreclosure, is the eviction of the rightful owners afterward. While the foreclosures are non-judicial, evictions afterwards still are conducted in court, although the process moves quickly and is mostly a "rubber stamping" by skeptical judges. However, once these documents make it into court, the bank officers and lawyers become guilty of FELONIES. <u>The Doctrine of Unclean Hands</u> provides: plaintiff's misconduct in the matter before the court makes his hands "unclean" and he may not hold with them the pristine remedy of injunctive relief.

<u>Unclean Hands Doctrine</u>. The unclean hands rule requires that the Plaintiff not cheat, and behave fairly. The plaintiff (in this scenario the "pretender" lender) must come into court with clean hands, and keep them clean, or he or she will be denied relief, regardless of the merits of the claim. Whether the doctrine applies is a question of fact. One majorly overlooked facet is the extremely active bankruptcy court proceedings, where, just as in judicial foreclosure states, <u>the banks must prove "standing" to proceed with a foreclosure</u>. If they are not

signed by persons with the requisite knowledge, affidavits submitted in bankruptcy court proceedings such as objections to a plan and Relief from Stays are perjured. The documents in support are often falsified evidence.

Verified eviction complaints, perjured motions for summary judgment, and all other eviction paperwork after a nonjudicial foreclosure involving fraudulent documents are illegal and void. **The paperwork itself is void. The sale is void.** But the only way to clean up the hundreds of thousands of effected titles is through litigation, because even now the banks will simply not do the right thing. Victims of wrongful foreclosure in may seek declaratory relief and damages, an injunction and attorney's fees for Unfair Business practices, as well as claims for slander of title; abuse of process, civil theft, and variety of other civil remedies.

The clean hands doctrine is a rule of law that someone bringing a lawsuit or motion and asking the court for equitable relief must be innocent of wrongdoing or unfair conduct relating to the subject matter of his/her claim. It is an affirmative defense that the defendant may claim the plaintiff has "unclean hands." However, this defense may not be used to put in issue conduct of the plaintiff unrelated to plaintiff's claim. Therefore, plaintiff's unrelated corrupt actions and general immoral character would be irrelevant. The defendant must show that plaintiff misled the defendant or has done something wrong regarding the matter under consideration. The wrongful conduct may be of a legal or moral nature, as long as it relates to the matter in issue.

It is true that California Civil Code § 2924, et seq. authorizes non-judicial foreclosure in this state. It is not the case, however, that the availability of a non-judicial foreclosure process somehow exempts lenders, trustees, beneficiaries, servicers, and the numerous other (sometimes ephemeral) entities involved in dealing with Plaintiffs from following the law. *Sacchi v. Mortgage Electronic Registration Systems, Inc.* US Central District Court of California CV 11-1658 AHM (CWx), June 24, 2011.

"*The assignment of the lien without a transfer of the debt was a nullity in law.*" *Polhemus v. Trainer*, 30 Cal. 685; *Peters v. Jamestown Box Co.*, 5 Cal. 334; *Hyde v. Mangan*, 88 Cal. 319; *Jones on Pledges*, secs. 418, 419; *Van Ewan v. Stanchfield*, 13 Minn. 75. "*A lien is not assignable unless by the express language of the statute.*" (Jones on Liens, sec. 982; *Wingard v. Banning*, 39 Cal. 343; *Ruggles v. Walker*, 34 Vt. 468; *Wing v. Griffin*, 1 Smith, E.D. 162; *Holly v. Hungerford*, 8 Pick. 73; *Daubigny v. Duval*, 5 Tenn. 604. *CALIFORNIA SUPREME COURT, DAVIS, BELAU & CO. V. NATIONAL SUR. CO.*, 139 CAL 223, 224 (1903) "*The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.*" *Carpenter v. Longan*, 83 U. S. 271 (1872), U.S. Supreme Court "*California courts have repeatedly allowed parties to pursue additional remedies for misconduct arising out of a nonjudicial foreclosure sale when not inconsistent with the policies behind the statutes.*" Case law in virtually every state follows Carpenter. *California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053,1070. "*Whenever a court becomes aware that a contract is illegal, it has a duty to refrain from entertaining an action to enforce the contract.*" "*Furthermore the court will not permit the parties to maintain an action to settle or compromise a claim based on an illegal contract.*" *Bovard v. American Horse Enterprises, Inc.*, 201 Cal.App.3d 832 (1988).

In this instant case, nothing under California Civil Code § 2924 applies, unless there was a legal chain of title for the Deed of Trust with the Note on or before the closing date of the securitization trust (*i.e.*, on March 29, 2007, or 90 days thereafter) from WAMU FA (or WMB) to WELLS FARGO, as *Trustee* for the RESIF 2007-B TRUST.

"*It is well established law in the Ninth Circuit that the assignment of a trust deed does not assign the underlying promissory note and right to be paid, and that the security interest is incident of the debt.*" The U.S. Bankruptcy Court for the Eastern District of California has issued a ruling in the matter of In Re: *Rickie Walker*, Case No. 10-21656-E-11, which found that MERS could not, as a matter of law, have transferred the note to Citibank from the original lender, Bayrock Mortgage Corp. The Court's opinion stated that MERS and Citibank are not the *real parties in interest*. The court found that MERS acted "only as nominee" for Bayrock under the Deed of Trust and there was no evidence that the note was transferred. The opinion also provides that "*several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the*

beneficial interest in the deed of trust, or foreclose on the property secured by the deed," citing the well-known cases In Re _Vargas_ (CA Bankruptcy Court), _Landmark v. Kesler_ (Kansas decision as to lack of authority of MERS), _LaSalle Bank v. Lamy_ (New York), and In Re Foreclosure Cases ("Judge Boyko" decision from Ohio Federal Court).

When a Note is sold, it has to be indorsed the same way one basically signs a check for deposit or cashing. Under California Law the Note is not a bearer instrument, but an instrument payable only to a specifically identified person, per CA Commercial Code §3109; any transfer of the Note requires a legal Negotiation, Endorsement and a physical delivery of the note to the transferee to perfect the transfer, per CA Commercial Codes §§ 3201, 3203, 3204.

## V - MORTGAGOR DOES NOT CLAIM STANDING IN THE MORTGAGE SECURITIZATION

This mortgagor is obviously not party to the securitization agreement(s) and/or trust instrument. The right of the original lender to sell and securitize my Mortgage Loan is not under dispute here. I'm not claiming any standing in the mortgage securitization, but rather only bringing forward the fact that as a result of improper procedures and the failure of WAMU FA and the securitization parties to follow their own governing securitization agreement(s) and trust instrument, the true owner in my Mortgage Loan is now UNDOCUMENTED, UNASSIGNED and UNKNOWN. There's a major difference between claiming that sort of right under the securitization agreement(s) and pointing to noncompliance with the governing PSA as evidence that the encumbering or foreclosing party doesn't have standing.

In _Re Johnson v. HSBC et al._ (U.S. District Court, S.D. California Case No. 3:11-cv-2091-JM-WVG) and in _Re Naranjo v. SBMC Mortgage, JP Morgan, US Bank et al._ (U.S. District Court, S.D. California Case No. 11-cv-2229-L), the mortgage loan in each of these cases was securitized but the securitizing parties also failed to follow their own Trust Agreement(s) [i.e., governing _Pooling and Servicing Agreement_ & the binding _Mortgage Loan Purchase Agreements_"]. The "attempted" securitization failed, as in this instant case.

In _Johnson_ case, the court concluded that the Plaintiff is not categorically excluded in making claims based on allegations surrounding the loan's securitization. In _Naranjo_ case, the court denied in part Defendants' Motion to Dismiss stating, "the vital allegation in this case is the assignment of the loan into the WAMU Trust was not completed by May 30, 2003 as required by the Pooling and Servicing Agreement. This allegation gives rise to a plausible inference that the subsequent assignment, substitution, and notice of default and election to sell may also be improper. Defendants wholly fail to address that issue. This reason alone is sufficient to deny Defendant's motion with respect to this issue." Also in Re _Vogan v. Wells Fargo, N.A._, 2011 WL 5826016 (E.D. Cal. 2011) [allowing Section 17200 claim when plaintiffs alleged that assignment was executed after the closing date of securities pool, "giving rise to plausible inference that some part of the recorded assignment was fabricated"]. The Plaintiff in _Vogan_ case alleges both violations of the PSA and relevant law. The court here found that "Defendant has not sufficiently demonstrated that violations of law associated with the loan's securitization can go unchecked because Plaintiff is not party to the PSA".

As recent as on July 31, 2013, in Re _Glaski v. Bank of America, N.A._, as Trustee for the WAMU Mortgage Pass-Through Certificates Series 2005-AR17 (CA5, F064556 Cal. 2013), the California Court of Appeal, 5th Appellate District, reversed the ruling of the trial court in sustaining the defendant's demurrer. In the appellate court opinion (officially published on August 8, 2013), Plaintiff and Appellant _Glaski_ argued that the investment trust that supposedly held his loan did not have the power to foreclose because his loan had never been properly transferred to the trust. The court of appeal held that this allegation was enough to state causes of action for wrongful foreclosure, declaratory relief, violation of the UCL, cancellation of instruments, and quiet title. In particular, the court held: "We conclude that a borrower may challenge the securitized trust's claim to ownership by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under New York law) occurred after the trust's closing date. Transfers that violate the terms of the trust instrument are void under New York law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement." (_Glaski v. Bank of America_, slip opinion at page 3.)

The court then further stated: In *Barrionuevo v. Chase Bank, N.A.* (N.D. Cal. 2012) 885 F.Supp. 964, the district court stated: *"Several courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs the trustee to file a Notice of Default and initiate nonjudicial foreclosure."* (Id., at p. 973). *"We agree with this statement of law, but believe that properly alleging a cause of action under this theory requires more than simply stating that the defendant who invoked the power of sale was not the true beneficiary under the deed of trust. Rather, a plaintiff asserting this theory must allege facts that show the defendant who invoked the power of sale was not the true beneficiary."* (*Glaski v. Bank of America*, slip opinion at page 17; italics added.) The court added: *"We reject the view that a borrower's challenge to an assignment must fail once it is determined that the borrower was not a party to or a third party beneficiary of the assignment agreement."* (*Glaski v. Bank of America*, slip opinion at page 19.)

On February 26, 2014, the California Supreme Court denied the request of the five (5) major banks to have the decision in *Glaski v. Bank of America* depublished. Here is the web link on the subject: *http://www.prweb.com/releases/2014/GlaskiDepublished/prweb11623193.htm.*

While the banks in this case could have attempted to appeal the controversial *Glaski* decision, they feared a ruling upholding *Glaski* by the Supreme Court, and instead chose to seek depublication, and lost. A five-judge panel of the CA Supreme Court denied the request. The *Glaski* decision stands for the simple proposition that if an entity wants to collect on a debt in California (or foreclose on a mortgage), that entity must own the debt. Further, if such an entity is claiming ownership by way of an assignment, that assignment must be valid. Pursuant to the PSA under which the securitization trust entity was created and Federal Securities Law, the transfer of *Glaski's* note was required to occur within 90 days of the closing date of the REMIC MBS Trust. If the mortgage securitization occurs beyond the 90-days, it is considered void at its inception. Therefore, because the securitization trust did not own *Mr. Glaski's* note, it could not legally foreclose. Hence, the foreclosure was wrongful. The CA Court of Appeals agreed. And while *Glaski* is viewed as an outlier in Federal Courts, The decision of the CA Supreme Court to deny the banks' request for depublication of *Glaski* affirms the right of the mortgagor to challenge in Court the securitized trust's claim to ownership by alleging the attempts to transfer the deed of trust to the securitized trust occurred after the trust's closing date is therefore invalid.

## VI - REGARDING LOAN SERVICING

WMB f.k.a. WAMU FA (or its predecessor JPM CHASE), at best, may have a valid authority as servicer of the securitized mortgage loans in the trust fund of the RESIF 2007-B TRUST, but not on my Mortgage Loan. This also applies to SELENE FINANCE, as purported successor servicer to JPM CHASE. Such claim of legal standing and beneficial interest as loan servicer of my Mortgage Loan also fails. Because of the botched securitization and the resulting irreversible broken chain of title, the securitization trust, or WELLS FARGO as *Trustee* for the RESIF 2007-B TRUST, and/or WILMINGTON SAVINGS FUND SOCIETY as Trustee for BCAT 2014-12TT, never received the required intervening assignment of my DOT and cannot produce a complete chain of endorsement of the underlying original mortgage Note. Therefore, or WELLS FARGO, as *Trustee* for the REMIC MBS Trust and/or WILMINGTON SAVINGS FUND SOCIETY as Trustee for BCAT 2014-12TT, also neither one the valid lender, present beneficiary or secured creditor, cannot validly and legally authorize WAMU FA, WMB, or its successor JPM CHASE (or any entity for that matter), and now SELENE FINANCE, to act as servicer/sub-servicer on my loan on behalf of the securitization trust. This is another incontrovertible fact.

