1

2

3

4                             UNITED STATES DISTRICT COURT

5                           NORTHERN DISTRICT OF CALIFORNIA

6

7   JOHN F. LUNDY,                              Case No.  15-cv-05676-JST

                    Plaintiff,
8                                               **ORDER GRANTING IN PART AND
                                                DENYING IN PART MOTIONS TO
9        v.                                     DISMISS AND DENYING MOTION TO
                                                EXPUNGE LIS PENDENS**
10  SELENE FINANCE, LP, et al.,
                                                Re: ECF Nos. 26, 28, 33
                    Defendants.
11

12          Before the Court are a Motion to Dismiss Plaintiff's Complaint and a Motion to Expunge

13  Lis Pendens, filed by Defendants Selene Finance LP and Wilmington Savings Fund Society, FSB,

14  ECF Nos. 26 and 28.  Also before the Court is a Motion to Dismiss Plaintiff's Complaint filed by

15  Defendant MTC Financial.  ECF No. 33.[1]  For the reasons stated below, the Motions to Dismiss

16  are granted in part and denied in part.  The Motion to Expunge Lis Pendens is denied.

17          Defendants have also filed several requests for judicial notice, ECF Nos. 27, 29, 34, 55, 67,

18  which are granted.

19  **I.      BACKGROUND**

20          **A.      Factual History**

21          For purposes of deciding this motion, the Court accepts as true the material allegations of

22  the Complaint.  Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994).

23          On December 21, 2005, Plaintiff John Lundy obtained a mortgage loan secured by a Deed

24  of Trust ("DOT") from Defendant Washington Mutual Bank, FA ("WAMU") in the amount of

25  $1,134,000.00 ("Mortgage"), in order to purchase a single family home in San Rafael, California.

26

27  _____
    [1] As of the date of this order, two additional motions to dismiss are also pending before this Court.
28  See ECF Nos. 31, 57.  These motions will be heard at a later date and addressed in a separate
    order.

United States District Court
Northern District of California

1   ECF No. 1-1 ("Complaint") ¶ 9.  The DOT was recorded in Marin County on December 30, 2005.

2   Id.  The DOT identifies WAMU as the lender and loan servicer, and conveys title and power of

3   sale to California Reconveyance Corporation ("CRC") as the trustee.  Id.

4           Lundy alleges that, on or before March 29, 2007, WAMU sold the Mortgage to RESI

5   Finance DE Corporation 2007-B ("RESI").  Id. ¶ 11.  Lundy claims that RESI then sold the

6   Mortgage to Wells Fargo Bank, N.A. as the trustee for the investors in RESI Finance Limited

7   Partnership, Mortgage Pass-through Certificates, Series 2007-B ("RESI 2007-B Trust").  Id.

8           According to Lundy, Defendant JPMorgan Chase Bank, National Association ("Chase")

9   then acquired assets of the defunct WAMU on September 25, 2008.  Id. ¶ 10.  As successor in

10  interest to WAMU, Chase recorded on November 4, 2010 an Assignment of Deed of Trust dated

11  November 3, 2010 ("Assignment 1") in Marin County, transferring the DOT to Defendant Bank of

12  America, National Association ("BANA").  Id. ¶ 13.  After Chase transferred the DOT to BANA,

13  CRC executed and recorded a Notice of Default, which Plaintiff alleges was defective because it

14  was "pursuant to the foregoing void assignment."  Id. ¶ 19.  CRC subsequently issued five

15  separate Notices of Trustee's Sale for the property.  Id. ¶ 15.

16          The gist of Lundy's allegations is that Chase had no interest in the DOT to assign to

17  BANA or anyone else in 2010 because WAMU had transferred all beneficial interests in the DOT

18  to RESI before Chase acquired any assets from WAMU.  Id. ¶ 13.  Therefore, Assignment 1 and

19  all documents stemming therefrom are fatally defective, null, and void.  Id.

20          The chain of assignments for the DOT was as follows.  On the same date Chase recorded

21  Assignment 1, CRC recorded in Marin County a Notice of Default and Election to Sell ("NOD

22  1").  Id. ¶ 14.  Between February 2011 and August 2013, CRC recorded five Notices of Trustee's

23  Sale, stating that it would sell the Property at a public auction sale to pay for Lundy's unpaid

24  balance and other charges under the DOT.  Id. ¶ 15.

25          On January 29, 2014, Chase, as attorney-in-fact for BANA, recorded a Substitution of

26  Trustee dated January 16, 2014 ("SOT 1") in Marin County, under which ALAW substituted CRC

27  as trustee of the DOT.  Id. ¶ 16.  On March 11, 2015, BANA recorded in Marin County an

28  Assignment of Deed of Trust dated February 5, 2015 ("Assignment 2"), transferring all beneficial

United States District Court
Northern District of California

2

1   interests in the DOT to Wilmington Savings Fund Society, FSB, doing Business as Christiana

2   Trust, not in its individual capacity, but solely as trustee for BCAT 2014-12TT ("Wilmington").

3   Id. ¶ 17.

4        On February 26, 2015, and July 2, 2015, Lundy sent Selene Finance, LP ("Selene") and

5   Wilmington Qualified Written Requests for information concerning the servicing of his mortgage

6   loan, pursuant to the Real Estate Settlement Procedures Act ("RESPA") Section 2605(e), 12

7   U.S.C. § 2506(e). Id. ¶ 18-19. Among other things, Lundy requested information on all

8   assignments of the Mortgage in order to establish the chain of title. Id. ¶ 18. Lundy claims, and

9   Defendants do not deny, that neither Selene nor Wilmington ever responded to the Qualified

10  Written Requests, in violation of RESPA. Id. ¶ 18-19.

11       On July 10, 2015, Selene, as servicer and attorney-in-fact for Wilmington, recorded a

12  Substitution of Trustee dated July 2, 2015 ("SOT 2") in Marin County. Id. at 20. Under SOT 2,

13  MTC Financial Inc. dba Trustee Corps ("MTC") substituted ALAW as trustee under the DOT. Id.

14  On August 14, 2015, MTC recorded a Notice of Default dated August 13, 2015 ("NOD 2") with

15  the Marin County Recorder's Office. Id. ¶ 21.

16     **B.**    **Procedural History**

17       Lundy filed the instant action in Marin County Superior Court in California on November

18  6, 2015. See id. Chase removed the action to this Court on December 11, 2015. Id. A total of

19  four motions to dismiss have been filed, by Selene and Wilmington ("Selene/Wilmington"), ECF

20  No. 28, by Chase, ECF No. 31, by MTC, ECF No. 33, and by BANA, ECF No. 57. Only

21  Selene/Wilmington's and MTC's motions are currently before the Court, as is

22  Selene/Wilmington's Motion to Expunge Lis Pendens.

23       On March 4, 2016, this Court issued an Order to Show Cause to the parties as to why this

24  case should not be stayed as a result of the recently-issued California Supreme Court opinion in

25  Yvanova v. New Century Mortgage Corp., __ P.3d __, No. S218973, 2016 WL 639526 at *3 (Cal.

26  Feb. 18, 2016), and the pending opinion to be issued in Keshtgar v. U.S. Bank, 334 P.3d 686 (Cal.

27  2014) (granting petition for review). ECF No. 63. On March 11, 2016, both Selene/Wilmington

28  and MTC filed briefs in opposition to a stay. ECF Nos. 66, 68. Accordingly, this Court will

United States District Court
Northern District of California

1  address the issue of standing discussed in <u>Yvanova</u> as well as the remaining issues raised by the

2  parties.

3  **II.   LEGAL STANDARD**

4     **A.   Motion to Dismiss**

5        Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

6  failure to state a claim upon which relief may be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).

7  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal

8  theory or sufficient facts to support a cognizable legal theory."  <u>Mendiondo v. Centinela Hosp.</u>

9  <u>Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir.2008).  Dismissal is also proper where the complaint

10  alleges facts that demonstrate that the complaint is barred as a matter of law.  <u>See Balistreri v.</u>

11  <u>Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir.1990); <u>Jablon v. Dean Witter & Co.</u>, 614 F.2d

12  677, 682 (9th Cir.1980).

13        For purposes of a motion to dismiss, "all allegations of material fact are taken as true and

14  construed in the light most favorable to the nonmoving party." <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80

15  F.3d 336, 337–38 (9th Cir.1996).  However, "[w]hile a complaint attacked by a Rule 12(b)(6)

16  motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the

17  'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

18  recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

19  544, 555 (2007).  To survive a motion to dismiss, a pleading must allege "enough fact to raise a

20  reasonable expectation that discovery will reveal evidence" to support the allegations.  <u>Id.</u> at 556.

