UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN F. LUNDY,<br><br>    Plaintiff,<br><br>v.<br><br>SELENE FINANCE, LP, et al.,<br><br>    Defendants. | Case No.15-cv-05676-JST<br><br>**ORDER DISMISSING CASE FOR LACK OF STANDING**<br><br>Re: ECF No. 114 |

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 114. The Court does not reach the merits of the motion because it concludes that Plaintiff is not the real party in interest and lacks standing to bring this case. If Plaintiff's wife, Nancy Lundy, does not "ratify, join, or be substituted into the action" within 10 days, the Court will dismiss the case.

I.  **REQUESTS FOR JUDICAL NOTICE**

The Court must first resolve Defendants' pending request for judicial notice. ECF No. 118. Except for the Purchase and Assumption Agreement, ECF No. 118 at 31, the documents in question were publicly recorded in Marin County. These public records are properly subject to judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of matters of public record.") (internal quotations and citation omitted). The Purchase and Assumption Agreement, though not recorded, is also a public record and has been judicially noticed several times in this district. Eng v. Dimon, No. 11-3173, 2012 U.S. Dist. LEXIS 1206942012 (N.D. Cal. Aug. 24, 2012). The Court grants Defendants' request.

II. **BACKGROUND**

On December 21, 2005, Plaintiff John Lundy obtained a mortgage loan secured by a Deed

of Trust ("DOT") from Defendant Washington Mutual Bank, FA ("WAMU") in the amount of $1,134,000.00 ("Mortgage"), in order to purchase a single family home in San Rafael, California. ECF No. 130-2 at 6-7. The DOT was recorded in Marin County on December 30, 2005. Id. The DOT identifies WAMU as the lender and loan servicer, and conveys title and power of sale to California Reconveyance Corporation ("CRC") as the trustee. Id. It also lists a loan number of 3060169236 on the upper right-hand corner. Id.

Lundy claims that, on or before March 29, 2007, WAMU sold the Mortgage to RESI Finance Limited Partnership 2007-B Trust ("RESI 2007-B Trust"). ECF No. 130-3 ¶ 17. Lawrence Asuncion, Plaintiff's subject matter expert on the secondary mortgage market involving securitization structure and transaction, and . . . Chief Forensic Securitization Audit and Mortgage Fraud Analyst for Certified Securitization Analysis," located Plaintiff's loan in the search engine ABSNet. Id. Asuncion describes ABSNet as a database maintained by Lewtan Technologies, a Moody's Analytic Company, that is "utilized by financial analysts and institutional investors to monitor and analyze real-time performance of a portfolio of asset and mortgage-backed instruments." ECF No. 130-3 ¶ 16. Using ABSNet, Asuncion identified a loan with the same loan amount, loan number, and zip code as Plaintiff's WAMU loan. Id. ¶ 17; ECF No. 130-2 at 63-64. Asuncion summarized his findings as follows:

> My audit therefore verified with complete accuracy that Plaintiff's mortgage loan was, in fact, sold and securitized to the RESIF 2007-B Trust, a private placement mortgage securitization trust. Wells Fargo Bank, N.A. serves as the fiduciary owner of the mortgage loans in the trust fund as the "trustee" of the RESIF 2007-B Trust for the benefit of its certificateholders (investors).

Id. ¶ 18.

Defendant JPMorgan Chase Bank, National Association ("Chase") then acquired assets of the defunct WAMU on September 25, 2008 though a Purchase and Assumption Agreement ("PAA"). ECF No. 118 at 32. Plaintiff received monthly statements from Chase and discussed modification and foreclosure prevention options with Chase representatives. ECF No. 116 at 269-70.