This is also be a "whistleblowing" case reportable to the Internal Revenue Service (IRS) to trigger substantial penalties for the blatant violation of the Tax Code, specially if WMB, JPM CHASE, SELENE FINANCE are each found to be have remitted mortgage payments on my referenced loan to the RESIF 2007-B TRUST or BCAT 2014-12TT. The terms and REMIC provisions of the trust agreement and instrument specifically prohibits REMIC Trust, its trustee (or its loan servicer) to receive any income or fees from a non-qualified mortgage loan as in this instant case.

Therefore, I'm requesting and hereby demanding for SELENE FINANCE, successor servicer to JPM CHASE, as "debt collector", BANA as ostensible "present beneficiary" and ALAW as purported "substitute trustee" or

"agent" of the unknown note holder and present beneficiary in my Mortgage Loan to provide me with a written verification backed by legal documentation and valid evidence to support JPM CHASE, BANA and ALAW's claims that any one of them has beneficial interest and/or lawful authority from the UNKNOWN real party in interest and true lender to service my Mortgage Loan and/or cause the foreclosure action on my home property. SELENE FINANCE, JPM CHASE, BANA and ALAW must also each be able to verify and prove that such undisclosed entity they represented here validly acquired the full and unencumbered interest in my Mortgage Loan from original lender WAMU FA. Unless, I receive such verifiable evidence, this QWR letter also disputes the debt I allegedly owed to WILMINGTON SAVINGS FUND SOCIETY as Trustee for BCAT 2014-12TT.

I'm really concerned about the ownership of my Note/Mortgage Loan; to whom the actual obligation is owed to; and who is my actual true lender; and your right to collect collect payments and/or authority to foreclose and sell my home property.

The meltdown of the mortgage market and the effects of any financial manipulation, specially with regard to securitization of mortgages, where original lender WAMU FA (or WMB) was a known participant, may have affected the current amount you claim I owe as the principal balance due on the referenced loan which may not be correct and may not have been properly amortized. In addition, I'm worried that my monthly payments (and/or escrow payments) may have been adversely affected. I may have paid more than what I owe or less than is necessary to properly amortize the mortgage over its term.

My home property is a very important and valuable asset to me and my family. Please don't infer any negative connotation by this letter, but the industry-wide practices of mortgage securitization employed in recent years troubles me, and I'm seeking information to not only alleviate my concerns, but to guard against future problems.

For all of the reasons and factual information with specific particularity that I present herein, I believe there exist violations in the foreclosure action against my home property and omissions in my account that JPM CHASE purportedly service. This is a "QUALIFIED WRITTEN REQUEST" under *Regulation X of the Mortgage Servicing Act* as amended by the Consumer Financial Protection Bureau pursuant to the *Dodd-Frank Act*, which I issue and now serve to SELENE FINANCE and WILMINGTON SAVINGS FUND SOCIETY as Trustee for BCAT 2014-12TT to obtain specific documents pertaining to my referenced Mortgage Loan.

Also, as the alleged loan *servicer*, *debt collector* or *agent* of the present, but unknown, *beneficiary* in my Mortgage Loan, SELENE FINANCE, JPM CHASE or BANA may have been given negotiating rights by the true Note owner, so it is essential information for me to know who is the *real party in interest*, *true lender* and *present beneficiary* in my Mortgage Loan, given its broken chain of ownership. I also require a clearly-established agency relationship among all parties in and to my Mortgage Loan. An obscured note holder/owner also suggests a greater likelihood of noncompliance with federal regulations on pre-default prevention procedures, which is great concern to me.

Clear title to my home property is now in question in light of news involving mortgage lenders, and with the rash of document problems lenders have acknowledged, it would be seen that bank officers (and/or "*robo-signers*") are swearing to affidavits of ownership when they have not even seen the document in question. **Naturally, I require documents from SELENE FINANCE, WILMINGTON SAVINGS FUND SOCIETY as Trustee for BCAT 2014-12TT, JPM CHASE and BANA that I may inspect for any signatures, as well as for account balance status and escrow amounts.**

Please be advised that the matter involving account and escrow matters alone makes this request legitimate; RESPA further allows a QWR to request information "relating to the servicing of the loan." (*See* 12 U.S.C. Section 2605(e)(1)(A) and *Regulation X of the Mortgage Servicing Act*, as amended by the Consumer Financial Protection Bureau pursuant to the *Dodd-Frank Act*). All *loan servicers* and/or *debt collectors*, including JPM CHASE, BANA and ALAW (as purported substitute trustee), are also aware that certain Courts have noted that the QWR process relates to any request for information related to servicing. *Cortez v. Keystone Bank, Inc.,* 200 U.S. Dist. Lexis 5705- 36-37(E.D. Pa. May 2, 2000).

I need to know the information requested herein because of the fact that frequently two or more "lenders" demand payment on the same loan and because of the fact that most notes are sold and securitized in a mortgage-backed securities trust – wherein the actual note holder or true party of interest is not the "creditor" and the identity of the true note holder in due course cannot legally be determined, so that in the event of a mortgage default the party foreclosing frequently does not have possession of loan origination documents and does not have standing to foreclose. I'm also relying upon *UCC 1-201(b)(21)(A), 3-301, 3-305, 3-309, 9-304, 9-305 3-203*, and *3-205* in part for my authority to require this information. See also *Matter of Staff Mortg. & Inv. Co.,* 550 F 2d 1227, (CA 9, 1977) and six subsequent cases handed down by the Ninth Circuit as well as similar cases issued by the Fifth, Sixth and Eighth Circuit Courts for authority to require this information.

I hereby demand absolute evidence from SELENE FINANCE, WILMINGTON SAVINGS FUND SOCIETY as Trustee for BCAT 2014-12TT, JPM CHASE and BANA of a true copy of original un-certificated or certificated security regarding my original loan. In the event you do not supply me with a duly certified true copy of the original Promissory Note and mortgage instrument (*i.e.,* DOT as recorded in the appropriate county recorder's office), with the complete intervening chain of indorsement and valid assignment, respectively, from the originator to the last assignee, if any, **it will be a positive confirmation that SELENE FINANCE, WILMINGTON SAVINGS FUND SOCIETY as Trustee for BCAT 2014-12TT, JPM CHASE and/or BANA (or WELLS FARGO as Trustee for the RESIF 2007-B Trust) do not have the requisite documentation, and needless to say also the possession of the original Promissory Note and Deed of Trust.** As you know possession of the (indorsed) original Note and properly assigned DOT (and duly recorded) are the most important documents to establish the valid lien (legal standing) in and to my home property. Absent the actual evidence of the security, I have no choice but to dispute the validity of the purported loan ownership, funding, entitlement right, foreclosure sale and the current debt you say I owe WILMINGTON SAVINGS FUND SOCIETY as Trustee for BCAT 2014-12TT, or the unknown *real party of interest* you claim to represent. By debt, I'm referring to the principal balance that you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed or any trust or entity you may service or sub-service for.

This can be done independently, and to validate this debt, I need to have your complete examination, audit, verification and accounting of my Mortgage Loan account from its inception through the present date. I also request that you conduct your own investigation and audit of said account since its inception to validate the debt you currently claim I owe. I would like you to validate the debt you currently claim I owe so that it is accurate.

Please do not rely on other servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account. I understand that potential abuses by you (or your predeccessors), could have deceptively, wrongfully, unlawfully, and/or illegally:

- Increased the amounts of monthly payments;
- Increased the principal balance I owe;
- Increased the escrow payments;
- Increased the amounts applied; and attributed toward interest on this account;
- Decreased the proper amounts applied and attributed toward the principal on this account and/or
- Assessed, charged and/or collected fees, expenses and miscellaneous charges I'm not legally obligated to pay under this mortgage, note and/or deed of trust.

I request that you insure that I have not been the victim of such predatory servicing and lending practices. To insure this, I have authorized a further thorough review, audit, verification and accounting of the subject Mortgage Loan from the date of initial contact, application and the origination of this account to the present date.

I therefore request for all the appropriate documents specifically mentioned in this QWR letter. I need to have a full and immediate disclosure including copies of all pertinent information and complete documents regarding the Subject Loan.

I need answers to my questions herein to ensure that the referenced Mortgage Loan:

1. Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws;
2. That the origination and/or any sale or transfer of such account or monetary instrument was conducted in accordance with proper laws, and was a lawful sale with complete disclosure to all parties with an interest;
3. That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset who is holding the original Note in compliance with statutes, state and federal laws, and is entitled to the benefits of payments;
4. That all good faith and reasonable disclosures of transfers, sales, power of attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees, etc. were and still are properly disclosed, including, but not limited to the period commencing with the original loan solicitation, through and including all parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof.
5. That each servicers and/or sub-servicers of the referenced Mortgage Loan has serviced such mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;
6. That each servicers and/or sub-servicers of this mortgage has serviced my Subject Loan in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;
7. That the Mortgage Loan account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;
8. That interest and principal have been properly calculated and applied to this loan;
9. That any principal balance has been properly calculated, amortized and accounted for;
10. That no charges, fees or expenses, which is not my obligation in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the Subject Loan transaction.

Please also provide true copies, front and back, of the following documents:

### DOCUMENTS NEEDED TO COMPLETE FURTHER FORENSIC MORTGAGE LOAN AUDIT

1. All "master" transaction registers/ledgers of my loan in your servicing files or backup files with you or any sub-servicer, including but not limited to the Fidelity mortgage servicing system, *FiServ* or any mortgage servicing system you may use. Please provide all information residing in any data field in the system or any component that supports the system that deals with any of the questions listed below. (No screen or partial dumps or spreadsheets please.)
2. Also, please provide and include all descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts I have retained to audit and review the mortgage account may properly conduct their work.
3. A certified true copy of the front and back portion of the original promissory note as it exists today along with all the complete chain of indorsements, affixed or un-affixed allonges, and assignments, if any, whether recorded or not.
4. A certified true copy of the front and back portion of the original deed of trust as it exists today along with the complete chain of assignments, if any, whether recorded or not.
5. Front and back copy of all cancelled checks, wire transmittals or other evidence of payment for each purchase and assignment of my note/mortgage, if any.
6. All executed, recordable and "non-recordable" assignments associated, if any, with the loan including, but not limited to assignments, transfers, allonges, or other documents evidencing a transfer, sale or

assignment of the mortgage, deed of trust, promissory note or other document that secures payment to my obligation in the account/loan from inception of the loan to the present date.

7. All records, electronic or otherwise, of assignments of deed of trust, promissory note, or servicing rights to the mortgage, if any.

8. All escrow analyses conducted on the account from inception of the loan until the date of this letter.

### SERVICING RELATED QUESTIONS

After the recent problems in the mortgage market, I have several servicing related questions in addition to the questions enumerated above. Please answer the following questions:

1. What is your actual servicing relationship in the referenced loan? Are you the servicer, master servicer, interim servicer, private label servicer, default servicer, sub-servicer, and/or special servicer of the loan?

2. Does your record also show the subject Mortgage Loan was securitized? (Yes/No) If so, please answer or provide the following information:
   a. Name all trusts, SPVs, QSPEs, MBS, REMICS, and entities that the subject Mortgage Loan has been assigned to from its inception to the current date?
   b. The current trust, SPV, QSPE, SPE, MBS, REMIC or entity of the Mortgage Loan is owned by?

3. Is there any Fannie Mae, Freddie Mac, Ginnie Mae, FHA, HUD, VA, or private guarantee related to the loan?
   a. If yes, who has provided this guarantee and what portion of my payment goes to this guarantee?

4. Who is the document custodian that safeguards and holds the original promissory note and deed of trust that I signed in wet ink?

5. Does my original promissory note and deed of trust currently have any "blank endorsements" on it? (Yes/No)
   a. If yes, can you explain why?
   b. If yes, can you tell me as of the date written above:
      i. Who owns my note and is the actual current "lender" and not servicer of my note?
      ii. Who claims to be the holder of my note?
      iii. Has the United States government, or the Federal Reserve, or any government sponsored entity purchased my note?

6. Does my original promissory note and deed of trust properly reflect the <u>intervening</u> chain of title from one interest to another? (Yes/No)

7. Are there any missing assignments? (Yes/No)
   a. If yes, can you explain why?

8. Has any due diligence and/or quality control services conducted by you or any other entity on the loan identified any red flags, frauds, misrepresentations, misstatements, errors, or problems?
   a. if yes, can you provide details?

9. Has the loan ever been classified as a "scratch and dent" loan?
   a. If yes, can you provide details why?

10. Will I receive my original (signed in ink) promissory note and deed of trust stamped *"Cancelled & Paid In Full"* when the loan is paid off or refinanced?
    a. If no, can you tell me why not?

11. Have any BPOs, property inspections, and/or appraisals by you or any investor been conducted on my Property since inception of the loan? (Yes/No)
    a. If yes, have I been charged or assessed any fee for any BPOs, property inspections or appraisals after inception of the loan? (Yes/No)
       i. If yes, please provide the date of such BPO, property inspections or appraisal, the amount paid and copies of all documents related to each BPO, property inspections or appraisal conducted on my home property including, but not limited to reports, orders, invoices and cancelled checks for payments.