21     **B.   Motion to Expunge Lis Pendens**

22        "A party to an action who asserts a real property claim may record a notice of pendency of

23  action in which that real property claim is alleged." Cal. Civ. Proc. Code § 405.20. "The

24  California lis pendens statute requires the trial court to expunge the lis pendens if the 'claimant has

25  not established by a preponderance of the evidence the probable validity of the real property

26  claim.'" <u>Orange Cnty. v. Hongkong & Shanghai Banking Corp. Ltd.</u>, 52 F.3d 821, 823–24 (9th

27  Cir. 1995) (citing Cal. Code Civ. Proc. § 405.32). "'Probable validity' meaning that 'it is more

28  likely than not that the claimant will obtain a judgment against the defendant on the claim.' "

4

1    Orange Cnty., 52 F.3d at 824 (citing Cal.Code Civ. Proc. § 405.3).

2          "[T]he court shall order the notice expunged if the court finds that the pleading on which

3    the notice is based does not contain a real property claim." Cal. Civ. Proc. Code § 405.31. As

4    pertinent here, a "'[r]eal property claim' means the cause or causes of action in a pleading which

5    would, if meritorious, affect . . . title to, or the right to possession of, specific real property." Cal.

6    Civ. Proc. Code § 405.4.

7    **III.    DISCUSSION**

8          The Complaint brings nine causes of action: (1) Wrongful Foreclosure; (2) Quiet Title;

9    (3) Violation of Cal. Civil Code §§ 2923.55(a) and (b)(1)(B); (4) Violation of the RESPA, 12

10   U.S.C. § 2601 *et seq.*; (5) Violation of the California Residential Mortgage Lending Act

11   (CRMLA), Cal. Fin. Code § 50505; (6) Violation of Cal. Civil Code § 2624.17; (7) Violation of

12   the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (8) Unjust Enrichment;

13   and (9) Accounting.  Selene/Wilmington's and MTC's motions each argues that that all claims

14   raised against them should be dismissed.[2]  Complaint ¶¶ 25-93.  In addition, they also argue that

15   Plaintiff's claim must be dismissed because Defendants' conduct was privileged under Cal. Civil

16   Code 2924(d), and because Plaintiff has failed to allege proper tender.  The Court addresses each

17   of these issues below.

18         **A.    Judicial Notice**

19         Before addressing the merits of the motions before it, the Court must resolve the pending

20   requests for judicial notice.  Defendants Selene/Wilmington have filed a request for judicial notice

21   in support of their motion to dismiss, ECF No. 27 and a second request for judicial notice in

22   support of their motion to expunge lis pendens, ECF No. 29.  Defendant MTC Financial also filed

23   a request for judicial notice in support of its motion to dismiss. ECF No. 34.  These requests all

24   concern, for the most part, the same set of documents, which are publicly-available records of the

25   various sales and assignments alleged to have occurred in relation to the property in this case.

26   Plaintiff filed an opposition to Selene/Wilmington's two requests for judicial notice, ECF Nos. 48,

27

28   _____

     [2] Not all counts are raised against Defendant MTC.  Only Counts I, III, VII, and VIII name MTC
     as a defendant.  Complaint ¶¶ 25-93.

United States District Court
Northern District of California

50.  He does not oppose granting the requests for judicial notice but states, correctly, that while this Court may take judicial notice of the existence of these documents, it cannot take notice of allegations asserted in these documents, nor of disputed legal conclusions that Defendants argue should be drawn from them.  Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).  Accordingly, these three requests for judicial notice are granted, but only as to the existence of the documents.

Selene/Wilmington also filed a third supplemental request for judicial notice in support of their reply in support of the motion to expunge lis pendens.  ECF No. 55.  The request is for the results of an online search for mortgage lending licenses for Selene.  Plaintiff does not oppose the request.  Because the search results are publicly available online and are in response to allegations raised in Plaintiff's opposition, the Court grants the request for judicial notice, but only as to the existence of the document.

Finally, Selene/Wilmington filed a fourth supplemental request for judicial notice in support of their response to the Court's Order to Show Cause.  ECF No. 67.  The Court notes, however, that nearly all of the documents in this request are already the subject of Selene/Wilmington's previous request for judicial notice.  See ECF No. 27.  The remaining document is a publicly available record of an agreement.  The Court takes judicial notice of this document, but only as to its existence.

### B.   Cal. Civil Code 2924(d)

Defendants first argue that all of Plaintiff's claims are foreclosed pursuant to the privilege granted by California Civil Code section 2924(d).  That subsection states as follows:

> All of the following shall constitute privileged communications pursuant to Section 47:
> (1) The mailing, publication, and delivery of notices as required by this section.
> (2) Performance of the procedures set forth in this article.
> (3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure.

Cal. Civ. Code § 2924(d).  Under Cal. Civ. Code section 47, "the privilege applies to communications made without malice by a person who has an interest in the communications to another person with an interest in the communications."  Powell v. Wells Fargo Home Mortgage,

1    No. 14-CV-04248-MEJ, 2015 WL 4719660, at *6 (N.D. Cal. Aug. 7, 2015).  This privilege now

2    applies to all torts other than malicious prosecution.  Id.

3            Defendants state that these privileged communications "essentially encompass[] the entire

4    foreclosure process, including the sale," and therefore "all tort and statutory claims based on the

5    foreclosures notices should be dismissed."  ECF No. 26 at 14.

6            Plaintiff responds that his claim is directed not at the notice itself or the procedures

7    surrounding the notice, but rather "the initiation of allegedly inappropriate nonjudicial foreclosure

8    proceedings."  ECF No. 49 at 16.  He cites to Garreston v. Post, 150 Cal. App. 4th 1508, 1522

9    (2007), for this proposition.  According to Plaintiff, "[t]he notice of foreclosure merely alerted

10   plaintiff to an impending foreclosure sale," but it was the "initiation of foreclosure proceedings,

11   rather than the foreclosure notice itself, [that] caused Plaintiff to incur damages."  Id.

12           With respect to Selene and Wilmington, the Court agrees.  In Garreston, the California

13   Court of Appeal declined to apply section 2924(d) or anti-SLAPP protection, concluding that "it is

14   apparent that plaintiff's wrongful foreclosure cause of action is not based on the notice itself, but

15   rather on defendant's attempt to foreclose on plaintiff's property."  150 Cal. App. 4th at 1522.

16   Thus, "plaintiff's wrongful foreclosure cause of action does not arise from protected free speech."

17   Id.  Similarly, in Kachlon v. Markowitz, 168 Cal. App. 4th 316, 345 (2008), the California Court

18   of Appeal denied the protections of section 2924(d) to the beneficiary of a deed of trust,

19   concluding that they "fail to explain how their conduct in bringing about the nonjudicial

20   foreclosure—presenting to Best Alliance written instructions, a declaration of default, and a

21   demand for sale—may be construed as notices required by statute or as the procedures set forth in

22   the statutory scheme."

23           Here, Selene/Wilmington does not explain why their challenged conduct in this case

24   should be treated merely as "privileged communication" when Plaintiff's claims are, at base,

25   based on their substantive decision to foreclose on his property.  Instead, they argue only that

26   section 2924(d) "essentially encompasses the entire foreclosure process, including the sale."  ECF

27   No. 26 at 14.   In essence, Selene/Wilmington appear to take the position that section 2924(d)

28   immunizes foreclosure proceedings from being challenged in court.  The Court will not adopt a

United States District Court
Northern District of California

1    position that strips aggrieved borrowers of the right to seek the Court's protection.

2        On the other hand, MTC, as the trustee in the foreclosure proceedings, has a stronger

3    argument that its conduct should be protected under section 2924(d).  It contends that as the

4    foreclosure trustee, whose only responsibilities were to execute the foreclosure sale at direction of

5    the beneficiary, its conduct is privileged.  ECF No. 33-1 at 12-13.  Plaintiff declines to respond to

6    this claim, again arguing only generally that his challenge is to the initiation of the foreclosure

7    itself rather than the notice.  ECF No. 51 at 14-15.  Yet as MTC points out, it was not responsible

8    for initiating the foreclosure proceedings.  ECF No. 56 at 3.  Rather, it "merely recorded the

9    second Notice of Default after it was substituted as the trustee under the operative Deed of Trust."

10   Id.

11       The Court agrees with MTC and concludes that MTC's conduct is protected under section

12   2924(d).  "Under a deed of trust containing a power of sale, . . . the borrower, or 'trustor,' conveys

13   nominal title to property to an intermediary, the 'trustee,' who holds that title as security for

14   repayment of the loan to the lender, or 'beneficiary.'"  Kachlon, 168 Cal. App. 4th at 334.  "The

15   trustee's duties are twofold: (1) to "reconvey" the deed of trust to the trustor upon satisfaction of

16   the debt owed to the beneficiary, resulting in a release of the lien created by the deed of trust, or

17   (2) to initiate nonjudicial foreclosure on the property upon the trustor's default, resulting in a sale

18   of the property."  Id.  "The trustee's statutory duties in effectuating the foreclosure are designed, in

19   major part, to communicate relevant information about the foreclosure to other interested

20   persons."  Id. at 339.