As successor in interest to WAMU, Chase recorded on November 4, 2010 an Assignment

2

of Deed of Trust dated November 3, 2010 ("Assignment 1") in Marin County, transferring the DOT to Defendant Bank of America, National Association ("BANA"). ECF No. 118 at 29. On the same date Chase recorded Assignment 1, CRC recorded in Marin County a Notice of Default and Election to Sell ("NOD 1"). ECF No. 130-2 at 39. On January 29, 2014, Chase, as attorney-in-fact for BANA, recorded a Substitution of Trustee dated January 16, 2014 ("SOT 1") in Marin County, under which ALAW substituted CRC as trustee of the DOT. ECF No. 118 at 77. On March 11, 2015, BANA recorded in Marin County an Assignment of Deed of Trust dated February 5, 2015 ("Assignment 2"), transferring all beneficial interests in the DOT to Wilmington Savings Fund Society, FSB, doing Business as Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2014-12TT ("Wilmington"). ECF No. 118 at 82. On July 10, 2015, Selene Finance LP ("Selene"), as servicer and attorney-in-fact for Wilmington, recorded a Substitution of Trustee dated July 2, 2015 ("SOT 2") in Marin County. ECF No. 118 at 85. Under SOT 2, MTC Financial Inc. dba Trustee Corps ("MTC") substituted ALAW as trustee under the DOT. Id. On August 14, 2015, MTC recorded a Notice of Default dated August 13, 2015 ("NOD 2") with the Marin County Recorder's Office. Id. at 87.

On June 7, 2016, a notice of trustee's sale was recorded on the property. Id. at 95. The property was sold on August 4, 2016 to Wilmington, and a deed upon sale was recorded on August 10, 2016. Id. at 98.

The gist of Lundy's argument is that Chase had no interest in the DOT to assign to BANA or anyone else in 2010 because WAMU had transferred all beneficial interests in the DOT to RESI before Chase acquired any assets from WAMU. Therefore, Assignment 1 and all documents stemming therefrom are fatally defective, null, and void, and Defendants did not have standing to initiate foreclosure proceedings. ECF No. 130 at 8. Plaintiff claims he was damaged by the loss of his real property, "damage to his creditworthiness and moneys paid to the wrong defendant." Id. at 15.

Also relevant is the fact that, on August 8, 2014, Plaintiff transferred title of the property to his wife, Nancy A.M. Lundy as her "sole and separate property." ECF No. 116 at 258-59; ECF No. 118 at 79.

3

**B. Procedural History**

Lundy filed the instant action in Marin County Superior Court in California on November 6, 2015. ECF No. 1. Chase removed the action to this Court on December 11, 2015. Id.

In January 2016, Defendants Selene and Wilmington, and MTC Financial filed motions to dismiss. ECF Nos. 26, 28, 31. On March 17, 2016, the Court issued an order dismissing all claims against Defendant MTC and five of Plaintiff'' nine claims against all Defendants. ECF No. 73; 2016 WL 1059423 at *19. Plaintiff was granted leave to file an amended complaint within twenty-one days of the March 17, 2016 Order but declined to do so. On April 26, 2016, the Court addressed a second round of motions to dismiss by Chase and BANA. ECF No. 87. The Court dismissed all claims against Chase and BANA without prejudice. Id. Plaintiff later voluntarily dismissed these two Defendants. ECF Nos. 94, 108.

Defendants Wilmington and Selene now move for summary judgment on Plaintiff's three remaining claims: wrongful foreclosure; violation of Cal. Civil Code § 2624.17; and violation of the Unfair Competition Law ("UCL"). On the Court's request, the parties provided supplemental briefing on the question of standing.

**II. LEGAL STANDARD**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000) . Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id. "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. ANALYSIS

Before the Court reaches the merits of Defendants' motion, it must determine whether Plaintiff has standing to pursue this case given that he transferred title to the subject property to his wife as her sole and separate property.[1] Defendants emphasized this fact in their motion for summary judgment, but not in support of an argument about standing. Instead, they offered this

---

[1] The clear language of the grant deed belies Plaintiff's argument that the property remains his community property. See also Bianchi v. Bank of Am., N.A., No. 12CV750-MMA MDD, 2012 WL 11946982, at *2 (S.D. Cal. May 17, 2012) (finding that where a husband is the "sole owner" of a property according to the title documents, "there is no presumption that the subject property is community property").

5

fact to support the argument that Plaintiff could not show he was harmed from the foreclosure if he did not own the underlying property. ECF No. 114 at 17-18. This matters, Defendants stated, because actual harm or prejudice is an element of a wrongful foreclosure claim. Id.