12. Who may I contact for the purchase and/or repurchase of the promissory note, or negotiate loan modication application?

13. If different from the stated Securitization Trust herein, what is the name of the mortgage-backed securities (MBS) trust and date of the pooling and servicing agreement (PSA) or trust agreement that governs your servicing of the loan?
    a. Where can I secure a copy of this securitization agreement and all the other SEC filings of the named the MBS trust?
14. Is there any power of attorney ("POA") filed in my Property's county or any other county that governs your relationship with the loan?
    a. If yes, please identify the county where the POA is filed and the filing number, name, and date of the POA?

### SUSPENSE/UNAPPLIED ACCOUNT QUESTIONS

For purposes of this section, please treat the term "suspense account" and "unapplied account" as one in the same.

1. Has there been any suspense or unapplied account transactions on the account from inception of the loan until present date?
    a. If yes, why? If no, please skip the questions in this section dealing with suspense and unapplied accounts.
    b. In a spreadsheet or in letterform in a columnar format, please detail any suspense or unapplied transaction, both debits and credits that has occurred on the account from inception of the loan until present date?
    c. What is the current suspense account balance?
    d. If applicable, why was my money placed into suspense and how will it be allocated to the loan?

### LATE FEE QUESTIONS

For purposes of my questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

1. Has there been any late fee transaction/s on the loan account from inception of the loan until the present date?
    a. If yes, why? If no, please skip the questions in this section dealing with late fees.
    b. In a spreadsheet or in letterform in a columnar format, please detail any late fee transaction, both debits and credits that has occurred in the account from inception of the loan until present date?
    c. What is the current late fee balance in the account?
2. Have you reported the collection of late fees on the loan account as interest in any statement to me or to the IRS? Yes or No?
   Do you consider the payment of late fees as liquidated damages to you for not receiving my payment on time? Yes or No?
3. Are late fees considered interest? Yes or No?
4. Please detail in writing what expenses and damages you incurred for any payment I made that was late, if any.
5. Were any of these expenses or damages charged or assessed to my account in any other way? Yes or No?
6. If yes, please describe what expenses or charges were charged or assessed to my account?
7. Please describe in writing what expenses you or others undertook due to any payment I made that was late?
8. Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement that I signed and/or authorized the assessment or collection of late fees?

Please also send true and correct copies, front and back, of:

1. Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust and Note in this matter;
2. Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust and Note;

3. Any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust, including any and all assignments or transfers or nominees of any substitute trustees(s);

4. Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust and any Note;

5. Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust and any Note;

6. Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust and any Note;

7. Any documentation evidencing the Mortgage/Deed of Trust is not a constructive trust or any other form of trust;

8. All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from inception of this account to the date written above;

9. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts I retain to audit and review this mortgage account may properly conduct their work;

10. All assignments, transfers, allonge, or other documents evidencing a transfer, sale or assignment of the subject mortgage, deed of trust, monetary instrument or other document that secures my payments to the obligation in the account from inception of the account to the present date including such assignment on or by the MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), if any;

11. All records, electronic or otherwise, of assignments of the mortgage, monetary instrument or servicing rights to the mortgage, including any such assignments on MERS;

12. All deeds in lieu, modifications to the mortgage, monetary instrument or deed of trust from inception of the account to the present date;

13. Each and every canceled check, money order, draft, debit or credit notice issued to any servicers of the account for payment of any monthly payment, other payment, escrow charge, fee or expense on the account;

14. All escrow analyses conducted on the account from inception of the account until the date of this letter;

15. Each and every copy of the canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.;

16. Each and all copy of payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others on the account;

17. All letters, statements and documents sent by your company and the loan servicing company;

18. All letters, statements and documents sent by agents, attorneys or representatives of your company;

19. All letters, statements and documents sent by previous servicers, sub-servicers or others, if any, in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company;

20. All letters, statements and documents contained in the account file or imaged by you, any servicers or sub-servicers of the mortgage from inception of the account to the present date;

21. All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument;

22. All copies of property inspection reports, appraisals, BPOs and reports done on my home property;

23. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense that has been charged to the mortgage account from inception of this account to the present date;

24. All copy of checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense that has been charged to the account from inception of the account to the present date;

25. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from inception of the account to the present date;

26. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of the account from inception of the account to the present date; and

27. All account servicing transaction records, ledgers, registers and similar items detailing how the account has been serviced from inception of the account to the present date.

Further, in order to fully complete audit and review of my referenced account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of the mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions:

In regards to Mortgage and each Assignment of the referenced Mortgage Loan:

1. Has the sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument that I executed to secure the debt(s) been recorded in the county property records in the county and state in which my home property is located from inception of the account to the present date? Yes or No?

2. If not, why?

3. Is your company the servicer of the mortgage account or the holder in due course and beneficial owner of the mortgage, monetary instruments and/or deed of trust?

4. Have any sales, transfers or assignments of the mortgage, monetary instrument, deed of trust or any other instrument that I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from inception of the account to the present date? Yes or No?

5. If yes, please provide the name(s) of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument that I executed securing the obligation on the account that was not recorded in the county records where my home property is located, whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

Please ensure that all copies of the documents you provide are clear, legible, and copied in their entirety.

**Finally, RESPA also requires:** Documentation of all loss mitigation evaluations and actions taken on this Mortgage Loan; A full accounting of all money paid and received on my loan account from any party sources, including agreements, contracts, and understandings with vendors that have paid for any changes on the account from inception of the referenced loan to the date of this QWR letter.

Thank you in advance for addressing ALL of the questions and issues above. As mentioned, upon receipt of the documents and answers, the third party examination and audit that have already been initiated regarding my Mortgage Loan will be compared to the information and documents you provide, and that may lead to a further document requests and answers to questions under an additional QWR letter.

It is my hope that the immediate questions and audit herein will validate the debt accurately. If not, I will need you to correct and adjust any errors or abuses identified. I also want to negotiate a modification of my Mortgage Loan from the actual mortgagee, lender and true party in interest/note holder in due course.

Despite my current dispute regarding the debt (and the foreclosure action against my home property, if any) I'm willing to conditionally take SELENE FINANCE's claim that WILMINGTON SAVINGS FUND SOCIETY as Trustee for BCAT 2014-12TT is the owner of my mortgage loan and that SELENE FINANCE, successor to JPM CHASE is the authorized servicer in my Mortgage Loan, with ALAW as substitute trustee under the Deed of Trust without any further proof - provided SELENE FINANCE (and/or WILMINGTON SAVINGS FUND SOCIETY as Trustee for BCAT 2014-12TT) consider and approve in good faith my request for loan modification - with a fixed interest rate, forbearance or forgiveness of arrears, if any, and appropriate principal loan reduction that would result to an affordable monthly payment given my financial hardship and current capacity to pay such mortgage. This will prove to me that SELENE FINANCE and/or JPM CHASE is authorized by the *real party of*

_interest in my Mortgage Loan to act as its servicer and agent in approving my loan modification application._

I'm also willing to fully cooperate, and hereby request SELENE FINANCE and JPM CHASE's assistance to get the chain of title in and to my home property in proper and legal order so I may be assured that when the loan is modified and eventually paid-off in full at maturity or sooner, SELENE FINANCE and/or JPM CHASE, on behalf of the _real party in interest_, can and will provide me clear title – that is, free and clear from any potential claim by another party, thereby eliminating my exposure to a double financial jeopardy situation . As it stands today, _supra and infra_, there is a broken chain of title in my home property because of the fact that original lender WAMU FA (under the name of WMB) had irrevocably sold my mortgage loan, for full value received, in a securitization transaction _without_ the required intervening assignments of Deed of Trust and complete chain of concurrent Note endorsements to the trustee of the securitization trust within the absolute REMIC deadline (_i.e._, on March 29, 2007, or 90 days thereafter at most).

I want to keep my home property and continue paying my mortgage obligation to the valid party who possess my original Promissory Note and the full and unencumbered beneficial interest in my Deed of Trust. However, I need SELENE FINANCE and JPM CHASE's assistance not only to legally assure me that I'm paying the _real party in interest_ and _present beneficiary_ in my Mortgage Loan, but also to get my loan modified with a fixed interest, forbearance or forgiveness of arrears, reduction of loan principal and lowered monthly payments that would be affordable given my current financial hardship.

Otherwise, I have no choice but to pursue my Complaint, Dispute of Debt & Validation of Debt Request in the civil suit against SELENE FINANCE, JPMORGAN, BANA and ALAW. I will also consider initiating a "_whistleblowing_" report to the U.S. Internal Revenue Service (IRS) for the blatant violation of the Tax Code applicable to REMIC entities such as the RESIF 2007-B TRUST and/or BCAT 2014-12TT. Please do not take this negatively. I really prefer to resolve the problem through a valid loan modification as full settlement of my dispute and to clear or correct the broken chain of title in and to my home property.

## CEASE AND DESIST NOTICE

While awaiting for your full response to my QWR/Debt Dispute letter, or alternatively your favorable consideration and prompt action regarding my proposal and request for a valid loan modification herein, I hereby demand that all adversary parties named herein, including SELENE FINANCE and ALAW, to CEASE AND DESIST any and all attempt to proceed with the unlawful foreclosure action on my home property.

California Civil Code Section 2924 provides that a power of sale shall not be exercised until "_the trustee, mortgagee, or beneficiary, or any of their authorized agent shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default._" In this instant case as stated, there is _no valid Notice of Default, Notice of Trustee's Sale_ and _Trustee's Deed Upon Sale_ issued and recorded by instruction and authority of the unknown "_present beneficiary_" and "_true lender._"

Specifically, _**Covenant No. 22**_ in my _**Deed of Trust**_ [at Page 13 of 15] states,

> "_**Acceleration; Remedies.** Lender shall give notice to Borrower prior to accelerating the following Borrower's breach of any covenant or agreement in this Security Instrument [. . .] The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale [. . .]_
>
> _If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee_

*interest in my Mortgage Loan to act as its servicer and agent in approving my loan modification application.*

I'm also willing to fully cooperate, and hereby request SELENE FINANCE and JPM CHASE's assistance to get the chain of title in and to my home property in proper and legal order so I may be assured that when the loan is modified and eventually paid-off in full at maturity or sooner, SELENE FINANCE and/or JPM CHASE, on behalf of the *real party in interest*, can and will provide me clear title – that is, free and clear from any potential claim by another party, thereby eliminating my exposure to a double financial jeopardy situation . As it stands today, *supra and infra*, there is a broken chain of title in my home property because of the fact that original lender WAMU FA (under the name of WMB) had irrevocably sold my mortgage loan, for full value received, in a securitization transaction without the required intervening assignments of Deed of Trust and complete chain of concurrent Note endorsements to the trustee of the securitization trust within the absolute REMIC deadline (*i.e.*, on March 29, 2007, or 90 days thereafter at most).

I want to keep my home property and continue paying my mortgage obligation to the valid party who possess my original Promissory Note and the full and unencumbered beneficial interest in my Deed of Trust. However, I need SELENE FINANCE and JPM CHASE's assistance not only to legally assure me that I'm paying the *real party in interest* and *present beneficiary* in my Mortgage Loan, but also to get my loan modified with a fixed interest, forbearance or forgiveness of arrears, reduction of loan principal and lowered monthly payments that would be affordable given my current financial hardship.

Otherwise, I have no choice but to pursue my Complaint, Dispute of Debt & Validation of Debt Request in the civil suit against SELENE FINANCE, JPMORGAN, BANA and ALAW. I will also consider initiating a "*whistleblowing*" report to the U.S. Internal Revenue Service (IRS) for the blatant violation of the Tax Code applicable to REMIC entities such as the RESIF 2007-B TRUST and/or BCAT 2014-12TT. Please do not take this negatively. I really prefer to resolve the problem through a valid loan modification as full settlement of my dispute and to clear or correct the broken chain of title in and to my home property.

## CEASE AND DESIST NOTICE

While awaiting for your full response to my QWR/Debt Dispute letter, or alternatively your favorable consideration and prompt action regarding my proposal and request for a valid loan modification herein, I hereby demand that all adversary parties named herein, including SELENE FINANCE and ALAW, to CEASE AND DESIST any and all attempt to proceed with the unlawful foreclosure action on my home property.

California Civil Code Section 2924 provides that a power of sale shall not be exercised until "*the trustee, mortgagee, or beneficiary, or any of their authorized agent shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default.*" In this instant case as stated, there is no valid *Notice of Default*, *Notice of Trustee's Sale* and *Trustee's Deed Upon Sale* issued and recorded by instruction and authority of the unknown "*present beneficiary*" and "*true lender.*"

Specifically, **Covenant No. 22** in my **Deed of Trust** [*at Page 13 of 15*] states,

> "**Acceleration; Remedies.** Lender *shall give notice to Borrower prior to accelerating the following Borrower's breach of any covenant or agreement in this Security Instrument [. . .] The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale [. . .]*
>
> *If* Lender *invokes the power of sale,* Lender *shall execute or cause* Trustee *to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.* Trustee *shall cause this notice to be recorded in each county in which any part of the Property is located.* Lender *or* Trustee

*shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines [. . .]"* [Portion hereof underlined for emphasis.]