21       Other courts have held that absent a showing of maliciousness, a trustee's executing its

22   obligations under the deed of trust are protected under section 2924(d) and section 47.  See, e.g.,

23   Kachlon, 168 Cal. App. 4th at 343-344 (affirming dismissal of claims against foreclosure trustee

24   for slander of title and negligence based on its recording the notice of default and failing to rescind

25   it upon satisfaction of debt); Powell v. Wells Fargo Home Mortgage, No. 14-CV-04248-MEJ,

26   2015 WL 4719660, at *6-7 (N.D. Cal. Aug. 7, 2015) ("[T]o the extent First American's conduct

27   occurred in reliance on the lender's information as provided under section 2924(b), First American

28   is immune to Plaintiff's state law claims arising from recording of the notice of default and related

United States District Court
Northern District of California

acts."); <u>Shelby v. Ocwen Loan Servicing, LLC</u>, No. 2:14-CV-02844-TLN, 2015 WL 5023020, at *4 (E.D. Cal. Aug. 24, 2015) (acknowledging that "[i]t is possible . . . for a trustee to be liable if the trustee maliciously carries out its duties to provide for liability on the part of the trustee," but that in the absence of this, a trustee is not liable "for carrying out its routine duties"). Moreover, California Civil Code section 2924(b), which deals with transfers and sales of deeds of trust, states: "the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage."

Here, Plaintiff identifies no allegations suggesting that MTC acted with malice or in bad faith in discharging its duties as trustee and initiating foreclosure proceedings on Plaintiff's property. Nor does he provide any allegations that MTC acted beyond its duties as trustee. Therefore, he has provided no reason why the protections of section 2924(d) and (b) should not apply.

In sum, the Court denies Selene/Wilmington's motion to dismiss based on section 2924(d), but grants MTC's motion based on this section. Upon review of Plaintiff's complaint, it appears that all of his claims against MTC are based entirely on its role in initiating foreclosure proceedings at the direction of the other Defendants. Accordingly, all claims against MTC are dismissed without prejudice.

### C.     Proper Tender

Defendants also argue that, as a matter of law, a plaintiff must allege proper tender of the debt due in order to bring any claim that arises from a foreclosure sale. ECF No. 26 at 4. Consequently, Defendants contend that the Court must dismiss Lundy's complaint in its entirety because he failed to allege proper tender or facts supporting the ability to tender the outstanding indebtedness. ECF No. 26 at 5.

"It is settled rule that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security. This rule is premised upon the equitable maxim that a court of equity will not order that a useless act be performed." <u>Arnolds Mgmt. Corp. v. Eischen</u>, 158 Cal.App.3d 575,

578–79 (1984).  "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  Karlsen v. Am. Sav. & Loan Assn., 15 Cal. App. 3d 112, 117 (1971).  "The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs."  Robinson v. Bank of Am., No. 12-CV-00494-RMW, 2012 WL 1932842, at *3 (N.D. Cal. May 29, 2012) (quoting Cohn v. Bank of America, No. 10–00865, 2011 WL 98840, at *9 (E.D.Cal. Jan. 12, 2011)).

The tender rule is not absolute, however, and many district courts have recognized exceptions to it in situations similar to this one.  First, there is a general equitable exception that "tender may not be required where it would be inequitable to do so."  Onofrio v. Rice, 55 Cal. App. 4th 413, 424 (1997); Robinson v. Bank of Am., 12–CV–00494–RMW, 2012 WL 1932842, at *3 (N.D. Cal. May 29, 2012); Bowe v. Am. Mortg. Network, Inc., CV 11–08381 DDP SHX, 2012 WL 2071759, at *2 (C.D. Cal. June 8, 2012); Giannini v. American Home Mortg. Servicing, Inc., No. 11–04489 TEH, 2012 WL 298254, at *3 (N.D. Cal. Feb. 1, 2012).  As relevant here, courts often hold that it would be inequitable to prevent plaintiffs, through application of the tender rule, from preventing an erroneous foreclosure. See, e.g., Barrionuevo v. Chase Bank, N.A., 885 F. Supp. 2d 964, 969 (N.D. Cal. 2012) (recognizing a "strong argument that tender—or at least full tender—should not be required" should not be required when plaintiffs "are contesting not only irregularities in sale notice or procedure, but the validity of the foreclosure in the first place"); Sacchi v. Mortgage Electronic Registration Systems, Inc., No. CV 11–1658 AHM (CWx), 2011 WL 2533029, at *9–10 (C.D. Cal. June 24, 2011) (requiring tender when "a home is about to be taken away through error or malfeasance . . . would permit entities to foreclose on properties with impunity"); Vissuet v. Indymac Mortgage Servs., No. 09-CV-2321-IEG, 2010 WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) ("[W]here a party has the right to avoid a sale, he is not bound to tender any payment in redemption.").

Second, "a growing number of federal courts have explicitly held that the tender rule only applies in cases seeking to set aside a completed sale, rather than an action seeking to prevent a sale in the first place."  Barrionuevo, 885 F. Supp. 2d at 969; see also, e.g., Pfeifer v. Countrywide

10

1    Home Loans, Inc., 211 Cal. App. 4th 1250, 1280 (2012) ("[N]o foreclosure sale has occurred. . . .

2    The fact that a borrower is in arrears does not allow the lender to circumvent the conditions

3    precedent"); Giannini, 2012 WL 298254, at *3 ("While it is sensible to require tender following a

4    flawed sale—where irregularities in the sale are harmless unless the borrower has made full

5    tender—to do so prior to sale, where any harm may yet be preventable, is not."); Robinson, 2012

6    WL 1932842 (the court found it "inequitable to apply the tender rule to bar plaintiff's claims" in

7    part because "there has been no sale of the subject property").

8         Finally, courts have also held that where a sale is void, rather than simply voidable, tender

9    is not required.  See, e.g., Tamburri v. Suntrust Mortgage, Inc., No. C-11-2899 EMC, 2011 WL

10   6294472, at *4 (N.D. Cal. Dec. 15, 2011); Dimock v. Emerald Properties LLC, 81 Cal. App. 4th

11   868, 878 (2000) (holding that plaintiff "was not required to tender any of the amounts due under

12   the note" because he "could rely on the face of the record to show that the Commonwealth deed

13   was void"); Pfeifer v. Countrywide Home Loans, Inc., 211 Cal. App. 4th 1250, 1280 (2012)

14   ("Courts have recognized various exceptions to the tender rule, including an exception based on an

15   allegation that a foreclosure sale is void").

16        In the present case, Plaintiff seeks to prevent an upcoming foreclosure sale, arguing that

17   Wilmington is not the true holder of the DOT and does not have power of sale.  ECF No. 1-1 ¶ 17.

18   Given the exceptions and qualifications to the tender rule described above, the Court concludes it

19   would be improper to apply the tender rule to Plaintiff's case, especially at the pleading stage.  See

20   Tamburri, 2011 WL 6294472, at *5.

21        **D.    Count I: Wrongful Foreclosure**

22        Selene/Wilmington's brief raises two arguments in response to Plaintiff's claim for

23   wrongful foreclosure.  First, it argues that Plaintiff has failed to plead the elements of wrongful

24   foreclosure, in particular that a foreclosure sale has already occurred.  Second, it argues that

25   Plaintiff lacks standing to argue that the various assignments of the deed of trust to his property

26   because he was not a party to any of those agreements.

27        **1.    Elements of Wrongful Foreclosure**

28        Selene and Wilmington first argue that Plaintiff has not alleged all of the elements of

United States District Court
Northern District of California

11

wrongful foreclosure.  ECF No. 26 at 16.  They cite to <u>Lona v. Citibank, N.A.</u>, 202 Cal. App. 4th 89, 104, and assert that Plaintiff has failed to allege that a foreclosure sale has already occurred, and that the sale was caused by "illegal, fraudulent, or willfully oppressive" conduct by the Defendant.  They quote <u>Lona</u> as defining the elements of wrongful foreclosure as follows:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

ECF No. 26 at 16 (quoting <u>Lona</u>, 202 Cal. App. 4th at 104).

Even a cursory review of <u>Lona</u> reveals, however, that Defendants have misrepresented the case.  <u>Lona</u> dealt with a challenge to an already completed sale, and thus the court in <u>Lona</u> quite sensibly explained the law only in relation to such claims.  <u>Lona</u>, 202 Cal. App. 4th at 103 ("After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale.").  Thus, the first half of the sentence quoted by Defendants states: "Case law instructs that the elements of an equitable cause of action *to set aside a foreclosure sale* are . . ." <u>Id.</u> at 104 (emphasis added).  It is not surprising, then, that numerous courts have allowed pre-foreclosure claims to proceed.  <u>See, e.g.</u>, <u>Barrionuevo</u>, 885 F. Supp. 2d 964; <u>Vissuet</u>, 2010 WL 1031013; <u>Giannini</u>, 2012 WL 298254.

The Court rejects Defendants' argument.