The Court believes this issue is better framed as one of standing, rather than concerning the merits. The plaintiff always bears the burden of proof to establish standing "with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). While "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," in responding to a summary judgment motion, "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Id. (citation and quotes omitted). In other words, "[a]t the summary judgment stage, the district court must ask itself whether a fair-minded jury could find that the claimant had standing on the evidence presented." United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 638 (9th Cir. 2012). The Ninth Circuit has explained that "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." Id. (quoting FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir.1997)). "To demonstrate Article III standing, a plaintiff must satisfy three 'irreducible constitutional minimum' requirements: (1) he or she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." Washington Envtl. Council v. Bellon, 732 F.3d 1131, 1139–40 (9th Cir. 2013) (quoting Lujan, 504 U.S. at 1140-41).

Here, Plaintiff argues that he has suffered several injuries sufficient to confer standing. Namely, Plaintiff claims he lost his real property, and experienced "damage to his creditworthiness and moneys paid to the wrong defendant." ECF No. 130 at 15. Plaintiff also argues that he has been damaged by the wrongful foreclosure by virtue of the harm suffered by his wife. ECF No. 135 at 3.

Plaintiff cannot demonstrate standing through the loss of the subject property. When

Plaintiff transferred title to his wife, he gave up his ownership interest in that property.[2] Other courts in this district have dismissed wrongful foreclosure cases for lack of standing on similar facts. Estrada v. Servis One, Inc. provides one helpful example. No. 16-CV-853-BEN (BGS), 2016 WL 1450719 (S.D. Cal. Apr. 13, 2016). There, the Plaintiff obtained a mortgage to purchase her California home, and then transferred her interest in the property to a third party by grant deed. Id. at *1. The court found that because "Plaintiff ha[d] not shown that she . . . has legal title to the property, it appears that she lacks standing and is not the real party in interest."[3] Id. at *2; compare Aguirre v. Cal-W. Reconveyance Corp., No. CV 11-6911 CAS AGRX, 2012 WL 273753, at *4 (C.D. Cal. Jan. 30, 2012) (finding that plaintiff did have standing to bring wrongful foreclosure claim because, although plaintiff transferred title in the property to a trust, he alleged he was the trustee and trustees have standing to sue on the trust's behalf); see also Cleveland v. Deutsche Bank Nat. Trust Co., No. 08CV0802JM(NLS), 2009 WL 250017, at *2 (S.D. Cal. Feb. 2, 2009) (finding that, because plaintiff "does not possess any interest in the property, he is not a proper party to this action"); Myles v. JPMorgan Chase Bank, N.A., No. CV1309036BROAGRX, 2013 WL 12084732, at *1 (C.D. Cal. Dec. 20, 2013) (finding that plaintiff was not the real party in interest and lacked standing because he had transferred title to the subject property to a California corporation). Likewise here, Plaintiff has no legal title to the subject property because he transferred it to his wife via grant deed.[4] The loss of the subject property is therefore

---

[2] This analysis applies to all three of Plaintiff's remaining causes of action.

[3] The Court recognizes that the standing requirement and Federal Rule of Civil Procedure 17(a)'s real-party-in-interest requirement are not one in the same. A plaintiff can be the real party in interest, for example, and not have standing to sue for other reasons. Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1542 (3d ed.) (explaining how courts sometimes improperly equate the two concepts). That said, there appears to be little dispute that where a plaintiff is not the real-party-in-interest, she also lacks standing. See id. ("[T]he well-settled rule that a party ordinarily does not have standing to raise the constitutional rights of another person who is not joined in the suit may be thought of as merely a particular application of the real-party-in-interest principle.").

[4] Plaintiff does not successfully distinguish Estrada. The Estrada court likely did not engage in the traditional three-pronged standing inquiry because it is generally accepted that where a plaintiff is not the real party in interest, she lacks standing. And while it is true that Estrada transferred her property to a trust, not to her spouse, Plaintiff cites no authority to show that this factual difference matters.

insufficient to demonstrate Mr. Lundy's standing.[5]  Rather, these cases suggest that if anyone is the real party in interest with standing to bring a case regarding loss of the property, it is Nancy Lundy, Mr. Lundy's wife.