While the mortgage securitization audit and analysis report that I have on hand identified and alleged the identity of the underlined and undocumented *transferee(s)* or *assignee(s)*, there is no legal document perfecting the transfer of the subject Mortgage Loan in the public chain of title. Under Section 2924 there can be no foreclosure, because there is no longer a legal beneficiary recorded in the public chain of title.

Because there is no valid *Substitution of Trustee* instrument that had been issued and recorded by a valid party, it follows that any foreclosure action by a false mortgage trustee (such as ALAW here) without any standing is not only invalid, but illegal as well.

ALAW is neither the valid Trustee in the Deed of Trust nor the even the authorized agent of the unassigned, undocumented and unknown *present beneficiary* and *real party in interest* in my subject Mortgage Loan. The foreclosure action by ALAW against my home property is fraudulent and invalid, and therefore VOID, not just voidable. *A trustee sale based on a statutorily deficient notice of default is invalid.*" *Miller v. Cote* (1982) 127 Cal. App. 3d 888, 894.

I anxiously await your prompt response.

Sincerely,

*/s/ John Lundy*
John F. Lundy

cc: **Consumer Financial Protection Bureau**
    P.O. Box 4503
    Iowa City, Iowa 52244
    Fax No. (855) 237-2392

LUNDYREALESTATE

02/25/2010  12:09     4155321568



OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $1.82 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $7.82 |

Sent To  Selene Finance, LP

Street, Apt. No., or PO Box No.  Box 422039

City, State, ZIP+4  Houston, TX 77 242

7012 2230 0002 4136 5711

LUNDYREALEST...

1/25/2010  12:09      4155321568

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Selene Finance, LP
Loan Resolution dept
Box 422 039

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Burllur Wa_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
_Buckalagwew Wat_

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail®   ☐ Priority Mail Express™
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7012 2210 0002 4118 5781

PS Form 3811, July 2013       Domestic Return Receipt

# EXHIBIT "J"

# John F.Lundy
### 29 Bridgegate Drive
### San Rafael, CA 94903

July 3, 2015

**SELENE FINANCE, LP**
Attention: Loan Resolution Department
P.O. Box 422039
Houston, TX 77242

*Sent via U.S. Post Office Certified Mail # 7015 0640 0000 2650 9054*

<u>With Copy to:</u>

**WILMINGTON SAVINGS FUND SOCIETY, FSB**
**d.b.a. CHRISTIANA TRUST**, as Trustee for BCAT 2014-12TT
[c/o SELENE FINANCE]

**WELLS FARGO BANK, N.A.**
as TRUSTEE FOR THE RESI FINANCE LIMITED PATRNERSHIP,
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-B
[c/o SELENE FINANCE]

**ALAW**                                          **CONSUMER FINANCIAL PROTECTION BUREAU**
9200 Oakdale Avenue, 3rd Floor                    P.O. Box 4503
Chatsworth, CA 91311                              Iowa City, Iowa 52244
                                                  [*Transmitted electronically to:*
                                                  *www.consumerfinance.gov/Complaint*]

Re: Loan Servicing No. 812958 (previously CHASE Loan Servicing No. 3060169236)

Original Lender: <u>WASHINGTON MUTUAL BANK, FA</u>
Original (WAMU) Loan Number: <u>3060169236</u>
Date of Note and Deed of Trust: <u>December 21, 2005</u>
Deed of Trust recorded in the official records of the Marin County Recorder on <u>December 30, 2005</u>
   (as Instrument/Document No. <u>2005-0098332</u>
Subject Property Location: <u>29 Bridgegate Drive, San Rafael, CA 94903 (APN: 164-570-29)</u>
Borrower(s)/Mortgagor(s): <u>John F. Lundy</u>

### FOLLOW-UP LETTER TO MY QWR/DEBT DISPUTE LETTER DATED 2/26/2015; AND CEASE & DESIST NOTICE

I sent by USPS certified mail the attached Qualified Written Request/Debt Dispute letter dated February 26, 2015 (hereinafter, "**QWR1 letter**" – see *Attachment "A"*) to SELENE FINANCE. My QWR1 letter was also served to SELENE FINANCE to formally dispute the alleged indebtedness under the subject Mortgage Loan which SELENE FINANCE claims I owe to WILMINGTON SAVINGS FUND SOCIETY, FSB d.b.a. CHRISTIANA TRUST, as Trustee for BCAT 2014-12TT. As shown on the USPS Form 3811 (signed Return Receipt Form – *see* last page of *Attachment A*) SELENE FINANCE, in fact, received my QWR1 letter.

To date, however, I have not receive any acknowledgment and response from SELENE FINANCE addressing

my QWR1/Debt Dispute letter. It has been over 4 months now since you received my QWR1/Debt Dispute letter. SELENE FINANCE is therefore now in violation of the following statutes:

(a) Under the *Real Estate Settlement Procedures Act* ("RESPA"*), codified as Section 2605(e) of Title 12 of the United States Code* and Section 1024.36(c) of *Regulation X of the Mortgage Servicing Act* as amended by the Consumer Financial Protection Bureau pursuant to the *Dodd-Frank Act*, SELENE FINANCE must, <u>within five (5) business days</u> (excluding legal public holidays, Saturdays and Sundays), provide me with a response acknowledging receipt of my QWR1 letter;

(b) Pursuant to *Section 1024.36(d)(ii)(2)(A)*, not later than <u>ten (10) business days</u> after receiving my request and demand for information, SELENE FINANCE must provide me with the identity of, and address or other relevant contact information for the <u>true owner of my Mortgage Loan</u> as referenced herein; and

(c) For all of the other information requested in my QWR1 letter, and pursuant to *Section 1024.36(d)(ii)(2)(B)*, SELENE FINANCE must respond not later than <u>thirty (30) business days</u> after you receive this request for information (also excluding legal public holidays, Saturdays and Sundays). A 15-day extension is allowable only if I'm informed about it and given the reasons for the extension.

By copy hereof, I am hereby requesting assistance from the Consumer Finance Protection Bureau (CFPB) to compel SELENE FINANCE to follow the law. This follow up "QWR2 letter" is also being transmitted to CFPB to serve as my formal complaint against SELENE FINANCIAL for conspiring with JP MORGAN CHASE BANK, N.A. (hereinafter, "JPM CHASE"), the previous loan servicer; WELLS FARGO BANK, N.A. (hereinafter, "WELLS FARGO"), as TRUSTEE FOR THE RESI FINANCE LIMITED PARTNERSHIP, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-B (the ""REMIC MBS Trust" or the "RESIF 2007-B TRUST"); and WILMINGTON SAVINGS FUND SOCIETY, FSB d.b.a. CHRISTIANA TRUST, as Trustee for BCAT 2014-12TT, in fabricating and recording false mortgage documents/instruments that adversely further cloud the title in and to my subject home property.

Please note that I also previously sent a similar QWR/Debt Dispute letter to JPM CHASE, *successor-in-interest* to WASHINGTON MUTUAL BANK (hereinafter, "WMB") f.k.a. WASHINGTON MUTUAL BANK, FA (hereinafter, "WAMU FA"); and with copy to WELLS FARGO, as TRUSTEE for the RESIF 2007-B TRUST; and ALAW of Chatsworth, California (hereinafter, "ALAW"), as purported *successor trustee* under my Deed of Trust.

As you will note from my 22-page QWR1 letter (*Attachment "A"* herein), I provided SELENE FINANCE sufficient information and facts with specific particularity why I dispute the debt you say purportedly owe WILMINGTON SAVINGS FUND SOCIETY d.b.a. CHRISTANA TRUST, as Trustee for BCAT 2014-12TT. Unless I receive valid evidence and supporting documentation to the contrary, I also discussed in details in my QWR1 letter why I believe SELENE FINANCE does not have any legal standing and/or beneficial interest in my subject Mortgage Loan to act as its servicer.

## CEASE AND DESIST NOTICE

While awaiting for SELENE FINANCE's full response to my QWR/Debt Dispute letter, or alternatively your favorable consideration and prompt action regarding my proposal and request for a valid loan modification herein, I hereby demand that all adversary parties named in my QWR1 and this follow QWR2 letter, including SELENE FINANCE and ALAW, to <u>CEASE AND DESIST any and all attempt to proceed with the unlawful foreclosure action against my home property.</u>

California Civil Code Section 2924 provides that a power of sale shall not be exercised until "*the trustee, mortgagee, or beneficiary, or any of their authorized agent shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default.*"

Specifically, **Covenant No. 22 in my Deed of Trust** *[at Page 13 of 15]* states,

*"Acceleration; Remedies. Lender shall give notice to Borrower prior to accelerating the following Borrower's breach of any covenant or agreement in this Security Instrument [. . .] The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale [. . .]*

*If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines [. . .]"*
[Portion hereof underlined for emphasis.]

While the mortgage securitization audit and analysis report that I have on hand identified and alleged the identity of the unassigned and undocumented *transferee(s)* or *assignee(s)*, there is no legal document perfecting the transfer of my subject Mortgage Loan in the public chain of title. Under Section 2924 there can be no foreclosure, because there is no longer a legal beneficiary recorded in the public chain of title.

Because there is no valid *Substitution of Trustee* instrument that had been issued and recorded by a valid party, it follows that any foreclosure action by a false mortgage trustee (such as ALAW here) is not only invalid, but illegal as well.

ALAW is neither a valid trustee in my Deed of Trust nor the even the authorized agent of the unassigned, undocumented and unknown *present beneficiary* and *real party in interest* in my subject Mortgage Loan. Any foreclosure action by ALAW against my home property is fraudulent and invalid, and therefore VOID, not just voidable. *A trustee sale based on a statutorily deficient notice of default is invalid." Miller v. Cote* (1982) 127 Cal. App. 3d 888, 894.

I remain anxiously waiting for your prompt response.

Sincerely,

/s/ John Lundy
John F. Lundy

# EXHIBIT "K"

2015-0033780

Recorded
Official Records
County of
Marin
RICHARD N. BENSON
Assessor-Recorder
County Clerk

REC FEE     18.00

KS
Page 1 of 1

09:33AM 10-Jul-2015

RECORDING REQUESTED BY:

ServiceLink

WHEN RECORDED MAIL TO:

TRUSTEE CORPS
17100 Gillette Ave
Irvine, CA 92514

APN: 164-570-29          TS No: CA08006436-14-2          TO No: 150061292-CA-VOI

## SUBSTITUTION OF TRUSTEE

WHEREAS, JOHN F LUNDY, A MARRIED MAN was the original Trustor, CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP. was the original Trustee and WASHINGTON MUTUAL BANK, FA was the original Beneficiary under that certain Deed of Trust dated December 21, 2005 and recorded on December 30, 2005 as Instrument No. 2005-0096332 of official records in the Office of the Recorder of Marin County, California;

WHEREAS, the undersigned current Beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided;

NOW THEREFORE, Wilmington Savings Fund Society, FSB DBA Christiana Trust, not in its individual capacity, but solely as Trustee for BCAT 2014-12TT hereby substitutes MTC Financial Inc. dba Trustee Corps, whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

Dated: ___7 / 2 / 15___

Selene Finance, LP as servicer and attorney in fact for Wilmington Savings Fund Society, FSB DBA Christiana Trust, not in its individual capacity, but solely as Trustee for BCAT 2014-12TT

By: _Anthony D'Addona_    Foreclosure Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _____ Florida

COUNTY OF _____ Duval

On __July 2 2015__ before me, _Nazarene McKinney_ Notary Public, personally appeared _Anthony D'Addona Foreclosure Manager_, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Florida_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature
Nazarene McKinney

NAZARENE McKINNEY
MY COMMISSION #FF029626
EXPIRES June 17, 2017
FloridaNotaryService.com
(407) 398-0153

# EXHIBIT "L"

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

2015-0039702

Recorded
Official Records
County of
Marin
RICHARD N. BENSON
Assessor-Recorder
County Clerk

06:50AM 14-Aug-2015

REC FEE    24.00

S0
Page 1 of 3

---

APN: 164-570-29     TS No: CA08006436-14-2     TO No: 150081292-CA-VOI

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

(The above statement is made pursuant to CA Civil Code Section 2923.3(a)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recording appears on this notice).

This amount is **$375,690.78 as of August 13, 2015,** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits

APN: 164-570-29          TS No: CA08006436-14-2          TO No: 150061292-CA-VOI

a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: Wilmington Savings Fund Society, FSB DBA Christiana Trust, not in its individual capacity, but solely as Trustee for BCAT 2014-12TT c/o MTC Financial Inc. dba Trustee Corps located at 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 TDD: 866-680-4288 Ref No: CA08006436-14-2

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.   Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

# REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** MTC Financial Inc. dba Trustee Corps is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of December 21, 2005, executed by JOHN F LUNDY, A MARRIED MAN, as Trustor(s), to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, the original Beneficiary, recorded December 30, 2005, as Instrument No. 2005-0098332, of the official records in the Office of the Recorder of Marin County, California, as more fully described on said Deed of Trust  Including a Note(s) for the sum of $1,134,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON September 1, 2010 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS ALL OF THE TERMS AND CONDITIONS AS PER THE DEED OF TRUST, PROMISSORY NOTE AND RELATED LOAN DOCUMENTS.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to MTC Financial Inc. dba Trustee Corps, said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5(b) or California Civil Code Section 2923.55 is attached.