### 2.   Standing

#### a.   <u>Yvanova v. New Century Mortgage Corp.</u>, and the Parties' Opposition to a Stay

Defendants next contend that Lundy cannot challenge the validity of Assignment 1 and all other securitization related to his mortgage because, as a third party to those transactions, he lacks standing to argue they are defective.  As the Supreme Court recently recognized in <u>Yvanova v. New Century Mortgage Corp.</u>, __ P.3d __, No. S218973, 2016 WL 639526 at *1 (Cal. Feb. 18, 2016), there is a split in the California courts on this specific issue – namely, "whether the borrower on a home loan secured by a deed of trust may base an action for wrongful foreclosure

1    on allegations a purported assignment of the note and deed of trust to the foreclosing party bore

2    defects rendering the assignment void."

3        Defendants rely on the most prominent case on one side of the split, <u>Jenkins v. JP Morgan

4    Chase Bank, N.A.</u>, 216 Cal. App. 4th 497, 511 (2013), <u>disapproved of by Yvanova</u>, which held

5    that plaintiffs lack standing to bring preemptive claims against foreclosures "challenging the right,

6    power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue

7    foreclosure."  Plaintiff responds by citing to the case on the other side of the split, <u>Glaski v. Bank

8    of Am., N.A.</u>, 218 Cal. App. 4th 1079 (2013), which held, contrary to <u>Jenkins</u>, that a plaintiff has

9    standing to challenge a completed foreclosure based on allegations that the foreclosing party lacks

10   authority due to an assignment that was void.  ECF No. 49 at 27.

11       In <u>Yvanova</u>, the California Supreme Court sought to resolve this split, but only in regards

12   to post-sale challenges to a foreclosure, not pre-sale challenges.  <u>Yvanova</u>, 2016 WL 639526 at *1.

13   <u>Yvanova</u> sided with <u>Glaski</u>, holding that plaintiffs do indeed possess standing to challenge a

14   foreclosure based on an argument that the alleged assignment underlying the foreclosure was void.

15   <u>Id.</u> at *9.  <u>Yvanova</u> made clear more than once, however, that it was confining its holding only to

16   post-foreclosure challenges, <u>see</u> id. at *1, *8, and not reaching the question presented by pre-sale

17   challenges like the one before the Court.

18        The California Supreme Court has also granted review of a case that addresses the same

19   issue in the pre-foreclosure context.  <u>Keshtgar v. U.S. Bank</u>, 334 P.3d 686 (Cal. 2014) (granting

20   petition for review).  The court stayed briefing on that case in light of its pending decision in

21   <u>Yvanova</u>, <u>id.</u>, and as of the date of this order, <u>Keshtgar</u> remains before the California Supreme

22   Court.  A third case, <u>Mendoza v. JP Morgan Chase Bank</u>, addresses the same issue as <u>Keshtgar</u>

23   and was also accepted by the California Supreme Court for review and then stayed pending the

24   decision in <u>Yvanova</u>.  337 P.3d 493 (granting petition for review).

25       These facts were set forth in this Court's Order to Show Cause, which asked the parties to

26   demonstrate why this case should not be stayed in light of the upcoming proceedings before the

27   California Supreme Court in <u>Keshtgar</u> and <u>Mendoza</u>.  ECF No. 64.  Both Selene/Wilmington and

28   MTC opposed the stay.  ECF Nos. 66, 68.  In light of the Defendants' opposition, the Court will

United States District Court
Northern District of California

1    not impose a stay and will instead consider Defendants' contention that Lundy lacks standing.

2           In their response to the Order to Show Cause, Selene/Wilmington contend that because

3    "*Yvanova* declined to hold that the portion of *Jenkins* which disallows the use of a lawsuit to

4    preempt a nonjudicial foreclosure was incorrect, that specific aspect of *Jenkins* remains good law."

5    ECF No. 66 at 5.  Technically, perhaps.  In interpreting state law, federal courts are bound by the

6    precedents of the state's highest court, and if that particular issue has not been decided, federal

7    courts must "predict how the highest court would resolve it."  Hemmings v. Tidyman's Inc., 285

8    F.3d 1174, 1203 (9th Cir. 2002).  As noted above, the California Supreme Court is poised to

9    address the current split in the pre-foreclosure context in Keshtgar and Mendoza.  The Court will

10   thus address this issue based not only on Jenkins, but also on the limited guidance available from

11   Yvanova and other relevant law from the California Courts of Appeal.

12          Before addressing the reasoning of Yvanova itself, this Court begins by briefly reviewing

13   the contours of the split prior to Yvanova's holding.  As noted, Jenkins and its progeny stand for

14   the proposition that "California courts have refused to delay the nonjudicial foreclosure process by

15   allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and

16   authority of a foreclosing "beneficiary" or beneficiary's "agent" to initiate and pursue foreclosure."

17   Jenkins, 216 Cal. App. 4th at 511. The "crux of Jenkins's lawsuit" was based on her argument that

18   her loan was pooled with others in an investment trust without compliance with the trust's pooling

19   and servicing agreement, and that this failure "extinguished the interest created by her execution

20   of the deed of trust in 2007 and, therefore, Defendants now have no secured interest to foreclose

21   upon."  Id. at 505.  Jenkins rejected this claim, holding that it interfered with California's scheme

22   for nonjudicial foreclosure proceedings, and further that the plaintiff lacked standing to bring such

23   a claim since she was not a party to the transactions she alleged were noncompliant.  See id. at

24   511-515.

25          Glaski v. Bank of Am., N.A., 218 Cal. App. 4th 1079 (2013) reached a contrary holding.

26   In Glaski, the plaintiff's mortgage loan was also allegedly part of a pool of mortgages in a

27   securitized trust, and the plaintiff alleged that because the assignment of his note and deed to the

28   trust was after the trust's closing date, the assignment was ineffective.  Id. at 1084.  Unlike in

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Jenkins, a foreclosure sale on Glaski's property was conducted on May of 2009, prior to his filing

2    his complaint in October 2009.  Id. at 1086-87.  Glaski "reject[ed] the view that a borrower's

3    challenge to an assignment must fail once it is determined that the borrower was not a party to, or

4    third party beneficiary of, the assignment agreement," concluding that such a position "paint[s]

5    with too broad a brush."  Id. at 1095.  "Instead, courts should proceed to the question whether the

6    assignment was void."  Id.  Because Glaski's allegations "are sufficient to state a basis for

7    concluding the attempted transfers were void," the Glaski court allowed those claims to stand.  Id.

8    at 1098.

9         When it was issued, Glaski occupied a lonely minority position on one side of a split in the

10   California courts.  Both state and federal courts "soundly rejected" Glaski's holding as conflicting

11   with the bulk of clear California law on the issue.  Vasquez v. U.S. Bank, N.A., No. 15-CV-

12   02146-DMR, 2015 WL 5158538, at *4 (N.D. Cal. Sept. 2, 2015); see also Newman v. Bank of

13   New York Mellon, No. 1:12–CV–1629 AWI, 2013 WL 5603316, at * 3, n.2 (E.D. Cal. Oct. 11,

14   2013) ("[N]o courts have yet followed Glaski and Glaski is in a clear minority on the issue.");

15   Moran v. GMAC Mortgage, LLC, No. 5:13-CV-04981-LHK, 2014 WL 3853833, at *5 (N.D. Cal.

16   Aug. 5, 2014) (listing cases that rejected Glaski).  Indeed, the undersigned also rejected Glaski

17   based on its apparently minority view, see Gieseke v. Bank of America, N.A., No. 13-cv-04772-

18   JST, 2014 WL 718463 at *4 (N.D. Cal. Feb. 23, 2014).

19        Yet despite its lack of traction, Glaski has now been vindicated by the decision in

20   Yvanova.  The California Supreme Court acknowledged the concerns expressed by Jenkins and

21   other cases in the former majority, but concluded that Glaski's distinction between challenges to

22   an assignment underlying a foreclosure as void, rather than merely voidable, was persuasive.

23   Yvanova, 2016 WL 639526 at *9-10.  As the California Supreme Court explained, "[w]hen an

24   assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the

25   parties to the assignment; the transaction is not void unless and until one of the parties takes steps

26   to make it so.  Id. at *10.  Thus, a plaintiff "who challenges a foreclosure on the ground that an

27   assignment to the foreclosing party bore defects rendering it voidable" could be said "to assert an

28   interest belonging solely to the parties to the assignment rather than to herself."  Id.

1    "When the plaintiff alleges a void assignment, however, the <u>Jenkins</u> court's concern with

2    enforcement of a third party's interests is misplaced." <u>Id.</u>  "Unlike a voidable transaction, a void

3    one cannot be ratified or validated by the parties to it even if they so desire." <u>Id.</u>  Therefore,

4    plaintiffs who challenge an assignment as void rather than voidable "are not attempting to enforce

5    the terms of the instruments of assignment; to the contrary, they urge that the assignments are void

6    ab initio." <u>Id.</u> (internal quotation marks and citation omitted).   Based on this, <u>Yvanova</u> partially

7    resolved the split between <u>Jenkins</u> in <u>Glaski</u> in regards to post-foreclosure claims, holding that

8    plaintiffs may bring wrongful foreclosure claims on the basis that the assignment underlying the

9    foreclosure was void.  <u>Id.</u> at *15.