Nor can Plaintiff demonstrate standing via a theory of transitive injury from his wife.  In his supplemental briefing, Plaintiff claims that, notwithstanding the transfer, he has standing because any harm to his wife from the wrongful foreclosure necessarily harms him as well.  ECF No. 135 at 3.  For example, Plaintiff claims that harm to his wife's credit affects him because their family finances are intertwined.  Id. at 4.  Taken to its logical conclusion, this theory would confer standing on a married person anytime his spouse suffers an adverse financial event.  This theory finds no support either in law or in policy, and district courts in this circuit have suggested the opposite is true.  McLain v. City & Cty. of San Francisco, No. C 12-3225 MEJ, 2014 WL 465595, at *4–5 (N.D. Cal. Feb. 3, 2014); Bianchi v. Bank of Am., N.A., 2012 WL 11946982, at *2.

Finally, Plaintiff claims that he was injured because of "damage to his creditworthiness and moneys paid to the wrong defendant." ECF No. 130 at 15.  Although damage to creditworthiness is among the harms courts have recognized in wrongful foreclosure actions, see, e.g., Barragan v. Deutsche Bank Nat. Trust Co., No. CV 15-02614 DDP FFMX, 2015 WL 3617104, at *5 (C.D. Cal. June 9, 2015), Plaintiff has failed to meet his burden to actually show that he suffered either of these injuries.  Despite being put on notice that he needed to demonstrate injury due to Defendants' prejudice argument and the Court's Order to Show Cause, Plaintiff has failed to adduce any "specific facts" that show that the allegedly wrongful foreclosure negatively impacted his credit score or that he paid money to the "wrong defendant."  The only evidence related to creditworthiness in the record is 1) Plaintiff's deposition testimony that "credit issues" were among his damages and 2) Plaintiff's declaration in support of his opposition brief stating

---

[5] Defendants' discussion of Yvanova is unhelpful.  The California Supreme Court in that case held only that "a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." Yvanova v. New Century Mortg. Corp., 62 Cal. 4th 919, 925 (2016).  The Court's holding was a "narrow one,"; it did not address the question presented here.

that he "suffered damage to my creditworthiness as a result of Defendants' foreclosure upon my property." ECF No. 116 at 335; ECF No. 130-1. Despite promising to do so in his deposition, ECF No. 116 at 336, Plaintiff never produced any credit report documenting that damage. Similarly, Plaintiff submitted no evidence to demonstrate that the wrongful foreclosure caused him to pay money "to the wrong defendant." The type of "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence" that Plaintiff has submitted to show damages "is insufficient to create a genuine issue of material fact" as to standing. $133,420.00 in U.S. Currency, 672 F.3d at 638 (quoting Publ'g Clearing House, Inc., 104 F.3d at 1171).

Although Mr. Lundy lacks standing, Plaintiff's wife, Nancy Lundy, may be the real party in interest with standing to pursue this case because she appears to have had title at the time of the foreclosure. Plaintiff rightly notes that, under Rule 17(a),

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.

Plaintiff also states in his supplemental brief that his wife is willing to join the case. ECF No. 134 at 6. Accordingly, by June 30, 2017, Nancy Lundy must "ratify, join, or be substituted into the action." If no action is taken by that date, the Court will dismiss the case.

## CONCLUSION

Plaintiff is not the real party in interest under Rule 17(a) and lacks standing. If Plaintiff's wife, Nancy Lundy, does not "ratify, join, or be substituted into the action" within 10 days, the Court will dismiss the case.

The pretrial conference and jury trial dates, and the parties' obligation to submit a pretrial conference statement, are vacated. If Ms. Lundy ratifies, joins, or is substituted into the action, the parties are ordered to submit a new proposed case schedule within 14 days of her appearance.

IT IS SO ORDERED.

Dated: June 20, 2017

JON S. TIGAR
United States District Judge