Dated: August 13, 2015                    MTC Financial Inc. dba Trustee Corps
                                         as Duly Appointed Successor Trustee


                                         By: Myron Ravelo, Authorized Signatory

MTC Financial Inc. dba Trustee Corps may be acting as a debt collector attempting to collect a debt. Any information obtained may be used for that purpose.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

# CALIFORNIA DECLARATION OF COMPLIANCE
## (Civil Code § 2923.55(c))

Borrower(s):     **JOHN F LUNDY**

Mortgage Servicer:     **SELENE FINANCE, LP**

Property Address:     **29 BRIDGEGATE DRIVE**
                  **SAN RAFAEL, CA 94903**

T.S No:     **CA08006436-14-2**

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the Borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the Borrower's financial situation and explore options for the Borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☑ The mortgage servicer has exercised due diligence to contact the Borrower pursuant to California Civil Code § 2923.55(f) to "assess the Borrower's financial situation and explore options for the Borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual did not meet the definition of "Borrower" pursuant to subdivision (c) of Section 2920.5.

4. ☐ No contact was made with the Borrower pursuant to Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan described in Civil Code § 2924.15(a).

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, including my review of the mortgage servicer's business records.

Date: _7/17/15_

SELENE FINANCE, LP, Mortgage Servicer

By: _____

## ATTACHMENT TO NOTICE OF DEFAULT

# EXHIBIT "M"

# In the Supreme Court of the State of California

TSVETANA YVANOVA,

**Plaintiff and Appellant,**

v.

NEW CENTURY MORTGAGE
CORPORATION, OCWEN LOAN
SERVICING, LLC, WESTERN
PROGRESSIVE, LLC, and DEUTSCHE
BANK NATIONAL TRUST COMPANY,
et al,

**Defendant-Respondent.**

Case No. S218973

Second Appellate District, Division One, Case No. B247188
Los Angeles County Superior Court, Case No. LC097218
Honorable Russell Kussman, Judge

## AMICUS BRIEF OF THE ATTORNEY GENERAL IN SUPPORT OF PLAINTIFF AND APPELLANT TSVETANA YVANOVA

KAMALA D. HARRIS
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
MICHELE VAN GELDEREN
Supervising Deputy Attorney General
SANNA R. SINGER
Deputy Attorney General
State Bar No. 228627
  110 West A Street, Suite 1100
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone: (619) 645-2111
  Fax: (619) 645-2012
  Email: Sanna.Singer@doj.ca.gov
*Attorneys for Amicus Curiae*
*the Attorney General of California*

# TABLE OF CONTENTS

Page

INTRODUCTION........................................................................................ 1

STATEMENT OF INTEREST..................................................................... 2

ARGUMENT ............................................................................................... 3

I.   CALIFORNIA HAS A STRONG PUBLIC POLICY
     IN FAVOR OF PROTECTING HOMEOWNERS
     FROM WRONGFUL FORECLOSURE ................................ 3

     A.   California's Foreclosure Statutes Strike a
          Careful Balance Between Efficiency in
          Foreclosure and Homeowner Protection ..................... 4

     B.   The Recent Enactment of the HBOR Reflects a
          Legislative Intent to Protect Homeowners
          Against Abusive Practices, Including
          Foreclosures by the Wrong Party................................. 5

II.  A HOMEOWNER MAY BRING A CAUSE OF
     ACTION FOR WRONGFUL FORECLOSURE ON
     THE BASIS THAT THE ASSIGNMENT OF DEBT
     IS INVALID ......................................................................... 7

     A.   The Foreclosing Party's Lack of Authority Is a
          Proper Basis on which the Homeowner May
          Challenge a Foreclosure............................................. 7

     B.   Because a Void Assignment Deprives a
          Foreclosing Party of the Authority to Foreclose,
          a Homeowner May Bring a Wrongful
          Foreclosure Action on That Basis............................. 10

     C.   A Homeowner Is Harmed When an Entity
          Without The Authority To Do So Forecloses on
          Her Home.................................................................. 14

     D.   Permitting Wrongful Foreclosure Actions to
          Challenge Invalid Assignments is Sound Policy ...... 17

CONCLUSION .......................................................................................... 19

# TABLE OF AUTHORITIES

Page

CASES

Anderson v. Heart Federal Sav. & Loan Assn.
 (1989) 208 Cal.App.3d 202 ............................................................. 8

Bailey v. Wells Fargo Bank
 (D. Mass Bankr. 2012) 468 B.R. 464 .................................................. 12

Ball v. Bank of New York
 (W.D. Mo. 2013) 2012 WL 6645695 .................................................. 12

Bank of Am. v. La Jolla Group II
 (2005) 129 Cal.App.4th 706 ............................................................. 8

Bank of America Assn. v. Reidy
 (1940) 15 Cal.2d 243 ...................................................................... 16

Barrionuevo v. Chase Bank
 (N.D. Cal. 2012) 885 F.Supp.2d 964 ............................................... 8, 9

Caulfield v. Sanders
 (1861) 17 Cal. 569 ........................................................................ 13

Chavez v. IndyMac Mortgage Services
 (2013) 219 Cal.App.4th 1052 ........................................................ 7, 8

Cosajay v. Mortgage Electronic Registration Systems
 (D.R.I. 2013) 980 F.Supp.2d 238 ...................................................... 12

Crist v. House & Osmonson, Inc.
 (1936) 7 Cal.2d 556 ...................................................................... 17

Culhane v. Aurora Loan Services of Nebraska
 (1st Cir. 2013) 708 F.3d 282 ................................................. 12, 14, 15

Dimock v. Emerald Properties LLC
 (2000) 81 Cal.App.4th 868 ........................................................... 9, 18

Fontenot v. Wells Fargo Bank, N.A.
 (2011) 198 Cal.App.4th 256 ................................................. 11, 15, 16

*Glaski v. Bank of America*
    (2013) 218 Cal.App.4th 1079 ........................................................ 8, 10, 11

*Gomes v. Countrywide Home Loans, Inc.*
    (2011) 192 Cal.App.4th 1149 ...................................................... 18

*Herrera v. Federal Nat. Mortgage Assn.*
    (2012) 205 Cal.App.4th 1495 ...................................................... 11, 16

*In re Elmore*
    (Bkrtcy. C.D. Cal. 2014) 94 B.R. 670 ...................................... 8

*Jenkins v. JP Morgan Chase Bank*
    (2013) 216 Cal.App.4th 497 ........................................................ 19

*Kan v. Guild Mortgage Co.*
    (2014) 230 Cal.App.4th 736 ........................................................ 19

*Knapp. v. Doherty*
    (2004) 123 Cal.App.4th 76 .......................................................... 14, 16

*Koufos v. U.S. Bank*
    (D. Mass 2013) 939 F.Supp.2d 40 ............................................ 12

*Livonia Properties v. 12840-12976 Farmington Road*
    (6th Cir. 2010) 2010 WL 4275305 ............................................ 12

*Lo v. Jensen*
    (2001) 88 Cal.App.4th 1093 ...................................................... 16

*Lona v. Citibank, N.A.*
    (2011) 202 Cal.App.4th 89 .......................................................... 7

*Lueras v. BAC Home Loans Servicing, LP*
    (2013) 221 Cal.App.4th 49 .......................................................... 15

*Melendrez v. D & I Investment, Inc.*
    (2005) 127 Cal.App.4th 1238 ...................................................... 16

*Miller v. Cote*
    (1982) Cal.App.3d 888, 894 ........................................................ 5

*Moeller v. Lien*
    (1994) 25 Cal.App.4th 822 .......................................................... 4

*Munger v. Moore*
(1970) 11 Cal.App.3d 1 ............................................................ 7

*Pfeifer v. Countrywide Home Loans*
(2012) 211 Cal.App.4th 1250 ................................................... 8

*Rajamin v. Deutsche Bank*
(2nd Cir. 2014) 757 F.3d 79 ................................................... 12

*Reinagel v. Deutsche Bank*
(5th Cir. 2013) 735 F.3d 220 ................................................. 12

*Rufini v. CitiMortgage, Inc.*
(2014) 227 Cal.App.4th 299 ................................................. 15

*Santens v. Los Angeles Finance Co.*
(1949) 91 Cal.App.2d 197 ...................................................... 9

*Seidell v. Tuxedo Land Company*
(1932) 216 Cal 165 ........................................................ 13, 14

*Siliga v. Mortgage Electronic Registration Systems, Inc.*
(2013) 219 Cal.App.4th 75 ................................................... 19

*Vournas v. Fidelity Nat. Tit. Ins.*
(1999) 73 Cal.App.4th 668 ...................................................... 9

*Wilson v. HSBC Mortgage Services, Inc.*
(1st Cir. 2014) 744 F.3d 1 ................................................... 12

**STATUTES**

Business & Profession Code

§ 17204 ........................................................................................... 15

Civil Code

§ 882.020(a) .................................................................................... 18
§ 2903 ............................................................................................... 5
§ 2905 ............................................................................................... 5
§ 2920 ............................................................................................... 4
§ 2923.3 ............................................................................................ 5
§ 2923.5, subd. (a)(2) ....................................................................... 5
§ 2923.6 ............................................................................................ 5
§ 2923.7 ............................................................................................ 5
§ 2923.55 ........................................................................................... 6
§ 2923.55(b) ...................................................................................... 6
§ 2924 ............................................................................................ 4, 9
§ 2924(a) ............................................................................................ 5
§ 2924(a)(6) ....................................................................................... 6
§ 2924.12 ........................................................................................... 5
§ 2924.17 ........................................................................................... 5
§ 2924c .............................................................................................. 5
§ 2934a ............................................................................................ 18
§ 2936 ............................................................................................... 9
§§ 2939-2941 ..................................................................................... 8

**COURT RULES**

California Rules of Court, rule 8.520(f) ............................................... 3

**OTHER AUTHORITIES**

4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:1 ...................... 8

4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:254 ................. 14

Buchwalter, Cause of Action in Tort for Wrongful
    Foreclosure of Residential Mortgage, 52 Causes of Action
    Second (2012) 119, § 2 .................................................................. 4

Senate Rules Committee Conference Report No. 1 on
    Assembly Bill No. 278 (2011-2012 Reg. Session) June 26,
    2012, pp. 23-24 ............................................................................. 6

## INTRODUCTION

This case presents the question of whether, in a wrongful foreclosure action, a homeowner may bring suit on the basis that the foreclosing party lacked the power to foreclose because it did not own the homeowner's debt. In this case, Plaintiff alleges that the foreclosing party did not own Plaintiff's debt because one or more of the assignments of her debt were void. Thus, while Plaintiff owed a debt to someone, she did not owe it to the entity that foreclosed on her home. A homeowner is entitled to bring such a claim, just as she may protect herself against the wrongful invasion of her property interests in any other context.

Permitting a homeowner to assert a wrongful foreclosure claim on this basis is consistent with public policy, existing law, and recent legislative enactments designed to protect homeowners from abuses in the mortgage industry. Homeownership is one of the central goals of our state policymakers for good reason; it brings with it economic and social stability, and a better chance at succeeding in life for our children. Once homeownership is achieved, it must not be taken away lightly. To that end, California's non-judicial foreclosure statutes are designed to carefully balance creditors' rights to an efficient remedy for default against homeowners' rights against unlawful foreclosures.

One of the basic tenets of foreclosure law is that the foreclosing party must have an ownership interest in the debt securing the home that is to be foreclosed upon. There is no reason to depart from this fundamental premise where foreclosure proceeds non-judicially. Whether the correct party is foreclosing is not a technicality. A homeowner experiences real harm when a party with no interest in the debt forecloses because the homeowner has lost her home to the wrong party and is deprived of the opportunity to explore options with the true debt owner. It is impossible to

know whether that homeowner could have avoided foreclosure if the wrong party had not foreclosed; in other words, it matters who owns the debt.

Recognizing wrongful foreclosure actions to challenge foreclosures by the wrong party, such as those resulting from allegedly void debt assignments, is sound policy because it empowers homeowners to protect themselves against "fast and loose" foreclosure practices, incentivizes the mortgage industry to exercise due diligence in the foreclosure process, and helps avoid the confusion and unfairness that would result from more than one party having the power to foreclose. A contrary rule would lead to a legally untenable situation, i.e. that *anyone* can foreclose on a homeowner because *someone* has the right to foreclose.