10           **b.      Applying <u>Yvanova</u> to pre-foreclosure claims**

11           The task left to this Court is to interpret the guidance of <u>Yvanova</u> and "predict how the

12   highest court would resolve" this issue in the pre-foreclosure context, in its upcoming proceedings

13   in <u>Keshtgar</u> and <u>Mendoza</u>.  Put another way, this Court must determine whether the California

14   Supreme Court will again reject <u>Jenkins's</u> reasoning in regards to pre-foreclosure challenges.

15           The Court concludes that it will.  In <u>Yvanova</u>, the California Supreme Court identified two

16   justifications given by the <u>Jenkins</u> court for its holding.  First, the <u>Jenkins</u> court noted that

17   "California law did not permit a 'preemptive judicial action[ ] to challenge the right, power, and

18   authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure.'"

19   <u>Yvanova</u>, 2016 WL 639526 at *8 (quoting <u>Jenkins</u>, 216 Cal. App. 4th at 511).  "*Jenkins* reasoned

20   that such preemptive suits are inconsistent with California's comprehensive statutory scheme for

21   nonjudicial foreclosure; allowing such a lawsuit 'would fundamentally undermine the nonjudicial

22   nature of the process and introduce the possibility of lawsuits filed solely for the purpose of

23   delaying valid foreclosures.'" <u>Id.</u> (quoting <u>Jenkins</u>, 216 Cal. App. 4th at 513).

24           Because this first argument addressed only pre-foreclosure claims, the California Supreme

25   Court declined to opine on its validity.  Instead, it moved to the second ground offered in <u>Jenkins</u>,

26   which is that plaintiffs who challenge the assignments of deeds of trust to their properties "ha[ve]

27   failed to allege an actual controversy as required by Code of Civil Procedure section 1060." <u>Id.</u> at

28   *9 (citing <u>Jenkins</u>, 216 Cal. App. 4th at 513). "Even if one of the assignments of the note and deed

United States District Court
Northern District of California

of trust was improper in some respect, the appellate court reasoned, 'Jenkins is not the victim of such invalid transfer[ ] because her obligations under the note remained unchanged. Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note.'" Id. (quoting Jenkins, 216 Cal. App. 4th at 515). Plaintiffs offering such claims "failed to show prejudice . . . because the challenged assignment did not change their obligations under the note." Id.

As to this second ground, the California Supreme Court rejected the reasoning offered by the Jenkins court. It noted that "the bank or other entity that ordered the foreclosure would not have done so absent the allegedly void assignment," and therefore "[t]he identified harm—the foreclosure—can be traced directly to [the foreclosing entity's] exercise of the authority purportedly delegated by the assignment." Id. at *11 (internal quotation marks and citation omitted). Moreover, "[t]hough the borrower is not entitled to object to an assignment of the promissory note, he or she is obligated to pay the debt, or suffer loss of the security, only to a person or entity that has actually been assigned the debt." Id. "The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security." Id. The contrary view, that there was no prejudice from an allegedly void assignment, "implies that *anyone*, even a stranger to the debt, could declare a default and order a trustee's sale—and the borrower would be left with no recourse because, after all, he or she owed the debt to *someone*, though not to the foreclosing entity." Id. at *12. This, the California Supreme Court noted, "would be an 'odd result' indeed." Id.

The prejudice in the post-foreclosure context is, of course, more obvious than in pre-foreclosure, since a plaintiff has suffered the definable injury of the loss of her property. But it is clear that Yvanova's prejudice analysis does not depend on the existence of a completed foreclosure sale—rather, it focuses more broadly on the unfairness of requiring a plaintiff to be subjected to foreclosure proceedings by an entity that has no right to initiate those proceedings. For this reason, the Court concludes that Yvanova's reasoning applies just as strongly to pre-foreclosure plaintiffs. Just as with post-foreclosure plaintiffs, the "identified harm"—initiation of

foreclosure proceedings—can "be traced directly to [the foreclosing entity's] exercise of the authority purportedly delegated by the assignment." Id. at *11.  The prejudice is self-evident given that "the bank or other entity that ordered the foreclosure would not have done so absent the allegedly void assignment," regardless of whether the plaintiff still has title or possession of her home.  Id.  A plaintiff who has already lost her home has undoubtedly suffered prejudice; but so has a plaintiff who is at imminent risk of doing so.

In sum, Yvanova provides strong guidance that in Keshtgar and Mendoza, the California Supreme Court will again reject Jenkins's conclusion that pre-foreclosure plaintiffs are not prejudiced by initiation of foreclosure proceedings based on an allegedly void assignment.  This conclusion leaves only the first ground of Jenkins not addressed by Yvanova, which is that "preemptive challenges" are "inconsistent with California's comprehensive statutory scheme for nonjudicial foreclosure."

As noted in Yvanova, this first ground of Jenkins relied heavily on another California Court of Appeal case, Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149 (2011), which also barred a pre-foreclosure challenge based on the foreclosing entity's lack of authority to initiate proceedings.  Jenkins noted, however, that Gomes's holding was in part based on the fact that the plaintiff in Gomes had failed to allege any factual basis for the foreclosing entity's alleged lack of authority.  See Jenkins, 216 Cal. App. 4th at 512 ("Consequently, the Gomes court concluded that allowing a trustor-debtor to pursue such an action, absent a 'specific factual basis for alleging that the foreclosure was not initiated by the correct party' would unnecessarily [interfere with California's statutory scheme for nonjudicial foreclosure]." (emphasis in original)).

In Gomes, the plaintiff alleged merely that based "on information and belief," the foreclosing entity was not entitled to foreclose, but offered no factual support for this belief nor any guess as to the true owner of the note or deed.  Gomes, 192 Cal. App. 4th at 1152.  The Gomes court emphasized this point when distinguishing its conclusion from three other cases that reached the opposite result, noting that in all three of these cases, "the plaintiff's complaint identified a specific factual basis for alleging that the foreclosure was not initiated by the correct party," such as that the assignments at issue had been improperly backdated.  Id. at 1155-56.

1    Indeed, Glaski emphasized this aspect of Gomes and identified it as a "limited nature" of the

2    holding.  Glaski, 218 Cal. App. 4th at 1099.

3            This distinction is significant.  As echoed in Jenkins, Gomes focused on the established

4    framework for regulation of nonjudicial foreclosure sales, and argued that "[b]y asserting a right to

5    bring a court action to determine whether the owner of the Note has authorized its nominee to

6    initiate the foreclosure process, Gomes is attempting to interject the courts into this comprehensive

7    nonjudicial scheme."  Gomes, 192 Cal. App. 4th at 1154; see also id. at 1155 ("[N]owhere does

8    the statute provide for a judicial action to determine whether the person initiating the foreclosure

9    process is indeed authorized, and we see no ground for implying such an action.")  Gomes, of

10   course, did not directly assert that his complaint was merely "a judicial action to determine

11   whether the person initiating the foreclosure process is indeed authorized," but rather alleged

12   affirmatively that this person was *not* authorized.  Gomes's analysis indicates that the court

13   nevertheless characterized his action as such due to Gomes's failure to allege any specific factual

14   support for his claim:

15           It is also significant that in each of [the three contrary cases], the plaintiff's
             complaint identified a *specific factual basis* for alleging that the foreclosure was
16           not initiated by the correct party. Gomes has not asserted *any* factual basis to
             suspect that MERS lacks authority to proceed with the foreclosure. He simply seeks
17           the right to bring a lawsuit to find out *whether* MERS has such authority. No case
             law or statute authorizes such a speculative suit.
18
     Id. at 1156 (emphasis in original).  While Jenkins acknowledges this aspect of the holding in
19
     Gomes, it is not clear if Jenkins's holding is likewise limited to only those situations where
20
     plaintiffs lack a specific factual basis and therefore "simply seek the right to bring a lawsuit to find
21
     out *whether*" an entity has authority to foreclose, or if it imposes a bar generally on any such pre-
22
     foreclosure challenges.
23
             Moreover, courts on the Jenkins side of the split do not appear to agree on this issue.  At
24
     least one court has held, for example, that the bar on pre-foreclosure challenges to a foreclosing
25
     entity's authority is limited only to those plaintiffs who, like in Gomes, fail to allege any factual
26
     basis for their claim.  In Siliga v. Mortgage Elec. Registration Sys., Inc., 219 Cal. App. 4th 75, 82
27
     (2013) disapproved of by Yvanova, the California Court of Appeal echoed the rule from Jenkins
28

that plaintiffs may not "pursu[e] preemptive judicial actions challenging the authority of a foreclosing 'beneficiary' or beneficiary's 'agent,'" but then defined a "preemptive" action as only those actions in which "the plaintiff alleges no 'specific factual basis' for the claim that the foreclosure was not initiated by the correct person." Continuing to cite to Jenkins, the Siliga court went on to explain that the reason for this rule is that "[a] preemptive suit does not seek a remedy for *specified* misconduct in the nonjudicial foreclosure process, which may provide a basis for a valid cause of action," but rather "seeks to create an additional requirement for the foreclosing party apart from the comprehensive statutory scheme." Siliga, 219 Cal. App. 4th at 82 (citing Jenkins, 156 Cal. App. 4th at 511) (emphasis added). The Siliga court then went on to examine the Siligas' claim for any factual basis, and concluded that because they lacked one, their claim was not valid: "Absent a specific factual basis, this claim amounts to a preemptive claim seeking to require the foreclosing party to demonstrate in court its authority to initiate a foreclosure. Such a claim is invalid and subject to demurrer." Id. (citing Jenkins, 216 Cal. App. 4th at 511-13). Other cases appear to have interpreted Gomes and Jenkins similarly. See, e.g., Rossberg v. Bank of America, N.A., 219 Cal. App. 4th 1481, 1493 (2013) as modified on denial of reh'g (Sept. 26, 2013) ("Allowing a judicial action to prevent a nonjudicial foreclosure *without specific factual allegations* showing a lack of authority "would unnecessarily 'interject the courts into [the] comprehensive nonjudicial scheme' created by the Legislature." (emphasis added) (quoting Jenkins, 216 Cal. App. 4th at 512)).[3]