## STATEMENT OF INTEREST

The Attorney General, as the State's chief law enforcement officer, has responsibility to enforce state law, including laws related to homeowner protection. During California's recent housing bubble and subsequent burst, many mortgage industry abuses came to light, including irresponsible lending practices, careless or negligent review of homeowner records prior to initiating foreclosures (i.e., "robosigning"), and other procedural shortcuts. In addition, the frenetic pace at which debt was assigned from one lender to another caused confusion regarding which entity a homeowner should be working with to make payments, modify her loan, or discuss other options to avoid foreclosure. "Dual-tracking," or the practice of one arm of a bank negotiating a loan modification with a borrower while another arm simultaneously proceeded to foreclosure, was unfortunately commonplace.

The California Department of Justice, in cooperation with other state and federal agencies, made important inroads against these abuses through its participation in the National Mortgage Settlement (NMS) with five of the nation's largest mortgage service providers. The NMS cracked down

on practices like dual-tracking and required banks to provide a single point of contact for borrowers. In addition, the Attorney General supported California's own 2012 legislation, the Homeowner Bill of Rights (HBOR), which included similar provisions and afforded further protections for Californians.

Private wrongful foreclosure actions are a critical supplement to state enforcement of homeowner protection laws, helping to check misconduct in the mortgage industry. Attorney General Kamala D. Harris submits this *amicus curiae* brief pursuant to California Rules of Court, rule 8.520(f), presenting additional arguments, not raised by the parties, explaining why homeowners may challenge whether the entity purporting to foreclose is the true holder of the debt.

### ARGUMENT

### I.   CALIFORNIA HAS A STRONG PUBLIC POLICY IN FAVOR OF PROTECTING HOMEOWNERS FROM WRONGFUL FORECLOSURE

Protecting homeownership is a significant state interest. The public benefits of homeownership are far-reaching and well-known; they include promoting socio-economic mobility, fueling California's economy, ensuring stable home environments for residents, curbing urban blight, and promoting children's health and safety, among others. (See generally R. Cohen, Center for Housing Policy, Insights from Housing Policy Research: The Impacts of Affordable Housing on Health: A Research Summary (May 2011).) California law provides critical protections to homeowners to help achieve these important policy goals.

### A.   California's Foreclosure Statutes Strike a Careful Balance Between Efficiency in Foreclosure and Homeowner Protection

California's non-judicial foreclosure statutes (Civ. Code, § 2920 et seq.)[1] reflect a carefully crafted balance between creating an efficient foreclosure process and shielding homeowners from overzealous or improper foreclosures. California courts have recognized that the purpose behind California's non-judicial foreclosure statutes is three-fold: (1) to provide the creditor with a quick, inexpensive, and efficient remedy against the debtor; (2) to protect the debtor against the wrongful loss of his or her property; and (3) to ensure that a properly conducted sale is final and conclusive as to a bona fide purchaser. (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)

With respect to the first goal—an efficient remedy for creditors—non-judicial foreclosures provide banks with a clear and expeditious process for obtaining the security on their loans in the case of borrower default. Under these statutes, the foreclosing party (i.e., the lender or its agent) initiates private proceedings directly against the borrower without the need for judicial oversight. (§ 2924 et seq.) Non-judicial foreclosure tends to be a more efficient and less expensive process than judicial foreclosure because there is no court involvement, neither an appraisal nor judicial valuation is required, and the debtor has no post-sale right of redemption. (Buchwalter, *Cause of Action in Tort for Wrongful Foreclosure of Residential Mortgage* (2012) 52 Causes of Action 2d 119, § 2.)

At the same time, the non-judicial foreclosure laws provide an array of safeguards to help ensure that a borrower does not wrongly lose his or her home. For example, the statutes impose detailed noticing and service

---

[1] All further references are to the Civil Code unless otherwise noted.

requirements, which if not strictly followed, result in a voidable foreclosure sale. (§ 2923.3 et seq.; *Miller v. Cote* (1982) Cal.App.3d 888, 894 ["a trustee's sale based on a statutorily deficient notice of default is invalid"].) In addition, homeowners are afforded multiple opportunities in which to cure a default. The owner of the debt, or his agent, must give the homeowner: (1) a three-month waiting period after the notice of default (§ 2924(a)); (2) another opportunity to bring loans current during a five-day reinstatement period prior to sale (§ 2924c); and (3) the right to invoke the "equity of redemption" or total payoff prior to sale, which gives the homeowner one final chance to avoid foreclosure (§§ 2903, 2905). In addition, prior to foreclosure, the owner of the debt or its agent must have contacted the homeowner to discuss loan modification options. (§ 2923.5, subd. (a)(2)). In other words, once homeownership is established, the non-judicial foreclosure statutes ensure that a homeowner will have every reasonable opportunity to preserve it.

**B.  The Recent Enactment of the HBOR Reflects a Legislative Intent to Protect Homeowners Against Abusive Practices, Including Foreclosures by the Wrong Party**

As noted above, the HBOR was California's attempt to address a range of misconduct in the mortgage industry. HBOR imposed numerous protections for the homeowner, including: (1) a restriction on "dual-track" foreclosure, which prohibits mortgage servicers from advancing the foreclosure process when a loan modification in underway (§ 2923.6); (2) a requirement that lending institutions provide a single point of contact for the homeowner (§ 2923.7); (3) a requirement that loan servicers have reviewed "competent and reliable evidence" of default prior to initiating foreclosure, i.e., an anti-robosigning protection (§ 2924.17); and (4) a private right of action for plaintiffs seeking to enforce certain protections within the act (§ 2924.12).

The HBOR also enacted two reforms aimed at ensuring that only the proper party may foreclose on a mortgage or deed of trust. Newly added Civil Code section 2923.55 requires large lending institutions, prior to recording a notice of default, to provide a written notice to homeowners allowing them to request a copy of the original promissory note and any applicable assignments. (§ 2923.55(b).) In addition, newly added Civil Code section 2924(a)(6) provides that a foreclosing party must be the "holder of the beneficial interest" in the debt:

> No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

Read together, these sections confirm the Legislature's intent to ensure that the party foreclosing on a homeowner is the "holder" of the debt and can demonstrate proof of ownership if called upon to do so.[2]

While the HBOR reforms may have taken effect only recently, the provisions regarding debt ownership codify existing law. In California, it has always been the rule that only a debt owner or its agent has authority to foreclose, as discussed more fully below.

---

[2] The problem of entities foreclosing without authority to do so was before the Legislature when it enacted these sections. (See, e.g., Sen. Rules Com. Conference Rep. No. 1 on Assembly Bill No. 278 (2011-2012 Reg. Session) June 26, 2012, pp. 23-24 [bank personnel testified about foreclosures initiated by parties without legal authority].)

## II.  A HOMEOWNER MAY BRING A CAUSE OF ACTION FOR WRONGFUL FORECLOSURE ON THE BASIS THAT THE ASSIGNMENT OF DEBT IS INVALID

Consistent with the public policy in favor of preserving homeownership, a plaintiff can properly bring a wrongful foreclosure action based on the allegation that the foreclosing party does not own the debt, i.e., the mortgage or the beneficial interest in the deed of trust. Contrary to Defendants' view, a plaintiff, even one in default, suffers real harm when a party without the right to do so forecloses on her home. Accordingly, a homeowner may bring a wrongful foreclosure action on the basis that the wrong party has foreclosed, whether due to an invalid assignment of the debt or for any other reason.

### A.  The Foreclosing Party's Lack of Authority Is a Proper Basis on which the Homeowner May Challenge a Foreclosure

A wrongful foreclosure action is a common law tort claim; it is an equitable action to set aside a foreclosure sale, or an action for damages resulting from the sale, on the basis that the foreclosure was improper. (See, e.g., *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7-8.) The elements of a wrongful foreclosure claim are:  (1) the defendant caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the amount of the secured indebtedness or is excused from tendering.  (*Chavez v. IndyMac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112.)[3]

---

[3] Tender is typically excused in cases where: (1) the underlying debt is void, (2) the foreclosure or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it

(continued...)

A foreclosure may be "wrongful" for a number of reasons. For instance, the foreclosing entity may have failed to strictly comply with the notice or procedural requirements imposed by California's non-judicial foreclosure statutes or by the terms of the deed of trust. (See, e.g., *Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, 211; *Pfeifer v. Countrywide Home Loans* (2012) 211 Cal.App.4th 1250, 1267). It might also be wrongful because the plaintiff is not actually in default. (See, e.g., *Bank of Am. v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 712.)

Another example—and the one relevant to this case—is that the foreclosure may be wrongful because it was initiated by a party without the lawful right to do so. (See, e.g., *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1094; *Barrionuevo v. Chase Bank* (N.D. Cal. 2012) 885 F.Supp.2d 964, 972.) To legally foreclose on a person's home, the foreclosing party must be the true owner of the debt securing the property in question. A mortgage or deed of trust creates a lien on the secured property; this lien is contractual in nature but is also a property right. (4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:1, p. 25; see also *In re Elmore* (Bkrtcy. C.D. Cal. 2014) 94 B.R. 670, 676 [creditor has a contractual right to foreclose, also known as a lien, which is a property right].) Thus, the execution of a mortgage or deed of trust reflects a transfer of some of the "bundle of rights" that a homeowner has in his or her property, and a homeowner receives a reconveyance of those rights when he or she pays off the loan. (§§ 2939-2941.) Prior to reconveyance,

---

(...continued)

inequitable to enforce the debt; or (5) the foreclosure has not yet occurred. (*Chavez, supra*, 219 Cal.App.4th at p. 1062.)

only those having ownership in the mortgage or deed of trust may exercise the rights flowing under it, including the right to foreclose.[4]

This basic principle that only a true debt owner or its agent has lawful authority to foreclose—has been long recognized in California law. (See, e.g., *Santens v. Los Angeles Finance Co.* (1949) 91 Cal.App.2d 197, 202 ["the trust deed is a mere incident of the debt and could only be foreclosed by the owner of the note;" *Dimock v. Emerald Properties LLC* (2000) 81 Cal.App.4th 868, 875 [interpreting non-judicial foreclosure statutes to codify existing law prior to 1935, which permits only the recorded trustee to foreclose at a given time].) This flows from the concept that the debt (i.e., a promissory note) and the security interest (i.e., a mortgage or deed of trust) are interconnected instruments that function and move together. (§ 2936 ["[t]he assignment of a debt secured by a mortgage carries with it the security"].)

Because the mortgage or deed of trust secures the debt, only the debt owner (or the debt owner's agents) can enforce it. (See § 2924 [foreclosure process may be initiated by "the trustee, mortgagee, or beneficiary, or any of their authorized agents"].) Thus, a non-debt-owner acts "wrongfully" when it forecloses on a deed of trust to which it is not the beneficiary, and a plaintiff can bring a wrongful foreclosure action challenging that conduct. (See, e.g., *Barrionuevo, supra,* 885 F.Supp.2d at p. 972 [plaintiff may

---

[4] The rule that only the debt owner has the power to foreclose is not diminished by the California statutory scheme permitting a deed of trust model as opposed to a traditional mortgage. Under the deed of trust model, the debt owner retains the power to foreclose as the deed of trust's beneficiary. The trustee merely acts at the debt owner's direction. The trustee is not a "true trustee" and owes no fiduciary obligations; he or she merely acts as an agent for the debt owner-beneficiary. (*Vournas v. Fidelity Nat. Tit. Ins.* (1999) 73 Cal.App.4th 668, 677.)

"properly assert that only the 'true owner' or 'beneficial holder' of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law"];) *Glaski, supra*, 218 Cal.App.4th at p. 1094 [agreeing with *Barrionuevo*'s assessment of California law but requiring that facts regarding a lack of debt ownership be pled with some specificity].)

### B. Because a Void Assignment Deprives a Foreclosing Party of the Authority To Foreclose, a Homeowner May Bring a Wrongful Foreclosure Action on That Basis

A defect in the chain of title that renders a debt assignment void is one way in which a foreclosing party may lack the lawful authority to foreclose. One California appellate decision has directly addressed whether a wrongful foreclosure plaintiff may assert the foreclosing party's lack of power to foreclose in the specific context of allegedly void assignments, and found in favor of the plaintiff. In *Glaski v. Bank of America, supra*, 218 Cal.App.4th 1079, the court held that a wrongful foreclosure plaintiff had standing to challenge an assignment of his debt that was allegedly "void" as opposed to merely voidable. (*Id.* at p. 1097.) *Glaski* recognized the allegation that an assignment was void as a subset of the claim that the party attempting to foreclose must have the power to do so; that power flows from being the true owner of the debt.