On the other hand, Keshtgar v. U.S. Bank, N.A., 226 Cal. App. 4th 1201, 1205-06 (2014) (unpublished), the opinion subsequently depublished and accepted for review by the Supreme Court, reached the opposite conclusion. The Keshtgar court acknowledged that Gomes discussed the lack of a "specific factual basis" while distinguishing its conclusion from other cases, but stated that "a discussion distinguishing facts is not a holding. *Gomes* holds that the California statutory scheme allows no preemptive action to challenge the authority of the person initiating foreclosure." Id. at 1205-06.

---

[3] Siliga and Rossberg both involved a pre-foreclosure claim. See Siliga, 219 Cal. App. 4th at 79; Rossberg, 219 Cal. App. 4th at 1489-90.

United States District Court
Northern District of California

In sum, <u>Jenkins</u> and its progeny clearly impose some kind of bar on pre-foreclosure challenges to the foreclosing entity's alleged lack of authority, and do so because of those challenges' "preemptive" effect on California's nonjudicial foreclosure scheme.  What is less clear is whether that bar is limited to only those challenges that lack any "specific factual basis" in support.

This lack of clarity is complicated even further by the fact that the task before this Court is not to resolve this issue based solely on the existing case law, but rather to predict the result in <u>Keshtgar</u> and/or <u>Mendoza</u>.  The California Supreme Court possesses a far greater familiarity with California law, of course, and so this Court cannot predict with certainty whether it will adopt <u>Jenkins</u> in the pre-foreclosure context.  However, this Court does conclude that *if* the California Supreme Court decides to adopt <u>Jenkins</u>'s bar to pre-foreclosure challenges, it will limit that bar only to claims that lack any "specific factual basis," as in <u>Gomes</u>.  <u>Gomes</u>, as noted above, relied on the notion that claims without any factual basis operate essentially as actions to "determine whether the person initiating the foreclosure process is indeed authorized.  <u>Gomes</u>, 192 Cal. App. 4th at 1154.  Barring such claims is sensible, since otherwise any borrower could stall a foreclosure sale merely by declaring, "upon information and belief," that the foreclosing entity lacked the proper authority.  Allowing those claims would indeed effectively "create an additional requirement for the foreclosing party" to prove its authority to foreclose, which does not exist in California's current statutory framework.  <u>Siliga</u>, 219 Cal. App. 4th at 82

But extending the bar further to reach all pre-foreclosure challenges would not comport with either <u>Gomes</u> and similar cases or the reasoning of <u>Yvanova</u>.  Imposing such a bar would mean that even if a plaintiff offers plausible support for the claim that the entity foreclosing on her property lacks any authority to do so, that plaintiff would nevertheless have to sit by idly until an allegedly improper foreclosure sale was completed before bringing her otherwise valid challenge in court.  Moreover, combined with <u>Yvanova</u>, it would resolve one split in California law only by creating a different splinter in it.  That is, even though <u>Yvanova</u> approved of post-foreclosure challenges to underlying assignments, an absolute bar would prohibit identical challenges based entirely on the stage of the foreclosure proceedings at issue.

1         Accordingly, the Court concludes, based on its reading of <u>Yvanova</u> and related state law,

2    that to the extent the California Supreme Court will approve of <u>Jenkins</u> in the pre-foreclosure

3    context, it will limit that holding only to pre-foreclosure plaintiffs who lack any "specific factual

4    basis" for bringing their claims.

**c.     Application to Lundy's Complaint**

6         Having reached this conclusion, the next task is to apply it to the facts in this case.  As

7    noted above, Lundy alleges that the assignment underlying the foreclosure was void because

8    WAMU, the original assignee of the deed of trust, had transferred it to another entity before its

9    assets were subsequently acquired by Chase and the additional chain of transactions occured.

10   These allegations provide a specific factual basis for Lundy's contention that Defendants lack

11   authority to initiate the foreclosure.

12        Selene/Wilmington contends that the documents they offer in their requests for judicial

13   notice demonstrate that the assignment is not void.  As they themselves acknowledge, however,

14   these documents merely lay out the subsequent chain of transactions beginning with Chase's

15   acquisition of WAMU's assets.  <u>See, e.g.</u>, ECF No. 66 at 7.  Lundy does not dispute these

16   transactions.  The crux of his claims rests on the alleged transaction between WAMU and RESI,

17   which deprived Chase of any interest in his loan.  To contradict Lundy's assertions, the

18   Defendants offer only a declaration, by a Litigation Specialist for Selene Finance, which asserts

19   that RESI never had any interest in Lundy's loan or deed because Selene keeps a computer

20   database of loan records, and that if RESI "ever had any such right, title, or interest, it would, in

21   the normal course of Selene's business, have been reflected in the Loan Records.  The absence of

22   any such reference indicates that they never did."  ECF No. 66-1 ¶¶ 1, 6.  Whatever strength this

23   evidence might have at a different stage of the proceedings, it is irrelevant now, because the Court

24   must assume Lundy's allegations are true.  Accordingly, Lundy has sufficiently established a

25   specific factual basis for his contention that the underlying assignment was void.

**d.     Conclusion**

27        To bring this lengthy discussion to a close, the Court rejects Defendants' contention that

28   Lundy lacks standing to bring a wrongful foreclosure claim based on his argument that the

22

United States District Court
Northern District of California

1    Defendants do not have authority to initiate foreclosure proceedings.  It does so based on its

2    conclusion that the California Supreme Court will not bar claims such as Lundy's under law such

3    as <u>Jenkins</u> and other California cases currently under review by the state's highest court.

4    Accordingly, Defendants' motion to dismiss Plaintiff's first count is denied.

5            **E.        Count II: Quiet Title**

6            Defendants argue that Plaintiff's claim for quiet title should be dismissed because he does

7    not allege that he has paid off the remaining debt on his mortgage.  ECF No. 26 at 18.  They argue

8    that "quiet title is an equitable claim, and a plaintiff in equity must do equity in order to obtain

9    relief."  <u>Id.</u>  Plaintiff responds by arguing again that tender is not required in his situation, for the

10   same reasons outlined above.[4]  ECF No. 49 at 28-29.

11           "[A] mortgagor of real property cannot, without paying his debt, quiet his title against the

12   mortgagee."  <u>Nool v. HomeQ Servicing</u>, 653 F. Supp. 2d 1047, 1056 (E.D. Cal. 2009) (quoting

13   <u>Miller v. Provost</u>, 26 Cal. App. 4th 1703, 1707 (1994); <u>see also</u> <u>Gaitan v. Mortgage Elec.</u>

14   <u>Registration Sys.</u>, No. EDCV 09-1009 VAP (MANx), 2009 WL 3244729, at *12 (C.D. Cal. Oct.

15   5, 2009) ("Since Plaintiff concedes he has not paid the debt secured by the mortgage, he cannot

16   sustain an action to quiet title."); <u>Kelley v. Mortgage Elec. Registration Sys., Inc.</u>, 642 F. Supp. 2d

17   1048, 1057 (N.D. Cal. 2009) ("Plaintiffs have not alleged that they are the rightful owners of the

18   property, i.e. that they have satisfied their obligations under the Deed of Trust.  As such, they have

19   not stated a claim to quiet title.").  "This rule is based upon the equitable principle that he who

20   seeks equity must do equity."  <u>Mix v. Sodd</u>, 126 Cal. App. 3d 386, 390 (1981).  "[A] court of

21   equity will not aid a person in avoiding the payment of his or her debts."  <u>Id.</u>

22           Plaintiff does not contend that the foreclosure is wrongful because he has fully paid his

23   debt; rather, he contends that the wrong entity is attempting to conduct the foreclosure.  Thus,

24   while Plaintiff "seeks to quiet title against the claims of [Wilmington] and all persons, known and

25   _____

26   [4] In his oppositions to these motions, Plaintiff argues for the first time that Defendants may not object to his claim for quiet title because they "lack standing" due to not possessing a license
27   under the California Residential Mortgage Lending Act.  ECF No. 49 at 29-32.  Though Plaintiff invites the court to take judicial notice of this alleged fact, he provides no support for his
28   contention.  Moreover, Defendants offer, in their supplemental request for judicial notice, a web search that appears to indicate that they possess a license.  <u>See</u> ECF No. 55.