Thus, the *Glaski* court correctly characterized plaintiff's claim as based on "the theory that a foreclosure was wrongful *because it was initiated by a nonholder of the deed of trust*" (italics added), which the court acknowledged has also been phrased as (1) the foreclosing party lacking standing to foreclose, or (2) a break in the chain of title. (*Glaski, supra*, 218 Cal.App.4th at p. 1093.) In such a case, the court found that the plaintiff's status as non-party to the contract was not determinative; rather, the plaintiff's ability to challenge the foreclosure turned on the nature of the assignment:

> 'Where an assignment is merely voidable at the election of the
> assignor, third parties, and particularly the obligor,
> cannot...successfully challenge the validity or effectiveness of
> the transfer [citing 7 Cal.Jur.3d (2012) Assignments, § 43,
> p. 70].' This statement implies that a borrower can challenge an
> assignment of his or her note and deed of trust *if the defect*
> *asserted would void the assignment.*

(*Id.* at pp. 1094–1095, original italics.) In other words, *Glaski* concluded
that a homeowner does have standing to challenge an assignment that is
allegedly void, as opposed to merely voidable, because it would invalidate
the transfer regardless of whether or not the parties to the assignment
elected to challenge it.[5]

In a factually analogous case, the First Circuit further explained the
reasoning for finding that a wrongful foreclosure plaintiff has standing to
challenge an allegedly void assignment:

> The underlying reasoning behind this distinction is
> straightforward. A homeowner in Massachusetts—even when
> not a party to or third party beneficiary of a mortgage
> assignment—has standing to challenge the assignment as void
> because success on the merits would prove the purported
> assignee is not, in fact, the mortgagee and therefore lacks any
> right to foreclose on the mortgage. [Citations] ...
>
> That same homeowner, though, lacks standing to claim the
> assignment is voidable because the assignee still would have
> received legal title vis-à-vis the homeowner. Thus, even
> successfully proving that the assignment was voidable would not

---

[5] Some cases have held that a wrongful foreclosure plaintiff must
allege not only the reason why the foreclosing party lacks authority, but
also that there is no other possible theory under which the party had the
right to foreclose. These cases appear to impose a heightened pleading
requirement on plaintiffs, contrary to the general rule requiring only notice
pleading. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th
256, 272; *Herrera v. Federal Nat. Mortgage Assn.* (2012) 205 Cal.App.4th
1495, 1505.)

affect the rights as between those two parties or provide the
homeowner with a defense to the foreclosure action.

(*Wilson v. HSBC Mortgage Services, Inc.* (1st Cir. 2014) 744 F.3d 1, 9.)

As the *Wilson* court discussed, if the assignment is merely voidable, the

aggrieved parties to the assignment can undo the transaction at their option.

An additional step—beyond the homeowner's control—is needed to

invalidate the assignment and subsequent foreclosure. In contrast, a finding

that an assignment is void results in the foreclosing entity lacking the power

to foreclose. A homeowner is permitted to challenge the foreclosure on

that basis, just as she can challenge any foreclosure on the ground that the

foreclosing entity does not own the debt. (See also *Reinagel v. Deutsche*

*Bank* (5th Cir. 2013) 735 F.3d 220, 225 [following the majority rule in

Texas that the debtor may defend against an assignee's collection "on any

ground which renders the assignment void"].)[6].

Because the voidness of an assignment negates ownership of the

debt, a wrongful foreclosure plaintiff is not required to demonstrate privity

of contract with the assignor and assignee. Defendants in this case take the

position that a homeowner lacks standing to bring a wrongful foreclosure

suit on the basis of an allegedly void debt assignment because the

homeowner is not a party or privy to the contract assigning her debt from

---

[6] Federal cases addressing this issue have gone in both directions. In
addition to *Wilson* and *Reinagel*, federal cases finding that a homeowner
has standing in this context include: *Culhane v. Aurora Loan Services of*
*Nebraska* (1st Cir. 2013) 708 F.3d 282; *Cosajay v. Mortgage Electronic*
*Registration Systems* (D.R.I. 2013) 980 F.Supp.2d 238; *Koufos v. U.S. Bank*
(D. Mass 2013) 939 F.Supp.2d 40; *Ball v. Bank of New York* (W.D. Mo.
2013) 2012 WL 6645695; and *Bailey v. Wells Fargo Bank* (D. Mass Bankr.
2012) 468 B.R. 464. Federal cases finding that a homeowner lacks
standing include: *Rajamin v. Deutsche Bank* (2nd Cir. 2014) 757 F.3d 79,
86; and *Livonia Properties v. 12840-12976 Farmington Road* (6th Cir.
2010) 2010 WL 4275305.

one lending institution to another, and so cannot enforce that contract. (See Respondents' Answer Brief on the Merits (RB), p. 23, citing *Martinez v. Socoma Cos*. (1974) 11 Cal.3d 394, 400 [interpreting California law to exclude "*enforcement of a contract* by persons who are only incidentally or remotely benefitted by it," italics added].) A wrongful foreclosure plaintiff, however, is not attempting to enforce the obligations of the debt assignment contract. A tort claim for wrongful foreclosure is not a breach-of-contract action, and therefore privity has no place in the analysis. Rather, the voidness of a contract (i.e., the assignment) is the predicate fact on which the plaintiff asserts that the foreclosing party lacked the power to foreclose.

The two California Supreme Court cases on which Defendants rely in support of their theory that a homeowner may not challenge an invalid debt assignment are inapposite. Defendants cite to *Caulfield v. Sanders* (1861) 17 Cal. 569, for the proposition that a "debtor could not challenge an assignee's demand for payment by alleging that the assignment was unauthorized and lacked consideration, and was thus void." (RB, p. 24.) Not only is the *Caulfield* decision not a wrongful foreclosure case (it concerned a debt for printing and advertising services), but it does not involve a claim that the collecting party did not own the debt when it attempted to collect on it. Rather, the debtor asserted that the debt was assigned after collection commenced, and then only for nominal consideration without the consent of all partners of the firm selling the debt. (*Caulfield, supra*, 17 Cal. 569 at p. 572.) The Court concluded that these facts alone would not excuse the debtor from liability, but the Court did not suggest that the result would have been the same in the case of a void assignment (in fact, the word "void" does not appear in the decision) or that a non-creditor could demand payment at any given time. (See *ibid*.) The other cited case, *Seidell v. Tuxedo Land Company* (1932) 216 Cal 165, simply holds that an assignment is presumed authorized when made by the

prior owner or prior owner's agent, and when the debtor offers no evidence to the contrary. (*Id.* at p. 165.)

In sum, a wrongful foreclosure plaintiff may assert that an assignment of her mortgage or deed of trust is void, even though she is not a party to the assignment contract, because, if true, the result would be that the party attempting to foreclose on her lacks authority to do so.

### C. A Homeowner Is Harmed When an Entity Without the Authority To Do So Forecloses on Her Home

A homeowner may challenge a void assignment because he or she is harmed anytime an entity without the lawful authority to foreclose does so. In order to state a claim for wrongful foreclosure, California courts have traditionally required that a plaintiff demonstrate "prejudice," or a causal link between the wrongful misconduct and resulting harm. (*Knapp. v. Doherty* (2004) 123 Cal.App.4th 76, 86; 4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:254, p. 989-990.) When a non-debt holder forecloses, a homeowner is harmed because she has lost her home to an entity with no legal right to take it. If not for the void assignment, the incorrect party would not have pursued a wrongful foreclosure. Therefore the void assignment is the "but for" cause of the homeowner's injury and all she is required to allege.

The First Circuit's decision in *Culhane v. Aurora Loan Services of Nebraska* (1st Cir. 2013) 708 F.3d 282 is on point. There, the court held that the plaintiff had properly alleged a causal link between the assignment in question and her injuries, even though she was behind in her payments:

> [T]here is a direct causal connection between the challenged action and the identified harm. The action challenged here relates to [entity's] right to foreclose by virtue of the assignment from MERS. The identified harm—the foreclosure—can be traced directly to [entity's] exercise of the authority purportedly delegated by the assignment.

(*Id.* at pp. 289-290; see also *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 82-83 [finding causal connection between bank's deceptive practices and homeowner's foreclosure even though homeowner could not otherwise demonstrate ability to pay debt].) The critical issue is not the plaintiff's ability to pay; rather, the issue is whether the defendant's conduct resulted in the plaintiff's harm, i.e., a foreclosure that was wrongful because it was initiated by the wrong party.

Moreover, the identity of the party having authority to foreclose on a homeowner matters. For example, if an invalid assignment had not occurred, the original lender may have exercised more leniency with missed payments or worked out a loan modification plan with the homeowner. And as described above, foreclosures have moved at an unprecedented pace in recent years. It is possible that another lender would have engaged in a slower process that would have given the homeowner more time to improve his financial situation or seek other alternatives to avoid foreclosure. (See *Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 311 [finding actual injury under Bus. & Prof. Code, § 17204 because plaintiff lost "the opportunity to pursue other means of avoiding foreclosure" due to defendants' allegedly deceptive practices].) Although a plaintiff need not allege such facts (which would, in many cases, be difficult if not impossible for the plaintiff to do without knowing the inner-workings of various banking institutions), these examples demonstrate that being foreclosed on by the wrong party can result in tangible harm.

Cases reaching the contrary result overlook this harm by incorrectly focusing on the plaintiff's ability to have avoided *any* foreclosure. For example, in *Fontenot, supra,* 198 Cal.App.4th at p. 272, the court found that the plaintiff had failed to demonstrate prejudice resulting from an allegedly improper transfer of her debt because the plaintiff: (1) conceded she was in default; (2) did not allege that the transfer interfered with her

ability to pay her debt; and (3) did not allege that the original lender would have refrained from foreclosure. (*Fontenot, supra,* 198 Cal.App.4th at p. 272.) Similarly, in *Herrera,* the court found that the plaintiffs could not demonstrate prejudice where they had agreed to assignments of their debt, had defaulted on their loan, and did not tender payment or cure the default. (*Herrera, supra,* 205 Cal.App.4th at p. 1508.) In essence, *Fontenot* and *Herrera* interpret "prejudice" narrowly to mean that the plaintiff must demonstrate that she could have avoided *any* foreclosure. These cases ignore the fact that whether a plaintiff had the financial means to avoid the instant wrongful foreclosure has nothing to do whether she could have avoided foreclosure in another context, and because the wrongful foreclosure occurred, the plaintiff can never know.

The cases that *Fontenot* and *Herrera* cite to in support of this narrow interpretation of prejudice are cited out of context. For instance, *Fontenot* cites to *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, in which the court simply found that plaintiffs could not demonstrate wrongful foreclosure from a low bid price alone, but also had to "prove a prejudicial irregularity." (*Id.* at p. 1258.) Another cited case, *Knapp. v. Doherty, supra,* 123 Cal.App.4th at p. 86, held that plaintiffs were not "prejudiced" by a notice of default that was sent earlier than statutorily required, and that therefore there was no "material" triable issue of fact. Finally, *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097-1098, merely stands for the proposition that a foreclosure sale could be set aside in the case of fraudulent collusion among bidders; the word "prejudice" does not appear in the decision.[7] None of these cases suggest that a homeowner

---

[7] The cases cited in Defendants' brief (RB, p. 33) are similarly inapposite—in fact, even further off point—and shed no light on the matter of prejudice. In *Bank of America Assn. v. Reidy* (1940) 15 Cal.2d 243, 248,

<div align="right">(continued...)</div>

d

ld be required to show that she could have avoided foreclosure under circumstances.

### D. Permitting Wrongful Foreclosure Actions to Challenge Invalid Assignments is Sound Policy

Allowing homeowners to sue for wrongful foreclosure based on ;ations that the foreclosing entity lacks an ownership interest in the tgage or deed of trust is sound public policy. As noted above, public ircement tools, while a critical part of protecting homeowners, are not icient to address the far-reaching abuses that occurred in the wake of housing bubble burst. In addition, because there is no court oversight in n-judicial foreclosure, it is important for there to be a way to challenge gularities in that process. Empowering homeowners—who have the :t at stake and the most to lose—with the ability to challenge improper 1 assignments and other defects is the most direct way to accomplish : goal. Moreover, permitting such a cause of action would incentivize ling institutions to employ due diligence with respect to ensuring proper ignments and confirming who currently holds a loan.

A contrary rule, i.e., one that that would prohibit homeowners from nging suit against entities that foreclose without the lawful authority to so, would lead to incongruous results. Under Defendants' conception of : proper rule, a defaulting homeowner would have no ability to challenge

---

.continued)

: Court declined to set aside a sale at the behest of a junior lien holder sed on alleged fraud in the bidding process when the seller had acted ;ally; there is no discussion of "standing" or "prejudice" anywhere in the cision. *Crist v. House & Osmonson, Inc.* (1936) 7 Cal.2d 556, 559-560, volved a quiet title action, which held that a seller could not set aside a le to bona fide purchaser based on a slightly inaccurate property scription that prejudiced no one but the buyer. These cases have no levance to the elements of a wrongful foreclosure action brought by a meowner.

ability to pay her debt; and (3) did not allege that the original lender would have refrained from foreclosure. (*Fontenot, supra*, 198 Cal.App.4th at p. 272.) Similarly, in *Herrera*, the court found that the plaintiffs could not demonstrate prejudice where they had agreed to assignments of their debt, had defaulted on their loan, and did not tender payment or cure the default. (*Herrera, supra*, 205 Cal.App.4th at p. 1508.) In essence, *Fontenot* and *Herrera* interpret "prejudice" narrowly to mean that the plaintiff must demonstrate that she could have avoided *any* foreclosure. These cases ignore the fact that whether a plaintiff had the financial means to avoid the instant wrongful foreclosure has nothing to do whether she could have avoided foreclosure in another context; and because the wrongful foreclosure occurred, the plaintiff can never know.