United States District Court
Northern District of California

United States District Court
Northern District of California

unknown," Complaint ¶ 45, it is unclear why this relief would be appropriate given that he apparently is still in debt to some other entity.  Though Plaintiff asserts that "any arrearages are more than offset by the damages suffered by Plaintiff due to the fraudulent, illegal activities and statements of the Defendants," id. ¶ 48, he does not attempt to provide any plausible support for this claim.

Plaintiff cites Miller v. Carrington Mortg. Services, C-12-2282 EMC, 2012 WL 3537056 at *6 (N.D. Cal. Aug. 14, 2012), Frazier v. Aegis Wholesale Corp., No. C-11-4850 EMC 2011, 2011 WL 6303391 (N.D. Cal. Dec. 16, 2011), and Giannini v. American Home Mortg. Servicing, Inc., No. C11-04489 TEH, 2012 WL 298254 (N.D. Cal. Feb. 1, 2012), but none of these cases support his position.   In both Giannini and Frazier, the courts *dismissed* the quiet title claims based on a failure to satisfy the remaining debt on the mortgage.  Giannini, 2012 WL 298254 at *5 (rejecting claim that plaintiff may overcome this bar to quiet title through an arrangement for ongoing or delayed payments because no such arrangement was specified); Frazier, 2011 WL 6303391 at *9 (dismissing quiet title claim because "Plaintiffs are asking to be declared title owner of record even though they appear to be in default to *someone*." (emphasis added)).  In Miller, the Court did not dismiss the claim for quiet title, but only after "liberally constru[ing]" it "as being, in essence, a claim for wrongful foreclosure."  Miller, 2012 WL 3537056 at *6.

Accordingly, Plaintiff's claim for quiet title is dismissed without prejudice.

### F.    Count III: Violation of Section 2923.55

Plaintiff's third count alleges that Defendants violated California Civil Code section 2923.55.  Complaint ¶ 49.  That section requires certain procedures before "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent" may record a notice of default.  Cal. Civ. Code § 2923.55(a).  As relevant here, these procedures include that "a mortgage servicer shall send the following information in writing to the borrower:"

> . . .
> (B) A statement that the borrower may request the following:
> (i) A copy of the borrower's promissory note or other evidence of indebtedness.
> (ii) A copy of the borrower's deed of trust or mortgage.
> (iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.
> (iv) A copy of the borrower's payment history since the borrower was last less than

24

60 days past due.

Cal. Civ. Code § 2923.55(b)(1).

Defendants argue that this claim must be dismissed because Plaintiff's allegation is "a mere formulaic recitation of the statutory requirements," and that "[a]side from a blanket 'I was not provided a letter,' there are no actual facts alleged to support his claim."  ECF No. 26 at 18. Because the sending of a letter is the procedure required by the statute, it is difficult to know what deficiency the Defendants are trying to identify.  In any event, Plaintiff states quite clearly that "Neither Trustee Corps, Selene, nor WSFS ever sent to Plaintiff the statement require by Cal. Civil Code section 2923.55(b)(1)(B) either before, or after, the NOD was recorded."  Complaint ¶ 51.  These allegations are sufficient to plead a violation.

Defendants also argue that Plaintiff has failed to sufficiently show prejudice, citing to Dooms v. Fed. Home Loan Mortgage Corp., No. CV F 11-0352 LJO DLB, 2011 WL 1232989 at *17 (E.D. Cal. Mar. 31, 2011), and Coburn v. Bank of New York Mellon, N.A., No. 2:10-CV-03080-JAM, 2011 WL 3500997 at *2 (E.D. Cal. Aug. 9, 2011).  ECF No. 26 at 19.  Both of these cases are easily distinguishable.  In Dooms, plaintiff alleged violation of a different subsection of section 2923.5, which require the foreclosing party to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure," and the court dismissed these allegations because plaintiff had herself initiated contact with defendants to discuss a loan modification.  Dooms, 2011 WL 1232989 at *17.  In Coburn, the allegations of statutory violation were contained within a claim of negligence, and so the court's decision was based on its discussion of the elements of negligence. Coburn v. Bank of New York Mellon, N.A., No. 2:10-CV-03080 JAM, 2011 WL 1103470, at *4 (E.D. Cal. Mar. 22, 2011).

For these reasons, Defendants' arguments are unpersuasive, and their motion to dismiss Plaintiff's third count is denied.

### G.     Counts IV and V: Violation of RESPA and CRMLA

Plaintiff's fourth and fifth counts revolve around a section of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), which allows a borrower to submit a "Qualified

25

United States District Court
Northern District of California

1   Written Request" ("QWR") for information related to the servicing of a mortgage loan, and

2   requires that the loan servicer conduct an investigation and respond to the QWR within 30 days.

3   12 U.S.C. § 2605(e)(1)-(2).  Plaintiff's fourth count alleges that Plaintiff submitted two QWRs to

4   Selene, requesting among other things "information concerning the chain of title of his[ ]mortgage

5   loan to determine the true note holder and beneficiary under his deed of trust, and, further, to

6   determine whether Selene is a valid servicer with respect to his loan with the authority to collect

7   mortgage payments from them."  Complaint ¶ 57.  He further alleges that Selene never responded

8   substantively to them.  Id. ¶ 69.  His fifth count alleges that, by virtue of violating section 2605(e)

9   of RESPA, Selene also violated the California Residential Mortgage Lending Act ("CRMLA").

10  Complaint ¶¶ 63-67; see also Cal. Fin. Code § 50505 ("Any person who violates any provision of

11  any of the following federal acts or regulations violates this division: (a) the federal Real Estate

12  Settlement Procedures Act . . .").

13          Defendants argue that these counts must be dismissed because Plaintiff fails to allege

14  damages.[5]  ECF No. 26 at 19.  Section 2605(f) states that individuals who fail to comply with

15  RESPA may be liable to the borrower for either "(A) any actual damages to the borrower as a

16  result of the failure," or "(B) any additional damages, as the court may allow, in the case of a

17  pattern or practice of noncompliance with the requirements of this section, in an amount not to

18  exceed $2,000."  12 U.S.C. § 2605(f)(1).  Courts generally read this section to require a showing

19  of either actual damages or a pattern or practice of noncompliance in order to state a claim.  Allen

20  v. United Fin. Mortgage Corp., 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009).  Courts have

21  interpreted this requirement "liberally," Shepherd v. Am. Home Mortgage Servs., Inc., No. CIV

22  2:09-1916 WBS GGH, 2009 WL 4505925, at *4 (E.D. Cal. Nov. 20, 2009) (citation omitted), but

23

24  _____
    [5] Defendants also contend that they should not be held liable under RESPA because
25  "compensation for the sale of a mortgage loan and servicing rights constitutes a secondary market
    transaction that is wholly beyond the scope of RESPA," citing to Moreno v. Summit Mortg. Corp.,
26  364 F.3d 574, 575 (5th Cir. 2004).  ECF No. 26 at 19.  It is unclear why Defendants believe this
    statement is relevant, as none of Plaintiff's claims challenge the "compensation for the sale of a
27  mortgage loan and servicing rights" obtained by any defendant.  Moreover, Moreno dealt with a
    separate section of RESPA, section 2607(a), prohibiting kickback and referral fee arrangements.
28  Id.

the plaintiff must nevertheless "at least allege what or how the plaintiff suffered the pecuniary loss." Ash v. OneWest Bank, FSB, No. 2:09-cv-00974-FCD/DAD, 2010 WL 375744, at *6 (E.D.Cal. Jan. 26, 2010).  Moreover, the section requires that the asserted damages are caused by the alleged RESPA violation.  Tamburri v. Suntrust Mortgage, Inc., 875 F. Supp. 2d 1009, 1014 (N.D. Cal. 2012) (requiring "actual, cognizable damages *resulting from Defendants' failure to respond to QWRs.* (emphasis in original)).  For example, courts have found that plaintiffs sufficiently plead damages when they allege having suffered credit blocks or negative credit ratings while waiting for responses to their QWRs.  Menashe v. Bank of New York, 850 F. Supp. 2d 1120, 1134-35 (D. Haw. 2012).

In other portions of his brief, Plaintiff points to damages alleged in his complaint, such as the imminent loss of his home, emotional distress, damages to his creditworthiness, and money wrongly paid to the defendants.  Complaint ¶¶ 41, 71, 77.  Similarly, under his fourth count he alleges that "Selene has been collecting mortgage payments on behalf of an invalid beneficiary which has no authority to receive them," and that "Plaintiff s loan account is incorrect and must be adjusted to cure the error."  Complaint ¶ 61.  These alleged damages, however, resulted from the alleged wrongful foreclosure and the defects in the assignments of Plaintiff's deed of trust, not from Defendants' failure to respond to Plaintiff's QWRs.  As a result, they are not sufficient to support a RESPA claim.  See, e.g., Guidi v. Paul Fin. LLC, No. 13-CV-01919-LHK, 2014 WL 60253, at *5 (N.D. Cal. Jan. 7, 2014) (alleged damages of additional charges for interest, penalties, and default fees were not casually connected to alleged failure to respond to QWRs).[6]

Accordingly, Plaintiff's fourth and fifth counts are dismissed without prejudice.