The cases that *Fontenot* and *Herrera* cite to in support of this narrow interpretation of prejudice are cited out of context. For instance, *Fontenot* cites to *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, in which the court simply found that plaintiffs could not demonstrate wrongful foreclosure from a low bid price alone, but also had to "prove a prejudicial irregularity." (*Id.* at p. 1258.) Another cited case, *Knapp. v. Doherty, supra*, 123 Cal.App.4th at p. 86, held that plaintiffs were not "prejudiced" by a notice of default that was sent earlier than statutorily required, and that therefore there was no "material" triable issue of fact. Finally, *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097-1098, merely stands for the proposition that a foreclosure sale could be set aside in the case of fraudulent collusion among bidders; the word "prejudice" does not appear in the decision.[7] None of these cases suggest that a homeowner

---

[7] The cases cited in Defendants' brief (RB, p. 33) are similarly inapposite—in fact, even further off point—and shed no light on the matter of prejudice. In *Bank of America Assn. v. Reidy* (1940) 15 Cal.2d 243, 248,

(continued...)

ability to pay her debt; and (3) did not allege that the original lender would have refrained from foreclosure. (*Fontenot, supra,* 198 Cal.App.4th at p. 272.) Similarly, in *Herrera,* the court found that the plaintiffs could not demonstrate prejudice where they had agreed to assignments of their debt, had defaulted on their loan, and did not tender payment or cure the default. (*Herrera, supra,* 205 Cal.App.4th at p. 1508.) In essence, *Fontenot* and *Herrera* interpret "prejudice" narrowly to mean that the plaintiff must demonstrate that she could have avoided *any* foreclosure. These cases ignore the fact that whether a plaintiff had the financial means to avoid the instant wrongful foreclosure has nothing to do whether she could have avoided foreclosure in another context; and because the wrongful foreclosure occurred, the plaintiff can never know.

The cases that *Fontenot* and *Herrera* cite to in support of this narrow interpretation of prejudice are cited out of context. For instance, *Fontenot* cites to *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, in which the court simply found that plaintiffs could not demonstrate wrongful foreclosure from a low bid price alone, but also had to "prove a prejudicial irregularity." (*Id.* at p. 1258.) Another cited case, *Knapp v. Doherty, supra,* 123 Cal.App.4th at p. 86, held that plaintiffs were not "prejudiced" by a notice of default that was sent earlier than statutorily required, and that therefore there was no "material" triable issue of fact. Finally, *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097-1098, merely stands for the proposition that a foreclosure sale could be set aside in the case of fraudulent collusion among bidders; the word "prejudice" does not appear in the decision.[7] None of these cases suggest that a homeowner

---

[7] The cases cited in Defendants' brief (RB, p. 33) are similarly inapposite—in fact, even further off point—and shed no light on the matter of prejudice. In *Bank of America Assn. v. Reidy* (1940) 15 Cal.2d 243, 248,

(continued...)

ability to pay her debt; and (3) did not allege that the original lender would have refrained from foreclosure. (*Fontenot, supra,* 198 Cal.App.4th at p. 272.) Similarly, in *Herrera,* the court found that the plaintiffs could not demonstrate prejudice where they had agreed to assignments of their debt, had defaulted on their loan, and did not tender payment or cure the default. (*Herrera, supra,* 205 Cal.App.4th at p. 1508.) In essence, *Fontenot* and *Herrera* interpret "prejudice" narrowly to mean that the plaintiff must demonstrate that she could have avoided *any* foreclosure. These cases ignore the fact that whether a plaintiff had the financial means to avoid the instant wrongful foreclosure has nothing to do whether she could have avoided foreclosure in another context; and because the wrongful foreclosure occurred, the plaintiff can never know.

The cases that *Fontenot* and *Herrera* cite to in support of this narrow interpretation of prejudice are cited out of context. For instance, *Fontenot* cites to *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, in which the court simply found that plaintiffs could not demonstrate wrongful foreclosure from a low bid price alone, but also had to "prove a prejudicial irregularity." (*Id.* at p. 1258.) Another cited case, *Knapp. v. Doherty, supra,* 123 Cal.App.4th at p. 86, held that plaintiffs were not "prejudiced" by a notice of default that was sent earlier than statutorily required, and that therefore there was no "material" triable issue of fact. Finally, *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097-1098, merely stands for the proposition that a foreclosure sale could be set aside in the case of fraudulent collusion among bidders; the word "prejudice" does not appear in the decision.[7] None of these cases suggest that a homeowner

---

[7] The cases cited in Defendants' brief (RB, p. 33) are similarly inapposite—in fact, even further off point—and shed no light on the matter of prejudice. In *Bank of America Assn. v. Reidy* (1940) 15 Cal.2d 243, 248,
(continued...)

should be required to show that she could have avoided foreclosure under any circumstances.

### D.   Permitting Wrongful Foreclosure Actions to Challenge Invalid Assignments is Sound Policy

Allowing homeowners to sue for wrongful foreclosure based on allegations that the foreclosing entity lacks an ownership interest in the mortgage or deed of trust is sound public policy.  As noted above, public enforcement tools, while a critical part of protecting homeowners, are not sufficient to address the far-reaching abuses that occurred in the wake of the housing bubble burst.  In addition, because there is no court oversight in a non-judicial foreclosure, it is important for there to be a way to challenge irregularities in that process.  Empowering homeowners—who have the most at stake and the most to lose—with the ability  to challenge improper loan assignments and other defects is the most direct way to accomplish that goal.  Moreover, permitting such a cause of action would incentivize lending institutions to employ due diligence with respect to ensuring proper assignments and confirming who currently holds a loan.

A contrary rule, i.e., one that that would prohibit homeowners from bringing suit against entities that foreclose without the lawful authority to do so, would lead to incongruous results.  Under Defendants' conception of the proper rule, a defaulting homeowner would have no ability to challenge

---

(...continued)

the Court declined to set aside a sale at the behest of a junior lien holder based on alleged fraud in the bidding process when the seller had acted legally; there is no discussion of "standing" or "prejudice" anywhere in the decision. *Crist v. House & Osmonson, Inc.* (1936) 7 Cal.2d 556, 559-560, involved a quiet title action, which held that a seller could not set aside a sale to bona fide purchaser based on a slightly inaccurate property description that prejudiced no one but the buyer.  These cases have no relevance to the elements of a wrongful foreclosure action brought by a homeowner.

a foreclosure by one bank simply because *another bank* has the right to take her home. Thus, under this view, if a third party claimed a right of occupancy or access premised on a lease or easement that a homeowner granted to someone else, the homeowner could not bring a trespass or eviction action against the third party because the homeowner had granted lease or easement rights to *someone*. This would be an absurd result.

At the same time, if more than one party claimed the power to foreclose at any given time, the practical effect would be to put the homeowner in jeopardy of being foreclosed upon by multiple parties.[8] As one Court of Appeal put it in an analogous context, "there simply cannot be at any given time more than one person with the power to conduct a sale under a deed of trust." (*Dimock v. Emerald Properties LLC, supra,* 81 Cal.App.4th at p. 875 [interpreting § 2934a].) A contrary result "would create inestimable levels of confusion, chaos and litigation." (*Ibid.*) For this important reason, and the others described above, only the true debt owner or its agents has the power to foreclose.

Any potential concerns about permitting homeowners to preemptively challenge a would-be foreclosing party's authority prior to the initiation of foreclosure proceedings are not present in the instant case and others like it, which take place after a foreclosure has occurred. (See, e.g., *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154-57 [holding that borrower could not bring a pre-foreclosure action to

---

[8] The risk of foreclosure by a party that does not presently own a debt is compounded by the long term of many home loans, and by the lengthy statute of limitations for foreclosure on a deed of trust, which may extend for up to 60 years. (See § 882.020(a).) This is not to suggest that the right to foreclose may not rightfully pass from one entity to another, but that the sale and re-sale of loans over a lengthy period of time increase the risk of error and confusion, and underscore the importance of providing homeowners with a right to challenge unlawful foreclosures.

determine whether the owner of a note had authorized its nominee to initiate foreclosure proceedings because, *inter alia*, homeowner did not have right to demand proof of authority to undertake a foreclosure]; *Jenkins v. JP Morgan Chase Bank* (2013) 216 Cal.App.4th 497, 511 [homeowner did not have standing to challenge a foreclosing party's lack of authority in a declaratory relief action, expressing concern with creating a "preemptive" cause of action that would allow homeowners to demand proof of authority prior to the initiation of foreclosure];[9] see also *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736 [acknowledging the distinction between pre-foreclosure and post-foreclosure cases]; but see *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82 [defining action as "preemptive" when notice of sale was recorded but the sale had not yet taken place, and when plaintiff's claims were non-specific].)

Because the wrongful foreclosure claims at issue in this case do not involve preemptive challenges, there is no similar policy concern about thwarting creditors' ability to efficiently foreclose on their security, and therefore the general rule holds: a homeowner can bring a wrongful foreclosure action on the basis that the foreclosing party lacks the power to foreclose because it does not own the debt.

---

[9] The *Jenkins* court found, contrary to *Glaksi*, that the plaintiff lacked standing to allege non-compliance with a PSA because the plaintiff was neither a party to, or third-party beneficiary of, the PSA. But since the Jenkins court had already held the plaintiff's claim was prohibited as a preemptive action, the finding regarding standing was dicta. (*Jenkins, supra,* 216 Cal.App.4th at pp. 513-14.)

## CONCLUSION

The Court should hold that homeowners may bring a wrongful foreclosure action on the basis that the party foreclosing on them lacks the power to foreclose because they do not own the debt, either due to an allegedly void assignment or for any other legally cognizable reason.

Dated: April 17, 2015      Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
MICHELE VAN GELDEREN
Supervising Deputy Attorney General

SANNA R. SINGER
Deputy Attorney General
*Attorneys for Amicus Curiae*
*the Attorney General of California*

SD2014513048
71067129.doc

## CERTIFICATE OF COMPLIANCE

I certify that the attached **AMICUS BRIEF OF THE ATTORNEY GENERAL IN SUPPORT OF PLAINTIFF AND APPELLANT TSVETANA YVANOVA** uses a 13 point Times New Roman font and contains 5,982 words.

Dated:  April 17, 2015

KAMALA D. HARRIS
Attorney General of California

SANNA R. SINGER
Deputy Attorney General
*Attorneys for Amicus Curiae*
*the Attorney General of California*

# DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  **Tsvetana Yvanova v. New Century Mortgage Corporation et al**
Case No.:  **S218973**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On April 17, 2015, I served the attached **AMICUS BRIEF OF THE ATTORNEY GENERAL IN SUPPORT OF PLAINTIFF AND APPELLANT TSVETANA YVANOVA** by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as follows:

Richard L. Antognini
LAW OFFICES OF RICHARD L
ANTOGNINI
819 I Street
Lincoln, CA 95648
*Attorneys for Plaintiff and Appellant*

K. Lee Marshall
Nafiz Cekirge
Andrea N. Winternitz
Sarah Samuelson
BRYAN CAVE LLP
560 Mission Street, Ste. 2500
San Francisco, CA 94105
*Attorneys for Defendants/Respondents*

Los Angeles County Superior Court
Attn: Hon. Russell S. Kussman
6230 Sylmar Avenue
Van Nuys, CA 91401

Eric D. Houser
Robert W. Norman, Jr.
HOUSER & ALLISON, APC
3780 Kilroy Airport Way, Suite 130
Long Beach, CA 90806
*Attorneys for Defendants/Respondents*

California Court of Appeal
Second Appellate District- Division One
Ronald Reagan State Building
300 South Spring Street
2nd Floor, North Tower, Rm. 2217
Los Angeles, CA 90013

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 17, 2015, at San Diego, California.

Charlette Sheppard
Declarant

Signature

SD2014513048 / 71067138.doc

# EXHIBIT "N"

05/13/2010  01:29   4155321568            LUNDYREALESTATE                    PAGE  02/03



# SELENE®

## FINANCE

9990 RICHMOND AVENUE
SUITE 400 SOUTH
HOUSTON, TX 77042

July 07, 2015


John F Lundy

29 Bridgegate Dr
San Rafael, CA 94903-1093


RE:   Loan No. 0000812958
      Property Address:   29 Bridgegate Dr
                          San Rafael CA 94903


Dear Customer(s):

We are in receipt of correspondence requesting information regarding
your loan. Federal law requires Selene Finance LP to respond to your
correspondence within 30 business days of receipt, or less if required
by state law.  Your request is priority with us and in the interim if
you require additional assistance please contact our Customer Service
Department toll-free at 877-735-3637.  Our office hours are Monday
through Thursday 8:00 AM to 7:00 PM CT, and Friday 8:00 AM to 5:00 PM
CT.

If your correspondence is related to a payment application please be
advised that Selene will suspend adverse credit reporting on your
loan for 60 days from the date of receipt.


Selene Finance
CS003 036 MF3



This communication is from a debt collector. Unless you are in bankruptcy, or received a bankruptcy discharge of this debt, Selene Finance is attempting to collect a debt and any information obtained will be used for that purpose. If you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.