## H.    Count VI: Cal. Civil Code 2624.17

Plaintiff's sixth count alleges a violation of California Civil Code section 2924.17's requirements that notices or other documents related to foreclosure "shall be accurate and

---

[6] Plaintiff also alleges under his fifth count (but not his fourth) that he is "informed and believe, and thereon alleges, that Selene has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA set forth in 12 U.S.C. §2605." Complaint ¶ 67.  Without more, this allegation is conclusory and thus insufficient to plead a RESPA claim.

complete and supported by competent and reliable evidence," as well as that a mortgage servicer "shall insure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose including the borrower's loan status and loan information." Complaint, ¶ 69 (quoting Cal. Civil Code § 2925.17).  Plaintiff alleges that Selene's violation of these requirements is made clear by the invalid and void assignments alleged elsewhere in the complaint.  Id. ¶ 70.

Defendants' only response to this claim is that Plaintiff lacks standing to contest the assignment and other transactions.  ECF No. 26 at 21.  This issue has already been discussed and rejected in this Court's discussion of Plaintiff's wrongful foreclosure count.  Accordingly, Defendants' motion to dismiss this count is denied.

## I.        Count VII: UCL

Plaintiff's seventh count is under the UCL, Cal. Bus. & Prof. Code § 17200.  A claim under the UCL requires a showing of either "an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue, or misleading advertising.'"  Stewart v. Life Ins. Co. of N. Am., 388 F. Supp. 2d 1138, 1143 (E.D. Cal. 2005) (quoting Lippitt v. Raymond James Fin. Servs., 340 F.3d 1033, 1043 (9th Cir. 2003).

Defendants contend that this claim should fail because Plaintiff "does not allege any facts to demonstrate conduct by Defendants" that would violate the UCL, but instead only "lists generic practices . . . without any facts in support."  ECF No. 26 at 22.  This is incorrect.  Plaintiff identifies specific conduct that it alleges consist of fraudulent and deceptive business practices, including the execution of particular documents, Complaint ¶ 75, as well as incorporating the conduct alleged in its other counts, id. ¶ 74.  Defendants further assert that "because all of the remaining causes of action asserted in this Complaint fail, this cause of action for UCL cannot stand."  ECF No. 26 at 22.  Since this Court has not dismissed all other counts, this argument is unpersuasive.

Defendants also argue that Plaintiff lacks standing because he has alleged no injury as a result of the alleged conduct.  They argue that "[e]ven if a foreclosure sale has already occurred, thus establishing loss of property, a plaintiff nevertheless lacks standing if he cannot causally link

28

the defendant's conduct to that loss."  However, as explained in <u>Yvanova</u>, the identified harm of

the foreclosure proceedings "can be traced directly to [the foreclosing entity's] exercise of the

authority purportedly delegated by the assignment."  <u>Yvanova</u>, 2016 WL 639526 at *11.

Moreover, Defendants fail to mention that Plaintiff has alleged injuries-in-fact that result from the

initiation of foreclosure proceedings, such as "damage to his creditworthiness and monies paid to

these defendants which have no right to collect mortgage payments," "assessment of late fees,

administrative fees, costs associated with Defendants' foreclosure activity," and "fees paid to a

forensic mortgage loan auditor and attorneys required to protect his property rights."  Complaint,

¶¶ 71, 71.  Defendants do not explain why these injuries-in-fact are insufficient under the UCL.

Accordingly, Defendants' motion to dismiss Plaintiff's seventh count is denied.

## J.      Count VIII: Unjust Enrichment

Plaintiff's eighth claim is for unjust enrichment.  Complaint ¶ 80.  Defendants argue that

an unjust enrichment claim is not considered as a stand-alone cause of action, and further that

Plaintiff has not alleged any facts entitling him to restitution.  ECF No. 26 at 23.  Plaintiff offers

no response to these contentions and indeed makes no mention of unjust enrichment in any of his

papers responding to these motions.  The Court therefore will assume Plaintiff agrees this count

may be dismissed, and grants the motion to dismiss Plaintiff's eighth count without prejudice.

## K.      Count IX:  Accounting

Plaintiff's final claim is for an accounting, which under California law is "generally a

remedy under equity."  <u>Pantoja v. Countrywide Home Loans, Inc.</u>, 640 F. Supp. 2d 1177, 1191

(N.D. Cal. 2009).  More specifically, Plaintiff alleges that "an accounting is necessary to

determine the sums owed to Plaintiff by each of the Defendants" based on the number of payments

improperly made to each Defendant rather than the entity who in fact is entitled to the deed and

note.  Complaint ¶ 93.  Defendants contend that this count should be dismissed because Plaintiff

does not allege that Selene owed Plaintiff "a duty to provide him with a detailed accounting," and

because he "cannot allege any facts showing that a balance is due from the Defendants to

Plaintiff."  ECF No. 26 at 27.

"[A]ccounting actions are equitable in nature and appropriate when 'the accounts are so

United States District Court
Northern District of California

complicated that an ordinary legal action demanding a fixed sum is impracticable.'" <u>Gomez v. Wachovia Mortgage Corp.</u>, No. CV-09-02111 SBA, 2010 WL 291817, at *8 (N.D. Cal. Jan. 19, 2010) (quoting <u>Civic W. Corp. v. Zila Indus., Inc.</u>, 66 Cal. App. 3d 1, 14 (1977)).  "Normally, an accounting is appropriate where a plaintiff seeks to recover an amount that is unliquidated and unascertained, and that cannot be determined without an accounting."  <u>Id.</u>

Plaintiff contends that the accounts involved in this case are complicated enough to warrant an accounting, ECF No. 49 at 35, but provides no supporting facts for this contention. "Allegations of complicated accounts . . . are not enough to state a claim for an accounting." <u>Cty. of Santa Clara v. Astra USA, Inc.</u>, No. C 05-03740 WHA, 2006 WL 2193343, at *6 (N.D. Cal. July 28, 2006).  Here, the sums that concern Plaintiff consist of a series of mortgage payments paid to various entities.  It is unclear to the Court, and Plaintiff has not demonstrated, why these sums cannot be calculated simply by determining the relevant payments he made and adding them together.  <u>See, e.g.</u>, <u>Serrano v. World Sav. Bank, FSB</u>, No. 11-CV-00105-LHK, 2011 WL 1668631, at *4 (N.D. Cal. May 3, 2011) ("Here, Plaintiff has not alleged facts suggesting that the balance owed on her loan cannot be ascertained through ordinary means, such as requesting a written itemization from Wachovia."); <u>Astra USA, Inc.</u>, 2006 WL 2193343, at *6 ("If there were further discovery in this action, it likely would allow plaintiff to calculate the proper price, thereby obviating the need for an accounting and affording plaintiff a remedy at law.").  Thus, even assuming that Plaintiff is entitled to damages from some or all of the Defendants, he has not alleged that an accounting is necessary.

Accordingly, Defendant's motion to dismiss Plaintiff's ninth count for accounting is granted without prejudice.

### L.     Motion to Expunge Lis Pendens

Though Plaintiff "ha[s] not yet established by a preponderance of the evidence the probable validity of [his] real property claim to the Property," it is unclear at this time "whether Plaintiff will ultimately be unable to meet this standard." <u>Gieseke v. Bank of Am., N.A.</u>, No. 13-CV-04772-JST, 2014 WL 718463, at *6 (N.D. Cal. Feb. 23, 2014).  Because several of Plaintiff's claims still remain viable, and he has leave to amend other claims, the motion to expunge is denied

United States District Court
Northern District of California

1   without prejudice.  See id., 2014 WL 718463 at *6 ("It is for this reason that . . . generally, where

2   courts have granted motions to expunge lis pendens, they have done so where a complaint was

3   dismissed without leave to amend." (internal quotation marks omitted); see also Meneses v.

4   CitiMortgage, Inc., No. 5:11-CV-05227 EJD, 2012 WL 1428908, at *3 (N.D. Cal. Apr. 24, 2012).

5   **CONCLUSION**

6        For the foregoing reasons, Defendants' Motions to Dismiss are granted in part and denied

7   in part.  All counts against Defendant MTC are dismissed without prejudice.  In addition, Counts

8   II, IV, V, VIII, and IX are dismissed without prejudice.  The remaining counts remain as viable

9   claims in the case.  Any amended complaint must be filed within 21 days of the date of this order.

10       Defendant's Motion to Expunge Lis Pendens is denied.

11  **IT IS SO ORDERED.**

12  Dated:  March 17, 2016

13

14  _____

15            JON S. TIGAR
          United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States District Court*
*Northern District of California*